No. 14-5237

# United States Court of Appeals for the Sixth Circuit

VARSITY BRANDS, INC., VARSITY SPIRIT CORPORATION, AND VARSITY SPIRIT FASHIONS & SUPPLIES, INC.,

*Plaintiffs-Appellants,*

v.

STAR ATHLETICA, L.L.C.,

*Defendant-Appellee.*

On Appeal from the United States District
Court for the Western District of Tennessee, Western Division
(No. 2:10-cv-02508-RHC-cgc)

## APPELLANTS' BRIEF (FILED UNDER SEAL)

Grady M. Garrison
Bradley E. Trammell
Adam S. Baldridge
Nicholas L. Vescovo
BAKER, DONELSON, BEARMAN,
CALDWELL & BERKOWITZ, P.C.
165 Madison Avenue, Suite 2000
Memphis, Tennessee 38103
Telephone: 901-526-2000
Facsimile: 901-577-0838

*Counsel for Plaintiffs-Appellants Varsity Brands, Inc., Varsity Spirit Corporation, and Varsity Spirit Fashions & Supplies, Inc.*

June 23, 2014

**Disclosure of Corporate Affiliations**
**and Financial Interest**

Pursuant to Sixth Circuit Rule 26.1, Plaintiffs-Appellants Varsity Brands, Inc., Varsity Spirit Corporation, and Varsity Spirit Fashion & Supplies, Inc. make the following disclosures:

1.     Are said parties subsidiaries or affiliates of a publicly owned corporation?

No.

2.     Is there a publicly owned corporation, not a party to the appeal, that has a financial interest in the outcome?

No.

s/Adam S. Baldridge

TABLE OF CONTENTS

STATEMENT IN SUPPORT OF ORAL ARGUMENT ........................................1

JURISDICTIONAL STATEMENT ................................................................1

STATEMENT OF THE ISSUES...................................................................1

STANDARD OF REVIEW ..........................................................................2

STATEMENT OF THE CASE.......................................................................3

I.   Factual Background ......................................................................3

     A.  The Parties..........................................................................3

     B.  Star's Infringement..............................................................4

     C.  The Varsity Designs .............................................................5

     D.  The Process of Creating the Varsity Designs...........................11

II.  Pertinent Procedural History .......................................................13

SUMMARY OF ARGUMENT .....................................................................16

ARGUMENT ..........................................................................................18

I.   The District Court's Determinations Concerning Varsity's Registered
     Copyrights Are Erroneous.............................................................18

     A.  The Copyright Act's Protection of Applied Art.........................19

     B.  The District Court's Holding That the Statutory Presumption of
         Copyright Validity Was Rebutted Is Contrary to the Evidence and
         Erroneous..........................................................................21

         1.  The Copyright Office's Issuance of Varsity's Copyright
             Registrations Was Not "Cursory" .....................................23

         2.  The District Court's Finding That the Statutory Presumption of
             Validity Was Overcome Is Unsupported and Erroneous ....30

     C.  Circuits' Approaches to Separability .....................................31

         1.  *Pivot Point* and the Process-Oriented Approach...............34

         2.  *Kieselstein-Cord* ..........................................................37

         3.  *Brandir International* ....................................................38

         4.  *Chosun International*....................................................39

         5.  *Universal Furniture*......................................................40

         6.  *Galiano* and the Discredited "Likelihood of Marketability" Test ......42

D.  The District Court's "Ideal of Cheerleading-Uniform-ness" Test Is Contrary to Law.................................................................................43

1.  The District Court Misapplied the Statutory Definition of a "Useful Article"...................................................................................44

2.  The District Court's Finding That Copyrightability of a Work Depends on Its Intended Purpose Is Erroneous..................................48

E.  The Varsity Designs Are Separable and Non-Functional..........................53

1.  The Varsity Designs Were the Result of Independent Artistic Judgment, Not Functional Considerations .........................................53

2.  The Expert Testimony, Albeit Superfluous, Confirms the Separability of the Varsity Designs.....................................................59

3.  The Expert Testimony Shows That the Varsity Designs Are Separable Even Under the Discredited *Galiano* Test.........................62

II.  The District Court Erred in Denying Varsity's Motion to Preclude Star's Putative Experts............................................................................................63

III. Varsity's State Law Claims Were Erroneously Dismissed ...........................66

CONCLUSION ................................................................................................67

CERTIFICATE OF COMPLIANCE..................................................................68

CERTIFICATE OF SERVICE ..........................................................................69

ADDENDUM - DESIGNATION OF RELEVANT LOWER COURT DOCUMENTS ...........................................................................................70

**Cases**

*Batjac Prods. Inc. v. GoodTimes Home Video Corp.*,
160 F.3d 1223 (9th Cir. 1998) ....................................................................26

*Bleistein v. Donaldson Lithographing Co.*,
188 U.S. 239 (1903) ....................................................................................48

*Brandir Int'l, Inc. v. Cascade Pacific Lumber Co.*,
834 F.2d 1142 (2d Cir. 1987)............................................................ 38, 39, 43

*Carol Barnhart Inc. v. Econ. Cover Corp.*,
773 F.2d 411 (2d Cir. 1985)................................................................. 32, 35

*Chavez v. Carranza*,
559 F.3d 486 (6th Cir. 2009)......................................................................64

*Chevron U.S.A. Inc. v. Natural Res. Def. Council, Inc.*,
467 U.S. 837 (1984) ....................................................................................26

*Chosun Int'l, Inc. v. Chrisha Creations, Ltd.*,
413 F.3d 324 (2d Cir. 2005)............................................................ 39, 47, 51

*Collezione Europa U.S.A., Inc. v. Hillsdale House, Ltd.*,
243 F. Supp. 2d 444 (M.D.N.C. 2003) ........................................................65

*Computer Assocs. Int'l, Inc. v. Altai, Inc.*,
982 F.2d 693 (2d Cir. 1992)........................................................................14

*Craigslist Inc. v. 3Taps Inc.*,
942 F. Supp. 2d 962 (N.D. Cal. 2013) ........................................................26

*Custom Chrome v. Ringer*,
1995 U.S. Dist. LEXIS 9249 (D.D.C. June 30, 1995).................................26

*DeliverMed Holdings, LLC v. Schaltenbrand*,
734 F.3d 616 (7th Cir. 2013)......................................................................29

*Esquire, Inc. v. Ringer*,
414 F. Supp. 939 (D.D.C.1976) ..................................................................23

*Esquire, Inc. v. Ringer*,
591 F.2d 796 (D.C. Cir. 1978) ....................................................................23

*Eve of Milady Bridals, Inc. v. Moonlight Design, Inc.*,
    1998 U.S. Dist. LEXIS 21288 (S.D.N.Y. Aug. 11, 1998)..................................52

*Eve of Milady v. Impression Bridal, Inc.*,
    957 F. Supp. 484 (S.D.N.Y. 1997).......................................................52

*Express, LLC v. Fetish Group, Inc.*,
    424 F. Supp. 2d 1211 (C.D. Cal. 2006) ...............................................52

*Fleming v. Parnell*,
    2014 U.S. Dist. LEXIS 39528 (W.D. Wash. Mar. 24, 2014) ...........................29

*Fonar Corp. v. Domenick*,
    105 F.3d 99 (2d Cir. 1997)............................................................30

*Frank Betz Assocs. v. J.O. Clark Constr., L.L.C.*,
    2010 U.S. Dist. LEXIS 53437 (M.D. Tenn. May 30, 2010)..............................22

*Frank Betz Assocs. v. Signature Homes, Inc.*,
    2009 U.S. Dist. LEXIS 59354 (M.D. Tenn. July 13, 2009) ............................22

*Gay Toys, Inc. v. Buddy L Corp.*,
    703 F.2d 970 (6th Cir. 1983)..................................................... 45, 57

*In re Scrap Metal Antitrust Litig.*, 527 F.3d 517, 528 (6th Cir. 2008)……………..2

*Janky v. Lake Cnty. Convention & Visitors Bureau*,
    576 F.3d 356 (7th Cir. 2009)...........................................................65

*Jones v. Blige*,
    558 F.3d 485 (6th Cir. 2009)............................................................2

*Jovani Fashion, Ltd. v. Fiesta Fashions*,
    500 Fed. Appx. 42 (2d Cir. 2012).......................................................50

*Kieselstein-Cord v. Accessories by Pearl, Inc.*,
    632 F.2d 989 (2d Cir. 1980)....................................................... passim

*Kohus v. Mariol*,
    328 F.3d 848 (6th Cir. 2003)...........................................................14

*L.A. Printex Indus. v. Le Chateau, Inc.*,
    2012 U.S. Dist. LEXIS 40289 (S.D.N.Y. Mar. 23, 2012) ..............................30

*Lexmark Int'l, Inc. v. Static Control Components, Inc.*,
    387 F.3d 522 (6th Cir. 2004)..................................................... 21, 22

*Lotus Dev. Corp. v. Borland Intern., Inc.*,
788 F. Supp. 78 (D. Mass. 1992) ......................................................65

*Malibu Textiles, Inc. v. Carol Anderson, Inc.*, U.S. Dist. LEXIS 51783
(S.D.N.Y. July 7, 2008) ..................................................................52

*Masquerade Novelty v. Unique Indus.*,
912 F.2d 663 (3d Cir. 1990)......................................................... 46, 51

*Mattel, Inc. v. Goldberger Doll Manufacturing Co.*,
365 F.3d 133 (2d Cir. 2004).............................................................37

*Matthew Bender & Co. v. West Publ'g Corp.*,
158 F.3d 674 (2d Cir. 1998)..............................................................65

*Mazer v. Stein*,
347 U.S. 201 (1954)........................................................................48

*Meeks v. Illinois Central Gulf R.R.*,
738 F.2d 748 (6th Cir. 1984).............................................................51

*N.Y. Mercantile Exch., Inc. v. IntercontinentalExchange, Inc.*,
389 F. Supp. 2d 527 (S.D.N.Y. 2005)..................................................27

*Norris Indus. v. Int'l Tel. & Tel. Corp.*,
696 F.2d 918 (11th Cir. 1983) ...................................................... 27, 33

*OddzOn v. Oman*,
924 F.2d 346 (D.C. Cir. 1991)..........................................................27

*Pivot Point Int'l, Inc. v. Charlene Prods., Inc.*,
372 F.3d 913 (7th Cir. 2004)..................................................... passim

*Rogers v. Better Business Bureau of Metro. Houston, Inc.*,
887 F. Supp. 2d 722 (S.D. Tex. 2012) .................................................27

*Schenck v. Orosz*,
109 U.S.P.Q.2d 1099 (M.D. Tenn. 2013) .............................................30

*Sharp v. Aker Plant Servs. Grp., Inc.*,
726 F.3d 789 (6th Cir. 2013)..............................................................2

*Sigler v. Am. Honda Motor Co.*,
532 F.3d 469 (6th Cir. 2008)............................................................66

*Skidmore v. Swift & Co.*,
323 U.S. 134 (1944)........................................................................26

*Superior Form Builders v. Dan Chase Taxidermy Supply Co.*,
74 F.3d 488 (4th Cir. 1996)....................................................................52

*Superior Form Builders v. Dan Chase Taxidermy Supply Co.*, 74 F.3d 488
(4th Cir. 1996) ......................................................................................47

*Taveras v. Taveraz*, 477 F.3d 767, 771 (6th Cir. 2007)……………………………3

*Tufenkian Imp./Exp. Ventures, Inc. v. Einstein Moomjy, Inc.*,
338 F.3d 127, 137 (2d Cir. 2003)……………………………………………46

*U.S. ex rel. Compton v. Midwest Specialties*,
142 F.3d 296 (6th Cir. 1998)..................................................................64

*U.S. v. Barnwell*,
477 F.3d 844 (6th Cir. 2007)..................................................................51

*U.S. v. Smithers*,
212 F.3d 306 (6th Cir. 2000)..................................................................66

*Universal Furniture Int'l, Inc. v. Collezione Europa USA, Inc.*,
2007 U.S. Dist. LEXIS 68345 (M.D.N.C. Sept. 14, 2007) ..............................30

*Whimsicality, Inc. v. Rubie's Costume Co.*,
891 F.2d 452 (2d Cir. 1989)........................................................ 50, 51

*Yankee Candle Co. v. Bridgewater Candle Co.*,
259 F.3d 25 (1st Cir. 2001) ...................................................................65

*Yurman Design, Inc. v. PAJ, Inc.*, 262 F.3d 101, 109 (2d Cir. 2001)……………22

**Statutes**

17 U.S.C. § 101 ................................................................................ passim

17 U.S.C. § 102(a)(5)……………………………………………………………19

17 U.S.C. § 410(c) ..................................................................................22

17 U.S.C. § 411(b)(2)................................................................................31

28 U.S.C. § 1291 ....................................................................................1

28 U.S.C. § 1331 ....................................................................................1

28 U.S.C. § 1332.......................................................................... 2, 18, 73

28 U.S.C. § 1338(a) ..................................................................................1

28 U.S.C. § 1367(a) ..................................................................................1

**Regulations**

37 C.F.R. § 202.10 ................................................................................ 24, 54

**Legislative History**

H.R. Rep. No. 1476, 94th Cong., 2d Sess. (1976) ..................................... 20, 21, 25

Second Supplementary Register's Report on the General Revision of the U.S. Copyright Law (1975) ................................................................. 25, 37

**Treatises**

Melville B. Nimmer & David Nimmer, *Nimmer on Copyright* (2004) ............ 35, 71

Paul Goldstein, *Copyright: Principles, Law & Practice* (1989) ............................. 36

William F. Patry, *Copyright Law & Practice* 285 (1994) ................................ 36, 63

William F. Patry, *Patry on Copyright* (2013) ............................................. 21, 36, 47

**Other Authorities**

Compendium II of Copyright Office Practices (1984) ............................... 25, 26, 27

Melissa M. Mathis, *Function, Nonfunction, and Monumental Works of Architecture: An Interpretive Lens in Copyright Law*, 22 Cardozo L. Rev. 595 (2001) ............................................................................................ 52

Robert C. Denicola, *Applied Art & Industrial Design: A Suggested Approach to Copyright in Useful Articles*, 67 Minn. L. Rev. 707 (1983) ............................ 35

YouTube, http://www.youtube.com/watch?v=hTWKbfoikeg (last visited June 23, 2014) ................................................................. 45

http://www.coolcopyright.com/cases/chp4/kieselsteinpearl.htm (last visited June 23, 2014) ................................................................. 38

## STATEMENT IN SUPPORT OF ORAL ARGUMENT

Plaintiffs-Appellants Varsity Brands, Inc., Varsity Spirit Corporation, and Varsity Spirit Fashions & Supplies, Inc. (collectively, "Varsity") respectfully request oral argument to address any questions as might occur to the Court not answered fully by the briefs of the parties regarding the issues in this case. Further, the primary issue on appeal is an issue of first impression for this Court and oral argument may assist the Court in determining the law in the Sixth Circuit on the issue of separability under copyright law.

## JURISDICTIONAL STATEMENT

In this action, Varsity sued Defendant-Appellee Star Athletica, LLC ("Star") for infringement of five registered copyrights under the Copyright Act, 17 U.S.C. § 101 *et seq.* Jurisdiction of the district court was proper under 28 U.S.C. §§ 1331, 1332, 1338(a) and 1367(a). Following the district court's entry of summary judgment for Star, this Court has appellate jurisdiction pursuant to 28 U.S.C. § 1291.

## STATEMENT OF THE ISSUES

Did the district court err in granting Star's Motion for Summary Judgment on the issue of the separability under copyright law, when (1) the district court created a new and unprecedented test for determining separability which is contrary to law,

(2) it ruled under its new test that Varsity's five registered two-dimensional designs were not conceptually separable from garments to which they were applied because "the presence of such designs and colors is at the core of the ideal—of 'cheerleading-uniform-ness,'" (3) it misapplied the definition of "useful article" as interpreted by this Court, (4) it did not properly consider the presumption of validity afforded Varsity's copyright registrations, and (5) it did not rely on any evidence from Star to rebut the presumption of validity?

Did the district court err in admitting expert testimony on copyrightability?

Did the district court err in dismissing Varsity's state law claims?

## STANDARD OF REVIEW

The Court of Appeals reviews the district court's grant of summary judgment *de novo*, *Jones v. Blige*, 558 F.3d 485, 490 (6th Cir. 2009), viewing all inferences in the light most favorable to the non-moving party, *Sharp v. Aker Plant Servs. Grp., Inc.*, 726 F.3d 789, 796 (6th Cir. 2013). This Court reviews a district court's admission of expert testimony for an abuse of discretion and will be overturned if such a ruling was based on an erroneous view of the law or was clearly erroneous as to assessment of the evidence. *In re Scrap Metal Antitrust Litig.*, 527 F.3d 517, 528 (6th Cir. 2008).  A district court's decision to dismiss for

lack of subject matter jurisdiction is reviewed *de novo*. *Taveras v. Taveraz*, 477 F.3d 767, 771 (6th Cir. 2007).

**STATEMENT OF THE CASE**

## I.      Factual Background

### A. The Parties

This case involves the infringement by Star of five registered copyrighted designs of Varsity.  The issue on appeal is not the actual infringement but whether Varsity's copyrighted designs are separable, and therefore copyrightable, under 17 U.S.C. § 101 *et seq*.

Varsity was founded in 1974 and for many years has been among the most successful and highly respected companies in the United States engaged in the business of creating designs and manufacturing and selling high-quality apparel and accessories for use in cheerleading and related activities, as well as organizing and sponsoring cheerleading events, camps and competitions.  RE#170, PageID 2228, Joint Statement of Undisputed Facts ("JSUF") ¶ 1; RE#1, PageID 2-4, Complaint ¶¶ 8, 16.  Varsity's success is in large part attributable to its employment, at substantial cost, of talented designers who create the original and attractive graphic designs that are applied to Varsity apparel and accessories. RE#1, PageID 3, Complaint ¶¶ 9, 12.

Star was founded in 2010 and offers for sale cheerleading uniforms, among other things. Star does not employ designers. RE#170, JSUF ¶ 2, PageID 2229. Shortly after its founding, Star began offering for sale cheerleading uniforms through its catalogs and its website which display its products. *Id.* ¶¶ 63-67, Page ID 2239-40.

**B. Star's Infringement**

When Varsity obtained a copy of Star's catalog, it discovered certain images contained therein and on Star's website infringed five of Varsity's copyrighted designs. Varsity filed its Complaint against Star in July 2010, alleging, *inter alia*, copyright infringement based on Star's manufacture and distribution of garments bearing unauthorized copies of Varsity's designs, and its distribution and display of photographs of garments bearing Varsity's copyrighted designs on its website and in its catalogs. RE#1, PageID 1-16, Complaint; RE#173, PageID 2386-87, 2397-98, 2400, VSUF ¶¶ 8-10, 41-42, 56; RE#173-2, PageID 2438-39, Declaration of Kimberly Williams ("Williams Decl.") ¶ 5; RE#173-6, PageID 2545, Declaration of Brian Carroll ("Carroll Decl.") ¶ 8; RE#173-9, PageID 2629-31, Deposition of Kerry Leake at 164:3-165:11; 166:4-14.

4

## C. The Varsity Designs

Like all of Varsity's original graphic designs, the five designs copied by Star (the "Varsity Designs") were created by Varsity's in-house designers as works made for hire.  RE#170, PageID 2230-2236, JSUF ¶¶ 7-45; RE#1, PageID 3, Complaint ¶¶ 10-11, 28, 35, 41, and 48; RE#51, PageID 532, First Amendment to Complaint ¶ 55.  Varsity received a federal copyright registration for each of the Varsity Designs.  RE#170, PageID 2232-2236, JSUF ¶¶ 8, 14, 16, 22, 24, 31, 38, 44; RE#172-2, PageID 2367-2371, Collective Exhibit A to Varsity's Summary Judgment Memorandum.  The deposit materials Varsity submitted to the Copyright Office for the Varsity Design registrations are shown below.



Design 078
Registration No. VA 1-417-427
RE#172-2, PageID 2368, Exhibit A to Varsity's Summary Judgment Memorandum

6



Design 0815
Registration No. VA 1-675-905
RE#172-2, PageID 2367, Exhibit A to Varsity's Summary Judgment Memorandum



Design 299B
Registration No. VA 1-319-226
RE#172-2, PageID 2371, Exhibit A to Varsity's Summary Judgment Memorandum



Design 299A
Registration No. VA 1-319-228
RE#172-2, PageID 2370, Exhibit A to Varsity's Summary Judgment Memorandum

9



Design 074
Registration No. VA 1-411-535
RE#172-2, PageID 2369, Exhibit A to Varsity's Summary Judgment Memorandum

Varsity has obtained copyright registrations in over 200 original graphic designs in addition to the five Varsity Designs. RE#173, PageID 2393-96, VSUF ¶¶ 34-36; RE#173-6, PageID 2542-44, Carroll Decl. ¶¶ 4-5.

10

**D. The Process of Creating the Varsity Designs**

Every Varsity design begins as a sketch on paper. RE#173, PageID 2385, VSUF ¶ 3; RE#173-2, PageID 2438-39, Williams Decl. ¶ 5; RE#173-3, PageID 2451, 2454-55, 2456, 2464, Deposition of Kimberly Williams ("Williams Dep.") at 38:21-25, 48:19-49:1, 53:4-7, 93:7-8; RE#193-1, PageID 4127-28, Exhibit B to Williams Decl. Varsity's designers create original combinations for designs, i.e., selections and arrangements of visual elements including angles, lines, stripes, Vs or chevrons, coloring, shapes, curves, diagonals, zigzags, and other geometric forms. RE#173, PageID 2385-86, VSUF ¶ 4; RE#173-3, PageID 2452, 2461, Williams Dep. at 39:13-19, 61:20-22.

Varsity designers' creations are not intended exclusively to be used on garments; not until a sketch is created does Varsity decide on the type of article, if any, a new design should appear. RE#173, PageID 2387, VSUF ¶ 12; RE#173-2, PageID 2439, Williams Decl. ¶ 6; RE#173-3, PageID 2453, 2463, Williams Dep. at 41:4-7, 70:11-16. If it is determined that a given design will be used on a garment, the design is assigned a number. RE#173-3, PageID 2454-55, Williams Dep. at 48:19-49:4. A template, "essentially a scaled down version of the pattern," is created, and the design is placed on the template. RE#173-3, PageID 2455, Williams Dep. at 49:5-8. Then a patternmaker makes a pattern. *Id.* at 49:8-12,

11

PageID 2455. There are several ways to apply a graphic design to a garment, including by (1) cutting and sewing together panels of fabric; (2) "sublimating" the design by ink transfer onto fabric; (3) embroidering the design onto the fabric; and (4) screen printing, which involves spraying ink on the surface of the garment. RE#173, PageID 2391-92, VSUF ¶ 28; RE#173-1, PageID 2411, Declaration of Gary Spencer ("Spencer Decl.") ¶ 5. Varsity uses the "cut-and-sew" and sublimation methods. RE#173, PageID 2392, VSUF ¶ 29; RE#173-1, PageID 2411, Spencer Decl. ¶ 6.

Importantly to this appeal, Varsity's designers are not directed to take garment construction limitations into consideration. It is someone else's job – the job of Varsity's Production Department – "to figure out how to reproduce th[e] design on a garment." RE#173-2, PageID 2439-40, Williams Decl. ¶ 8. If a design as reproduced on a prototype garment differs in appearance from the design as sketched, the design is not amended; instead, Varsity's Production Department starts over and tries again to reproduce the design accurately. RE#173, PageID 2388, VSUF ¶ 16; RE#173-1, PageID 2411, Spencer Decl. ¶ 4; RE#173-2, PageID 2439-40, Williams Decl. ¶ 8; RE#173-3, PageID 2462, Williams Dep. at 62:13-15. Garment construction considerations did not dictate or influence the selection and arrangement of the visual elements that comprise the Varsity Designs. RE#173,

12

PageID 2388-91, VSUF ¶¶ 17, 19, 21, 24; RE#173-2, PageID 2439-40, Williams Decl. ¶¶ 8-9.  The task of a Varsity designer is not to enhance the functionality of a garment, but to express creative concepts and ideas in an original way.  RE#173, PageID 2389, VSUF ¶ 20; RE#173-2, PageID 2438-40, Williams Decl. ¶¶ 5, 9.

## II.    Pertinent Procedural History

On December 16, 2011, Star served expert reports.  Thereafter, Varsity filed a motion to preclude the testimony of Star's purported experts on the grounds that their testimony was irrelevant, addressed matters easily within the ken of a lay juror, invaded the province of the court, and was based on "methodology" that was demonstrably unreliable.  RE #97, PageID 1174-1308, Motion to Preclude Experts.  The district court referred the motion to the magistrate judge, who denied Varsity's Motion to Preclude, but allowed Varsity to serve rebuttal expert reports.  RE #137, PageID 1829-1838, Magistrate's Expert Order.  Varsity appealed the magistrate judge's decision to the district court, which affirmed.  RE #148, PageID 1935-1949, Expert Order.  The district court held that admitting expert testimony on "whether the artistic features of the design of a useful article are separable from its functional aspects" is not contrary to law, and "[t]herefore, the admission of Defendant's proffered expert opinions on the issue of *either* copyrightability or

substantial similarity is within the precepts of applicable law, and the magistrate judge did not err in so deciding." *Id.* at 10, PageID 1944.

While neither party's experts opined on the issue of substantial similarity, the district court nevertheless relied upon a case addressing substantial similarity to permit expert testimony on the issue of separability. *Id.* at 8-9, PageID 1942-43. Thus, the court held that "Plaintiffs' designs fall into the category of materials on which expert testimony is appropriate." *Id.* (citing *Kohus v. Mariol*, 328 F.3d 848 (6th Cir. 2003)).

In the end, the district court did not refer to expert testimony in its Summary Judgment Order on the parties' summary judgment motions, thereby seeming to confirm that such testimony is neither relevant nor useful in this copyright infringement case involving "aesthetic arts, such as music, visual works or literature." *Computer Assocs. Int'l, Inc. v. Altai, Inc.*, 982 F.2d 693, 713-14 (2d Cir. 1992). The expert testimony the district court held admissible, then disregarded, on the whole supports the validity of the Varsity Design copyrights. *See* § E.2 and E.3 *infra*.

Pursuant to the district court's Expert Order, but maintaining its objection to the court's ruling, Varsity disclosed its rebuttal experts, Professor Susan Scafidi

14

and Frances Harder, who provided testimony regarding, *inter alia*, the separability and non-functionality of the Varsity Designs.

Both parties filed Summary Judgment Motions. Varsity moved for summary judgment on (1) the non-functionality and separability of the Varsity Designs, (2) Star's infringement of the copyrighted designs, and (3) Star's counterclaim and affirmative defenses related to certain copyright validity issues, as well as generic defenses such as statute of limitations. RE#172, PageID 2300-2383, Plaintiffs' Summary Judgment Motion and Memorandum. Star moved for summary judgment on (1) the alleged inseparability and functionality of the Varsity Designs, (2) Star's counterclaim of fraud on the Copyright Office, and (3) Varsity's state law causes of action.[1] RE#168, PageID 2120-2125, Defendant's Summary Judgment Motion.

On March 1, 2014, the district court granted summary judgment for Star, relying solely on the court's novel and unprecedented separability determination: that because the "presence of such designs and colors is at the core of the ideal of

---

[1] Some 69 days after the close of summary judgment briefing, Star moved to exclude the testimony of Varsity's expert witnesses, as well as physical samples of Varsity products and fabric submitted by Varsity in support of its Motion for Summary Judgment. The district court declined to award Star the relief it sought as the court did not address Star's motions in the court's Summary Judgment Order.

'cheerleading-uniform-ness'…, the colors-and-designs component of a cheerleading uniform cannot be conceptually separated from the utilitarian object itself. Copyright protection, as a matter of law, cannot apply." RE#199, Page ID4295-4312, Summary Judgment Order; RE#200, PageID 4313-4314, Judgment. The district court did not address the other issues briefed by the parties. Despite the fact that Varsity's state law claims were supported by diversity jurisdiction, the district court dismissed those claims without prejudice on the basis that the court had discretion to decline to exercise jurisdiction over them. RE#199, PageID 4310-11, Summary Judgment Order at 17-18.

This appeal followed. RE#201, PageID 4315-16, Notice of Appeal.

## SUMMARY OF ARGUMENT

In granting summary judgment in favor of Star, the court made multiple reversible errors. First, the district court erroneously found that the statutory presumptions of validity provided under the Copyright Act were "easily dispensed with," including the unsupported assertion that the Copyright Office "tends toward cursory issuance of registrations" when in fact the expertise of the Register of Copyrights is universally recognized. The district court's ruling was improper under the very authority cited by the court, which instructs that the presumption may be rebutted only based on evidence presented by the defendant that casts

16

doubt on the presumption. The district court's opinion conducts no analysis concerning Star's burden to rebut the statutory presumption and cites to no record evidence to support a finding that Star carried its burden; instead, the court applied the newly-formulated "ideal of cheerleading-uniform-ness" analysis to invalidate Varsity's registered copyrights.

Second, after failing properly to consider and address the applicable presumptions of validity, the district court created a new test for determining conceptual separability under copyright law - the "ideal of cheerleading-uniform-ness." This newly-devised test is contrary to well-established law. Congress, the Copyright Office, and the courts have determined that designs applied to useful articles are subject to copyright protection if they contain some element that can be identified as physically or conceptually separable from the utilitarian aspects of the article pursuant to the definition of "useful article." The legislative history and the language of the 1976 Act show that Congress viewed two-dimensional graphic works applied to garments – such as the Varsity Designs – as readily separable for copyright purposes. The Varsity Designs are separable under any of the applicable approaches courts have adopted for determining whether designs applied to three-dimensional articles can be conceptually separated. The most widely accepted of these approaches is the Seventh Circuit's "process-oriented" approach, also

adopted by the Fourth Circuit, which is consistent with, and in fact synthesizes, several separability tests previously devised by the Second Circuit. While the district court's *sui generis* test is contrary to established law, the court further erred by misapplying the statutory definition of "useful article" by erroneously linking copyrightability to a work's "purpose" and basing its ruling on a doctrine, "decorative function," that is contrary to this Circuit's binding precedent.

Applying the appropriate test for separability, the Court should find that the Varsity Designs are separable.

Apart from its summary judgment ruling, the district court erroneously denied Varsity's Motion to Preclude Star's proffered expert testimony because Star's experts did not serve to aid the trier of fact, invaded the province of the court by addressing questions of law, and used demonstrably unreliable methodology.

Finally, the district court erroneously dismissed Varsity's state law claims, over which the court had subject matter jurisdiction based on 28 U.S.C. § 1332.

## **ARGUMENT**

### I. **The District Court's Determinations Concerning Varsity's Registered Copyrights Are Erroneous**

The district court committed multiple reversible errors in ruling to invalidate five of Varsity's copyrights. From the improper treatment of the presumptions of

validity applicable to Varsity's copyright registrations to the creation of a "ideal of cheerleading-uniform-ness" test which is contrary to law, the district court improperly granted summary judgment in favor of Star. The statutes of the Copyright Act relating to separability and the Copyright Office's application of those statutes as well as the deference accorded the Copyright Office's determinations are instructive to illustrate the errors made by the district court. Also, decisions on the issue of conceptual separability by Circuit Courts of Appeals provide guidance as to the appropriate test for separability to be adopted by this Court and application of that test to the Varsity Designs at issue here.

## A. The Copyright Act's Protection of Applied Art

The Copyright Act provides protection for "[w]orks of authorship includ[ing] … pictorial, graphic, and sculptural works." 17 U.S.C. § 102(a)(5). The Copyright Act defines "pictorial, graphic, and sculptural works" to include "two-dimensional and three-dimensional works of fine, graphic, and applied art, photographs, prints and art reproductions, maps, globes, charts, diagrams, models, and technical drawings, including architectural plans." 17 U.S.C. § 101. Section 101 provides further that

> the design of a useful article, as defined in this section, shall be
> considered a pictorial, graphic, or sculptural work only if, and
> only to the extent that, such design incorporates pictorial,
> graphic, or sculptural features that can be identified separately

> from, and are capable of existing independently of, the utilitarian aspects of the article.

17 U.S.C. § 101. The Act defines a "useful article" as an article "having an intrinsic utilitarian function that is not merely to portray the appearance of the article or to convey information." *Id*. Congress intended the definition of "pictorial, graphic, and sculptural works" to be broad: "works of 'applied art' encompass all original pictorial, graphic, and sculptural works that are intended to be or have been embodied in useful articles, regardless of factors such as mass production, commercial exploitation, and the potential availability of design patent protection." H.R. Rep. No. 1476, 94th Cong., 2d Sess. 54 (1976) ("House Report"), App. 8. The legislative history also shows that Congress "s[ought] to draw as clear a line as possible between copyrightable works of applied art and uncopyrighted works of industrial design." *Id.*

With regard to two-dimensional graphic works, the House Report is straightforward: "A two-dimensional painting, drawing, or graphic work is still capable of being identified as such when it is printed on or applied to utilitarian articles such as textile fabrics, wallpaper, containers, and the like." *Id*. at 55, App. 8; *see, e.g.*, 2 William F. Patry, *Patry on Copyright* § 3:135, p.392 (2013) ("Two-dimensional works applied to useful articles were not believed to pose any difficulties since they are not the design of the useful article, but rather are

20

something extrinsic to that article."). On the other hand, Congress intended that under Section 101 the "shape" of "an automobile, airplane, ladies' dress, food processor, television set, or any other industrial product" would not be subject to copyright protection unless such shape "contains some element that, physically or conceptually, can be identified as separable from the utilitarian aspects of the article." *Id.*

**B. The District Court's Holding That the Statutory Presumption of Copyright Validity Was Rebutted Is Contrary to the Evidence and Erroneous**

The Copyright Act states:

> In any judicial proceeding, the certificate of a registration made before or within five years after first publication of the work shall constitute *prima facie* evidence of the validity of the copyright and of the facts stated in the certificate. The evidentiary weight to be accorded the certificate of a registration made thereafter shall be within the discretion of the court.

17 U.S.C. § 410(c). Three of the Varsity Design copyrights were registered by the Copyright Office within five years after first publication, and were thus entitled to a presumption of validity under Section 410(c). Star, accordingly, "shoulder[ed] the burden of rebutting the presumptive validity of" those copyrights, *Lexmark Int'l, Inc. v. Static Control Components, Inc.*, 387 F.3d 522, 534 (6th Cir. 2004). This *includes* the presumption that the designs are separable from any useful

articles on which they are reproduced, *Frank Betz Assocs. v. J.O. Clark Constr., L.L.C.*, No. 08-159, 2010 U.S. Dist. LEXIS 53437, *24 (M.D. Tenn. May 30, 2010) ("[I]t is well established under Sixth Circuit precedent that *both the originality and the non-functionality* of a copyrighted work are presumptively established by copyright registration.") (emphasis added) (citing *Lexmark*, 387 F.3d at 534).

Of the two remaining copyrights, Varsity registered one five years and six months, and the other six years and four months, after first publication. The evidentiary weight of those registrations was, accordingly, within the discretion of the court. *See Frank Betz Assocs. v. Signature Homes, Inc.*, 2009 U.S. Dist. LEXIS 59354, *24 (M.D. Tenn. July 13, 2009) (finding, as to works registered six years and one month and six years and four months after first publication, "the difference between five years and six years ... not significant enough to undermine the presumption of validity").

The district court, however, in a footnote found the statutory presumptions of validity, which include originality[2] and separability, "easily dispensed with,"

---

[2] While the presumption of validity afforded Varsity's copyrights also applies to originality, *Yurman Design, Inc. v. PAJ, Inc.*, 262 F.3d 101, 109 (2d Cir. 2001) ("The party contesting the originality of a properly registered copyright must show that 'there was such an overwhelming amount of evidence of nonoriginality that reasonable and fair minded men could not have found' the designs to be

based on (1) *dicta* in a Fourth Circuit opinion that "the Copyright Office tends toward cursory issuance of registrations," and (2) "other evidence in the record … which suggests that the works at issue are non-copyrightable utilitarian articles." RE#199, PageID 4300, Summary Judgment Order at 6 n.2. Both bases are erroneous.

### 1. The Copyright Office's Issuance of Varsity's Copyright Registrations Was Not "Cursory"

Numerous courts have confirmed that the Copyright Office's examination of copyright applications such as Varsity's is neither cursory nor inexpert. *See*, *e.g.*, *Esquire, Inc. v. Ringer*, 591 F.2d 796, 801 (D.C. Cir. 1978) (noting that the copyrightability of graphic designs applied to useful articles "is an issue of long-standing concern to the Copyright Office, and is clearly a matter in which the Register has considerable expertise"). As the D.C. Circuit noted,

> The Register indicates that the concepts of "intrinsic function," "works of art," and separation of features, embodied in 37 C.F.R. § 202.10(c), "are the result of a most searching and careful consideration by the Copyright Office of the intendment of the Copyright Act and the substantial economic impact of its decisions in this area … (T)he language of the provision was not casually chosen."

*Id*. (quoting *Esquire, Inc. v. Ringer*, 414 F. Supp. 939 (D.D.C.1976)).

---

original."), the issue of originality was neither part of the parties' summary judgment motions nor addressed by the district court. It is not an issue on appeal.

The Copyright Office's involvement in the issue extends back at least six decades.  *See*, *e.g.*, House Report at 54-55, App. 8; Second Supplementary Register's Report on the General Revision of the U.S. Copyright Law (1975) ("Register's Report"), App. 25:

> The Copyright Office decided after much discussion that for purposes of registration, the following line should be drawn in the regulations … *virtually all original two-dimensional designs for useful articles (textile fabrics, wallpaper, floor tiles, painted or printed decorations, etc.) were subject to copyright registration*.  The same was true of those three-dimensional designs that can be conceptually separated and are capable of existing independently of the utilitarian aspects of the article embodying them ….

*Id*. at 192-93, App. 25 (emphasis added).   Since the enactment of the 1976 Copyright Act, Copyright Office practice has been to determine whether separability exists whenever an application implicates the "useful article" doctrine. *See* Compendium II of Copyright Office Practices (1984), §§ 505.02 ("Separability test.  Registration of claims to copyright in three-dimensional useful articles can be considered only on the basis of separately identifiable pictorial, graphic, or sculptural features which are capable of independent existence apart from the shape of the useful article.").

Separability exists when elements are either physically or conceptually separable from the article on which they appear. The Copyright Office uses the following standard to determine whether physical separability exists:

> The physical separability test derives from the principle that a copyrightable work of sculpture which is later incorporated into a useful article retains its copyright protection. Examples of works meeting the physical separability test include a sculptured lamp base of a Balinese dancer, or a pencil sharpener shaped like an antique car. However, since the overall shape of a useful article is not copyrightable, the test of physical separability is not met by the mere fact that the housing of a useful article is detachable from the working parts of the article.

Compendium II § 505.04. The Office determines conceptual separability, which is applicable to this case, under the following standard:

> Conceptual separability means that the pictorial, graphic, or sculptural features, while physically inseparable by ordinary means from the utilitarian item, are nevertheless clearly recognizable as a pictorial, graphic, or sculptural work … independent of the shape of the useful article, *i.e.*, the artistic features can be imagined separately and independently from the useful article without destroying the basic shape of the useful article. The artistic features and the useful article could both exist side by side and be perceived as fully realized, separate works – one an artistic work and the other a useful article.

*Id.* § 505.03.

Because of its expertise and long experience, the Copyright Office's interpretations of the Copyright Act, including its decisions regarding separability under Section 101, are entitled to deference as long as they are reasonable and not

25

contrary to the plain language of the statute. *See, e.g., Skidmore v. Swift & Co.*, 323 U.S. 134, 139 (1944); *Chevron U.S.A. Inc. v. Natural Res. Def. Council, Inc.*, 467 U.S. 837, 844 (1984) ("[C]onsiderable weight should be accorded to an executive department's construction of a statutory scheme it is entrusted to administer, and the principle of deference to administrative interpretations."). Accordingly, "[i]nterpretation of copyright law in the Compendium II is 'entitled to judicial deference if reasonable.' Here, the Copyright Office's interpretation is reasonable, and should be followed." *Craigslist Inc. v. 3Taps Inc.*, 942 F. Supp. 2d 962, 976 (N.D. Cal. 2013) (quoting *Batjac Prods. Inc. v. GoodTimes Home Video Corp.*, 160 F.3d 1223, 1230 (9th Cir. 1998)).

Thus, when the Copyright Office has made a reasoned determination as to the separability *vel non* of a work of graphic authorship from a useful article,

> Courts may not substitute their own judgment …. [The D.C.] Circuit has accorded great deference to the Copyright Office because the Register, who must make such determinations on a daily basis, is possessed of considerable expertise in this area.… The Register correctly applied the applicable legal standard under the copyright law to the facts presented by each of the Plaintiff's applications and found that each [useful article] contained no separable features that are registrable as "pictorial, graphic, or sculptural works."

*Custom Chrome v. Ringer*, 1995 U.S. Dist. LEXIS 9249, *12 (D.D.C. June 30, 1995) (APA action challenging Register's decision to deny copyright registration);

*see*, *e.g.*, *N.Y. Mercantile Exch., Inc. v. Intercontinental Exchange, Inc.*, 389 F. Supp. 2d 527, 543 (S.D.N.Y. 2005) ("courts have found that the policies and interpretation of the Office are entitled to deference."); *OddzOn v. Oman*, 924 F.2d 346, 349 (D.C. Cir. 1991) ("It is the job of the administrative agency, not this reviewing court, to determine in the first instance which is the better test for determining conceptual separability."); *Norris Indus. v. Int'l Tel. & Tel. Corp.*, 696 F.2d 918, 924 (11th Cir. 1983) ("As we have suggested to be appropriate, the court in *Kieselstein-Cord* gave some deference to the Copyright Office's determination that the belt buckles were copyrightable works of art, noting that 'the Copyright Office continually engages in the drawing of lines between that which may be and that which may not be copyrighted.'") (quoting *Kieselstein-Cord v. Accessories by Pearl, Inc.*, 632 F.2d 989, 994 (2d Cir. 1980)); *Rogers v. Better Business Bureau of Metro. Houston, Inc.*, 887 F. Supp. 2d 722, 730 (S.D. Tex. 2012) ("Defendant presents an appealing argument …. But two legal constructs stand in the way of summary judgment on the validity of Plaintiff's copyright, the *prima facie* presumption and deference to the Copyright Office.").

The non-cursory character of the Copyright Office's examination of Varsity's applications, and the error of the district court's "easily dispensing with" the statutory presumption, are evident in the Office's examination of 52 Varsity

design copyrights, which are of the same type as the Varsity Designs at issue here,

for which the Office initially refused registration. The initial refusals were based

not on a determination of functionality, but on a preliminary finding that the

designs lacked sufficient "graphic authorship." RE#173, PageID 2396-97, VSUF

¶¶ 35-37; RE#173-6, PageID 2544-45, 2547-53, Carroll Decl. ¶ 5 and Copyright

Office Correspondence attached as Exhibit A thereto. In three separate letters

reversing its initial refusals, the Copyright Office stated that it had "carefully

reviewed these works, articles of clothing." RE#173, PageID 2396-97, VSUF ¶¶

35-37; RE#173-6, PageID 2544-45, 2547-53, Carroll Decl. ¶ 5 and Copyright

Office Correspondence attached as Exhibit A. The Register's representative

continued,

> Upon further review, we have decided to register a copyright
> claim in all [of the] works because we believe that each work
> contains a sufficient, <u>although minimal</u>, amount of original and
> creative **separable** graphic authorship in the treatment and
> arrangement of the elements, coupled with their coloring,
> appearing on the surface of each work that may be regarded as
> copyrightable and, therefore, support a copyright registration.

RE#173, PageID 2396-97, VSUF ¶¶ 35-37; RE#173-6, PageID 2544-45, 2547-53,

Carroll Decl. ¶ 5 and Copyright Office Correspondence attached as Exhibit A

(emphasis in original). The Copyright Office's repeated statement that each of 52

Varsity designs contains original graphic authorship "appearing on the surface" of

the work, which the Office expressly found to be separable from the "article of clothing" on which the design may appear, is compelling evidence that the Copyright Office does not issue registrations "cursorily" – and that the Varsity Designs are readily separable from the utilitarian aspects of any garment to which they are applied. The district court ignored this evidence.

The Office's statements also leave no doubt as to what the result would have been had the district court "obtain[ed] the input of the Register" under 17 U.S.C. § 411(b)(2), regarding Star's affirmative defense of fraud on the Copyright Office. The statute, as amended in 2008, provides:

> In any case in which inaccurate information [included on a copyright application with knowledge that it was inaccurate] is alleged, the court shall request the Register of Copyrights to advise the court whether the inaccurate information, if known, would have caused the Register of Copyrights to refuse registration.

17 U.S.C. § 411(b)(2). Section 411(b)(2) "was meant to glean the Register's opinion before a court invalidates a copyright." *Fleming v. Parnell*, 2014 U.S. Dist. LEXIS 39528, *11 (W.D. Wash. Mar. 24, 2014). *See DeliverMed Holdings, LLC v. Schaltenbrand*, 734 F.3d 616, 623 (7th Cir. 2013) ("By granting a declaratory judgment invalidating DeliverMed's copyright registration without following the statutorily mandated procedure, the district court made a legal error."). The district court did not seek advice from the Register of Copyrights

pursuant to § 411(b)(2).  RE#199, Page ID 4311, Summary Judgment Order at 9 n.4 (finding it "not necessary to address the merit of" Star's affirmative defenses).

### 2. The District Court's Finding That the Statutory Presumption of Validity Was Overcome Is Unsupported and Erroneous

"Once the plaintiff produces a valid registration certificate, the burden of proof shifts to the defendant to overcome the presumption of ownership and validity."  *Universal Furniture Int'l, Inc. v. Collezione Europa USA, Inc.*, 2007 U.S. Dist. LEXIS 68345, *8 (M.D.N.C. Sept. 14, 2007).  A defendant's failure to meet its "burden to overcome the statutory presumption of validity" is particularly clear "where [it] failed to reference any authority for [its] position or to make fact-specific arguments by reference to specific portions of the record."  *Schenck v. Orosz*, 109 U.S.P.Q.2d 1099, 1110-11 (M.D. Tenn. 2013).

Star's complete failure "to carry its burden of proffering evidence sufficient to overcome the presumption of validity arising from Plaintiff's registration[s]," *L.A. Printex Indus. v. Le Chateau, Inc.*, 2012 U.S. Dist. LEXIS 40289, *15 (S.D.N.Y. Mar. 23, 2012), is actually confirmed by *Fonar Corp. v. Domenick*, 105 F.3d 99 (2d Cir. 1997), cited by the district court.  In *Fonar*, the Second Circuit vacated a district court's grant of summary judgment to defendants, finding that "the district court improperly refused to employ the ordinary presumption of *prima*

*facie* validity that attaches to a certificate of copyright registration.  In light of that presumption, … the grant of summary judgment is unsustainable." *Id.* at 101.  The Second Circuit explained that, "[g]enerally speaking, the presumption of validity may be rebutted where *other evidence* in the record casts doubt on the question." *Id.* at 104.  The Second Circuit's emphasized words are crucial:  defendants had in fact "presented no evidence … that casts doubt on the copyrightability of Fonar's software. … Nor did the district court focus on any 'other evidence' in the record that called into question the copyrightability of Fonar's software." *Id.* at 104-05.

The district court's grant of summary judgment to Star is unsustainable on the same basis.  The court's opinion is not based on, nor does it even mention any *evidence* presented by Star that calls into question the statutory presumption that the Varsity Design copyrights are valid.  The district court instead impermissibly substituted its judgment for that of the Copyright Office, and substituted for existing law a *sui generis* and newly-devised separability "doctrine" that is contrary to binding precedent and the Copyright Act.

### C. Circuits' Approaches to Separability

In creating its own test for separability used to invalidate Varsity's copyrights, the district court did not adopt any of the legitimate tests of conceptual separability discussed in detail by multiple Circuit Courts.  Courts and scholars

have devised a variety of approaches to determining whether separability exists. As the district court noted, the Seventh Circuit in *Pivot Point International, Inc. v. Charlene Products, Inc.*, 372 F.3d 913, 921 (7th Cir. 2004), discussed in detail the various tests courts and commentators have "suggested for determining when the artistic and utilitarian aspects of useful articles are conceptually separable":

> (1) the artistic features are "primary" and the utilitarian features "subsidiary" [citing *Kieselstein-Cord*, 632 F.2d at 993];
>
> (2) the useful article "would still be marketable to some significant segment of the community simply because of its aesthetic qualities" [citing Melville B. Nimmer & David Nimmer, 1 *Nimmer on Copyright* § 2.08[B][3] (2004)];
>
> (3) the article "stimulate[s] in the mind of the beholder a concept that is separate from the concept evoked by its utilitarian function" [citing *Carol Barnhart Inc. v. Econ. Cover Corp.*, 773 F.2d 411, 422 (2d Cir. 1985) (Newman, J., dissenting)];
>
> (4) the artistic design was not significantly influenced by functional considerations [citing *Brandir International, Inc. v. Cascade Pac. Lumber Co.*, 834 F.2d 1142, 1144 (2d Cir. 1987), as "adopting the test forwarded" in Robert C. Denicola, *Applied Art & Industrial Design: A Suggested Approach to Copyright in Useful Articles*, 67 Minn. L. Rev. 707, 741 (1983)];
>
> (5) the artistic features "can stand alone as a work of art traditionally conceived, and ... the useful article in which it is embodied would be equally useful without it," [citing 1 Paul Goldstein, *Copyright: Principles, Law & Practice* § 2.5.3, at 2:67, 109 (1989)]; and
>
> (6) the artistic features are not utilitarian [citing William F. Patry, 1 *Copyright Law & Practice* 285 (1994)].

*Id.* at 923.[3]

As set forth above, the legislative history as well as the language of the 1976 Act show that Congress did not view two-dimensional graphic works applied to garments or other utilitarian articles as posing substantial issues of separability under the Act. Professor Patry explains:

> Many two-dimensional works can be applied to useful articles. For example, a photograph can be made into a bumper sticker or applied to a T-shirt. A tattoo can be affixed to a body. A watercolor can be embossed on a stamp or license plate. A graphic work can be used as product packaging or reproduced on a watch face or on china or other dinnerware. In none of these cases, however, does the design function as the design *of* the useful article; instead, the work is *applied to* such article. Accordingly, use of the separability test is inappropriate. This same principle generally should be applied to textiles, rugs, *fabric designs, and clothing*.

*Patry on Copyright* § 3:150 p.433-34 (emphasis added), § 3:151 p.436 ("claims are rarely in the shape of clothing"). Due to their two-dimensional nature, the Varsity Designs are not designs "of" a garment or other "useful article" under Section 101 and are readily separable from any useful article to which they are applied. Even

---

[3] Courts generally agree that the test is disjunctive: "if a useful article incorporates a design element that is *physically or conceptually* separable from the underlying product, the element is eligible for copyright protection." *Chosun*, 413 F.3d at 328 (emphasis added); *Pivot Point*, 372 F.3d at 922-23 ("[C]ircuits have been almost unanimous in interpreting the language of § 101 to include both types of separability."); *Norris Indus.*, 696 F.2d at 923 ("Both case law and legislative history indicate that separability encompasses works of art that are either physically severable from the utilitarian article or conceptually severable.").

more, the Varsity Designs will readily be found to be copyrightable under any of the applicable approaches courts have adopted for determining whether designs applied to three-dimensional articles "can be conceptually separated and are capable of existing independently of the utilitarian aspects of the article embodying them." Register's Report at 193, App. 25.

### 1. *Pivot Point* and the Process-Oriented Approach

The most widely adopted approach is the "process-oriented" approach articulated in *Pivot Point*. In *Pivot Point*, the Seventh Circuit reversed a district court's summary judgment ruling that a mannequin head was not copyrightable. As the court noted, Pivot Point set out to develop a mannequin that would imitate the "'hungry look' of high-fashion, runway models." *Pivot Point*, 372 F.3d at 915. Pivot Point's designer was not given "any specific dimensional requirements." *Id.* Pivot Point obtained a copyright registration for the "bareheaded female human head with no makeup or hair." *Id.* The district court found that the sculpture served "utilitarian ends" because the mannequin was used by students in beauty schools to practice styling hair and applying makeup to the mannequin's eyes, lips, and cheeks. *Id.* at 916.

The district court in *Pivot Point* applied a test that considered whether the artistic features "can stand alone as a work of art traditionally conceived, and …

the useful article in which it is embodied would be equally useful without it." *Id.* at 917, 923. The Seventh Circuit *rejected* this test because "the test, at least when applied alone, is tied too closely to physical separability and, consequently, does not give a sufficiently wide berth to Congress' determination that artistic material conceptually separate from the utilitarian design can satisfy the statutory mandate." *Id.* at 924. After considering each of the existing tests, the Seventh Circuit adopted a "process-oriented approach for conceptual separability – focusing on the process of creating the object to determine whether it is entitled to copyright protection." *Id*. at 930. It found that approach the most "workable judicial approach capable of giving meaning to the basic Congressional policy decision to distinguish applied art from uncopyrightable industrial art or design." *Id*.

A process-oriented approach, the Seventh Circuit found, reconciled the Second Circuit's analysis and holdings in *Kieselstein-Cord*, *Carol Barnhart*, and *Brandir*, and was consistent as well with "the more theoretical rendition of Judge Newman in his *Carol Barnhart* dissent – that 'the requisite "separateness" exists whenever the design creates in the mind of an ordinary observer two different concepts that are not inevitably entertained simultaneously.'" *Pivot Point*, 372 F.3d at 931 (quoting *Carol Barnhart*, 773 F.2d at 422). The process-oriented approach thus "provide[s] a more workable judicial methodology by articulating

the driving principle behind conceptual separability." *Id.* at 931-32. The conceptual separability test "is necessarily informed by 'whether the design elements can be identified as reflecting the designer's artistic judgment exercised independently of functional influences.'" *Id.* at 932 (quoting *Brandir*, 834 F.2d at 1145). "If the elements do reflect the independent, artistic judgment of the designer, conceptual separability exists. Conversely, when the design of a useful article is 'as much the result of utilitarian pressures as aesthetic choices,' the useful and aesthetic elements are not conceptually separable." *Id.* (internal citation omitted).

The Seventh Circuit applied its analysis not to some undefined genre of works such as "cosmetology mannequins," but to the specific features of the Pivot Point mannequin, and found that they easily fell within the scope of copyrightability: "[i]t certainly is not difficult to conceptualize a human face, independent of all of Mara's *specific* facial features, i.e., the shape of the eye, the upturned nose, the angular cheek and jaw structure, that would serve the utilitarian functions of a hair stand and, if proven, of a makeup model." *Id.* at 931 (emphasis added). "Indeed, one is not only able to conceive of a different face than that portrayed on the Mara mannequin, *but one easily can conceive of another visage that portrays the 'hungry look' on a high-fashion runway model.*" *Id.* (emphasis

36

added).  Thus, "[j]ust as Mattel is entitled to protection for 'its *own particularized expression'* of an 'upturned nose[], bow lips, and widely spaced eyes,' so too is [Pivot Point] entitled to have [its] expression of the 'hungry look' protected from copying."  *Id.* (citing *Mattel, Inc. v. Goldberger Doll Manufacturing Co.*, 365 F.3d 133, 136 (2d Cir. 2004) (emphasis added)).

There "was no evidence that [the creator's] artistic judgment was constrained by functional considerations."  *Id.* at 931-32 ("Passage did not require, for instance, that the sculpture's eyes be a certain width to accommodate standard-sized eyelashes, that the brow be arched at a certain angle to facilitate easy make-up application or that the sculpture as a whole not exceed certain dimensional limits….").  Thus, even though the mannequin served certain utilitarian functions, "the creative aspects of the Mara sculpture were meant to be seen and admired."  *Id.* at 932.  "[B]ecause Mara was the product of a creative process unfettered by functional concerns, its sculptural features 'can be identified separately from, and are capable of existing independently of,' its utilitarian aspects," and "[i]t therefore [met] the requirements for conceptual separability."  *Id.*

### 2. *Kieselstein-Cord*

The Second Circuit had reached a similar conclusion in *Kieselstein-Cord*, which concerned artistic designs incorporated into the surfaces of belt buckles:



*Kieselstein-Cord*, 489 F. Supp. 732, 733 (S.D.N.Y. 1980) (drawings of belt buckles); *see* http://www.coolcopyright.com/cases/chp4/kieselsteinpearl.htm (last visited June 23, 2014) (photographs of belt buckles). The Second Circuit reversed a district court's grant of summary judgment to the defendant, finding that the sculptural elements of the belt buckles were conceptually separable. *Kieselstein-Cord*, 632 F.2d at 993-94. The Second Circuit rejected the defendant's argument that "copyrightability cannot adhere in the 'conceptual' separation of an artistic element." *Id.* The court concluded that the "designs are not, as the appellee suggests …, mere variations of the 'well-known western buckle'" and that the buckle design was conceptually separable from the useful belt "function." *Id.*

### 3. *Brandir International*

Several years later, in *Brandir International, Inc. v. Cascade Pacific Lumber Co.*, 834 F.2d 1142 (2d Cir. 1987), the Second Circuit applied essentially the same

separability test that became the "process-oriented" test, holding that design elements of a bike rack were *not* conceptually separable because they were driven by utilitarian pressures. The bike rack at issue in *Brandir* is pictured below:



*Id.* Appendix to Opinion. The Second Circuit held that "[f]orm and function are inextricably intertwined in the rack, its ultimate design being as much the result of utilitarian pressures as aesthetic choices. Indeed, the visually pleasing proportions and symmetricality of the rack represent design changes made in response to functional concerns." 834 F.2d at 1147.

### 4. *Chosun International*

Subsequent to *Pivot Point*, the Second Circuit again took a "process-oriented" type of approach in *Chosun International, Inc. v. Chrisha Creations, Ltd.*, 413 F.3d 324 (2d Cir. 2005), finding conceptual separability exists "where design elements can be identified as reflecting the designer's artistic judgment exercised *independently* of functional influences." *Id.* at 328 (quoting *Brandir*, 834 F.2d at 1145) (emphasis in original). Referring to the *Kieselstein-Cord* belt

buckles, the *Chosun* court stated that, while the belt undeniably "performed the service of preventing one's pants from falling down," the ornate buckle design "was conceptually separable from that useful 'belt' function" because the belt design "did not enhance the belt's ability to hold up one's trousers." *Id.* (citing *Kieselstein-Cord*, 632 F.2d at 993). The Second Circuit, reversing the district court, found that Chosun likewise "may be able to show that [the sculptural features of its costumes] invoke in the viewer a concept separate from that of the costume's 'clothing' function, and that their addition to the costume was not motivated by a desire to enhance the costume's functionality *qua* clothing." *Id.* at 330.

### 5. *Universal Furniture*

The Fourth Circuit adopted and applied the "process-oriented" approach in *Universal Furniture International, Inc. v. Collezione Europa USA, Inc.*, 618 F.3d 417 (4th Cir. 2010). In *Universal Furniture*, the court affirmed a district court's conclusion that "decorative elements" adorning the plaintiff's furniture were "conceptually separable sculptural elements." *Id.* at 435. The district court found separability existed "because the designer's functional considerations ended after he had sketched the basic shapes of the pieces and because the designer selectively placed elements on the furniture to achieve a 'new look.'" *Id.* at 426. The Fourth

Circuit, affirming, noted that the design process "reflect[ed] an 'artistic judgment exercised independently of functional influences.'" *Id.* at 434 (quoting *Pivot Point*, 372 F.3d at 931). The designer admitted that the design (the "decorative elements" which included "three-dimensional shells, acanthus leaves, columns, finials, rosettes, and other carvings") was influenced somewhat by functional considerations: "furniture 'has got to function.'" *Id.* However, as the Fourth Circuit found, the designer's objective "in compiling these decorative elements onto the basic shapes of the furniture was not to improve the furniture's utility but to give [the pieces] a pretty face." *Id.* (citations and internal quotations omitted, brackets in original). The court reasoned that the artistic and aesthetic features "can be conceived of as having been added to, or superimposed upon, an otherwise utilitarian article, and they are therefore capable of existing independently of the furniture." *Id.* (citation and internal quotations omitted). The designs, accordingly, were "superfluous nonfunctional adornments for which the shape of the furniture (which is not copyrightable) serves as the vehicle." *Id.* ("A carved scroll of leaves on a nightstand post, for example, does nothing to improve the utilitarian aspect thereof.").

### 6. *Galiano* and the Discredited "Likelihood of Marketability" Test

In *Galiano v. Harrah's Operating Company, Inc.*, 416 F.3d 411, 421-22 (5th Cir. 2005), the Fifth Circuit adopted a "likelihood-of-marketability standard for garment design only" and held that there was no evidence that the designs of the casino uniforms "are marketable independently of their utilitarian function as casino uniforms." *Galiano*, unlike the present case, concerned a set of "clothing designs," designs *of* uniforms for casino workers. *Id.* at 413 n.3. Also in contrast to the present case, the *Galiano* plaintiff registered a collection of "more than fifty" clothing designs with the Copyright Office under a single application. *Id.* at 413. The Fifth Circuit affirmed the district court's finding that the plaintiff's uniform designs were not copyrightable "[b]ecause the court could not equate the *design of the garments' buttons, pleats, and collars* – though admittedly very creative – to *an artistic drawing on a shirt or a fabric design*." 416 F.3d at 414 (emphasis added).[4] The *Galiano* test has been repeatedly criticized. In addressing "other possible

---

[4] As discussed below, the analysis and facts of *Galiano* are inapplicable to Varsity's two-dimensional Designs. Indeed, while not a binding determination as it was part of a ruling on Star's Motion to Dismiss, it should be noted that the district court (through then-District Judge, now-Circuit Judge Bernice Donald) found that "the Fifth Circuit's 'likelihood-of-marketability' test is inapplicable to the instant case," as "the instant case concerns fabric design, which does not fall within the ambit of 'garment design' as discussed by the Fifth Circuit." RE#56, PageID 571, Order Denying Star's Motion to Dismiss at 11 n.8.

ways in which conceptual separability can be tested," the Second Circuit noted that "whether the article is marketable as art" is not a "very satisfactory" test. *See Brandir*, 834 F.2d at 1144; *see also Pivot Point*, 372 F.3d at 923-24 (reversing the district court's adoption of a similar test because "the test, at least when applied alone, is tied too closely to physical separability.").[5]  As a leading commentator notes, in *Galiano* "the Fifth Circuit made a sincere effort to address the vexing issues raised by conceptual separability, but ultimately ended up settling on the worst possible solution:  a discredited approach for a single type of work, garment designs.… The Fifth Circuit should abandon its approach." *Patry on Copyright* § 3:143.

### D. The District Court's "Ideal of Cheerleading-Uniform-ness" Test Is Contrary to Law

The district court did not apply any of the tests enumerated in *Pivot Point*, or the approach enunciated in *Pivot Point* itself.  Instead, the district court struck out

---

[5] The *Galiano* court found that *Pivot Point* "represents, by orders of magnitude, the most thorough and persuasive analysis of this question in any circuit."  Ironically, the primary reason the Fifth Circuit declined to adopt *Pivot Point* was because "the degree of influence *Pivot Point* will ultimately exert is manifestly uncertain." *Id.* at 418.  In addition to the other shortcomings of *Galiano*, this Court should reject *Galiano*'s "likelihood of marketability" test, which has been adopted by no other circuit.

on its own, inventing and applying a novel, *sui generis* standard that is contrary to law and unworkable.

### 1. The District Court Misapplied the Statutory Definition of a "Useful Article"

In relying on "evok[ing] the concept of cheerleading" analysis to find that the Varsity Designs are not copyrightable, the district court misapplied the concept of a "useful article." The Copyright Act plainly provides protection for graphic works that are incorporated into a "useful article" if and only to the extent the "design incorporates pictorial, graphic, or sculptural features that can be identified separately from, and are capable of existing independently of, the utilitarian aspects of the article." 17 U.S.C. § 101 (emphasis added). The Act defines a "useful article" as an article "having an intrinsic utilitarian function that is *not* merely to portray the appearance of the article or to convey information." *Id.* (emphasis added). In other words, it is an article that has an intrinsic utilitarian function for something other than portraying the appearance of the article or to convey information. In addition to the utilitarian function of cheerleading uniforms to clothe the body, the district court relied on the conclusion that a cheerleading uniform "evokes the concept of cheerleading" and therefore serves a second utilitarian function. RE#199, PageID4306, Summary Judgment Order at 15. However, the district court's analysis of the second utilitarian function, i.e.

44

"evoking," ignores, indeed subverts, the definition of "useful article." Specifically, to "evoke the concept of cheerleading" is nothing more than a way to "convey information"; and a design on a garment conveys such information precisely by portraying its own appearance.[6]

This Court rejected similar "evocative" reasoning in *Gay Toys, Inc. v. Buddy L Corp.*, 703 F.2d 970 (6th Cir. 1983). The district court in *Gay Toys* held that a toy airplane "possesses utilitarian and functional characteristics in that it permits a child to dream and let his or her imagination soar." *Id*. at 973. This Court reversed. The district court's extension of the "intrinsic utilitarian function" language to the expressive or evocative "function" of a visual work was erroneous as a matter of law:

> A painting of Lindbergh's Spirit of St. Louis invites the viewer "to dream and to let his or her imagination soar," and would not be copyrightable under the district court's approach. But the statute clearly intends to extend copyright protection to

---

[6] The district court's *ipse dixit* assertion that "a blank silhouette of a purported 'cheerleading uniform' … is not recognizable as a cheerleading uniform," *id.*, appears to be nothing more than the court's subjective – and incorrect – impression. Indeed, one need look no further than the first ten seconds of Nirvana's popular music video "Smells Like Teen Spirit," YouTube, http://www.youtube.com/watch?v=hTWKbfoikeg (last visited June 23, 2014), to see black garments that are instantly recognizable as cheerleading uniforms despite the absence of the "designs and colors" that the district court held to be "at the core of the ideal—of 'cheerleading-uniform-ness.'" In any case, the district court's *ipse dixit* is irrelevant to the copyrightability of the Varsity Designs.

paintings.  The district court would have the "useful article" exception swallow the general rule, and its rationale is incorrect.

*Id.*  The district court's incorrect reasoning here would similarly swallow the general rule.[7]

As the Third Circuit explained in *Masquerade Novelty v. Unique Industries*, 912 F.2d 663 (3d Cir. 1990),

That nose masks are meant to be worn by humans to evoke laughter does not distinguish them from clearly copyrightable works of art like paintings.  When worn by a human being, a

---

[7] By way of an example, all "Persian carpet" designs would be invalidated under the district court's "Platonic ideal" approach.  Consider the following hypothetical substituting "Persian carpet" for "cheerleading uniform" in the district court's reasoning:

[T]he absence of designs and colors on a [Persian carpet] simply fails to call to mind, or otherwise signal the presence of a [Persian carpet in the floor covering] at hand, …[so] the presence of such designs and colors is at the core of the ideal-- of ["Persian-carpet-ness."]  With that conclusion, it also follows that the colors-and-designs component of a [Persian carpet] cannot be conceptually separated from the utilitarian object itself.  Copyright protection, as a matter of law, cannot apply.

RE199, PageID 4296, Summary Judgment Order at 2.  *See Tufenkian Imp./Exp. Ventures, Inc. v. Einstein Moomjy, Inc.*, 338 F.3d 127, 137 (2d Cir. 2003) (reversing the district court's grant of summary judgment to defendant and holding that the defendant infringed plaintiff's copyrighted design incorporated into the carpet). The result would be the same for "patchwork quilts," "album covers," "wallpaper," "Mickey Mouse T-shirts," and any number of useful articles to which "designs and colors" are applied or incorporated; the district court's analysis in theory would invalidate virtually countless graphic artwork copyrights.

> nose mask may evoke chuckles and guffaws from onlookers. When hung on a wall, a painting may evoke a myriad of human emotions, but we would not say that the painting is not copyrightable because its artistic elements could not be separated from the emotional effect its creator hoped it would have on persons viewing it. The utilitarian nature of an animal nose mask or a painting of the crucifixion of Jesus Christ inheres solely in its appearance, regardless of the fact that the nose mask's appearance is intended to evoke mirth and the painting's appearance a feeling of religious reverence.

*Id.* at 671; *see also Superior Form Builders v. Dan Chase Taxidermy Supply Co.*, 74 F.3d 488, 494 (4th Cir. 1996).

The decision in *Chosun* is also instructive and consistent with *Gay Toys*. In *Chosun*, the Second Circuit held that the only relevant functionality of a Halloween costume was "the costume's functionality *qua* clothing." 413 F.3d at 330. Reversing the district court, the Second Circuit held that sculptural elements of a costume would be conceptually separable if they "invoke[d] in the viewer a concept separate from that of the costume's 'clothing' function," and if their "addition to the costume was not motivated by a desire to enhance the costume's functionality *qua* clothing." *Id.* Expressly rejecting reasoning like that employed by the district court in the present case, the Second Circuit held:

> The function of a costume is, precisely, to portray the appearance of something …, and in so doing, to cause the wearer to be associated with, or appear as, the item portrayed. It is difficult to see how such a "function" (separate and apart

> from the concomitant function as clothing) can make a costume, or a mask, "useful" under § 101.

*Id.* In sum, the Courts of Appeals, including this Court, and commentators have unanimously rejected the district court's misapplication of § 101. "Assigning to a work of art a functional character due to its emotive power or historical meaning does not transform it into a useful article under the copyright law. Indeed, to do so would exempt from protection most, if not all, works of art." Melissa M. Mathis, *Function, Nonfunction, and Monumental Works of Architecture: An Interpretive Lens in Copyright Law*, 22 Cardozo L. Rev. 595, 621 (2001). The district court's finding that the functionality of a useful article (a cheerleading uniform) includes "evok[ing] the concept of cheerleading" is clearly erroneous and contrary to law.

### 2. The District Court's Finding That Copyrightability of a Work Depends on Its Intended Purpose Is Erroneous

The district court's invalidation of copyrights in "designs and colors" used on "cheerleading uniforms" is contrary to a consistent body of law extending back to *Bleistein v. Donaldson Lithographing Co.*, 188 U.S. 239 (1903), in which the Supreme Court rejected the argument that the intended "purpose" of a work of visual art affects its copyrightability. In *Mazer v. Stein*, 347 U.S. 201 (1954), the Supreme Court reiterated that "[w]e find nothing in the copyright statute to support the argument that the intended use or use in industry of an article eligible for

copyright bars or invalidates its registration." *Id.* at 218. The irrelevance of the intended use of a pictorial, graphic or sculptural work to its copyrightability is reflected in the Regulations governing the Copyright Office:

> In order to be acceptable as a pictorial, graphic, or sculptural work, the work must embody some creative authorship in its delineation or form. The registrability of such a work is not affected by the intention of the author as to the use of the work or the number of copies reproduced.

37 C.F.R. § 202.10(a). Under the district court's reasoning, an original graphic design reproduced on a "cheerleading uniform"[8] would be ineligible for copyright protection, while the identical graphic work, with a different "intended use," would be protected. Such a rule is self-evidently unworkable; more to the point, it flies in the face of a century of settled law, including Supreme Court precedent.

---

[8] The district court's opinion below does not undertake to define the term "cheerleading uniform." Nor does the court's opinion reproduce, describe or even reference the specific Varsity Designs that the court held to be uncopyrightable. This disconnect from the specific expression of the Varsity Designs is itself erroneous. *See*, *e.g.*, *Pivot Point*, 372 F.3d at 931; *Goldberger Doll*, 365 F.3d at 136. Nor does the court address the proof in the record which expressly contradicts its subjective determination of an "intended use" of a garment. *See also* RE#173-4, PageID 2477, Declaration of Susan Scaifid ("Scafidi Decl.") ¶ 24 ("Plaintiff's copyrighted patterns might also be incorporated into clothing not intended for athletic use at all. Some Harajuku-style street fashion also incorporates surface designs and bright colors associated with cheerleader apparel, a trend that became even more prominent when pop stars such as Gwen Stefani and Madonna featured cheerleader-style apparel in concerts and videos.").

The Second Circuit's non-precedential opinion in *Jovani Fashion, Ltd. v. Fiesta Fashions*, 500 Fed. Appx. 42 (2d Cir. 2012), is inapposite. In *Jovani*, the court correctly held that the plaintiff was not entitled to copyright protection for three-dimensional portions of a prom dress consisting of "sequins and crystals," "horizontal satin ruching at the dress waist, and layers of tulle on the skirt."[9] *Id.* A picture of the dress at issue in *Jovani* is included in the record at RE#172-5, Page ID 2383. Varsity's two-dimensional Designs do not include such three-dimensional features and, on this basis alone, *Jovani*'s holding is inapplicable.

The district court cited *dicta* in *Jovani* that in turn referenced *dicta* in the Second Circuit's earlier opinion in *Whimsicality, Inc. v. Rubie's Costume Co.*, 891 F.2d 452, 455 (2d Cir. 1989), in which the court suggested that "clothing, in addition to covering the body, serves a 'decorative function,' so that the decorative elements of clothing are generally 'intrinsic' to the overall function, rather than separable from it." *Jovani*, 500 Fed. Appx. at 45.

---

[9] The plaintiff in *Jovani* was relying on registrations directed to catalogs. *See Jovani Fashion, Ltd. v. Cinderella Divine, Inc.*, 808 F. Supp. 2d 542, 545 (S.D.N.Y. 2011) (noting that the registrations were actually "for ten *catalogs* that they claim show artwork incorporated in dresses"). Thus, the Copyright Office had not made a specific determination of copyrightability with respect to the prom dress design itself, as opposed to the catalog as a whole.

Reliance on the "decorative function" *dicta* is precluded in this Circuit by the panel decision in *Gay Toys*, in which this Court explicitly rejected a district court's attempt to distort the "intrinsic function" language of the statute to include "decoration" on a toy airplane. 703 F.2d at 973 ("[U]nder the district court's reasoning, virtually any 'pictorial, graphic, and sculptural work' would not be copyrightable as a 'useful article.'"). The matter is deemed resolved, a panel of this Court having resolved it in a precedential opinion; "[o]nly an *en banc* court may overrule a circuit precedent, absent an intervening Supreme Court decision." *U.S. v. Barnwell*, 477 F.3d 844, 851 (6th Cir. 2007); *Meeks v. Illinois Central Gulf R.R.*, 738 F.2d 748, 751 (6th Cir. 1984); *see also* 6 Cir. R. 32.1(b) ("Published panel opinions are binding on later panels.").

Furthermore, *Whimsicality*'s "decorative function" has not been adopted by any other circuit. It is in fact inconsistent with precedential Second Circuit case law. In *Chosun*, the Second Circuit's reasoning is exactly contrary:

> The function of a costume is, precisely, to portray the appearance of something (like a lion, ladybug, or orangutan), and in so doing, to cause the wearer to be associated with, or appear as, the item portrayed. It is difficult to see how such a "function" (separate and apart from the concomitant function as clothing) can make a costume … "useful" under § 101.

*Chosun*, 413 F.3d at 330; *see also Masquerade Novelty*, 912 F.2d at 670 ("Congress has made plain its view that a product is only a 'useful article' if it has

'an intrinsic utilitarian function that is not merely to portray the appearance of the article.' 17 U.S.C. § 101."); *Superior Form Builders*, 74 F.3d at 494 ("[A]ny utilitarian aspect of the mannequin exists 'merely to portray the appearance' of the animal.").

The "decorative function" *dicta* is also belied by numerous cases in which the copyrightability and separability of lace designs on garments has been upheld, notwithstanding the fact that the very purpose of placing lace designs on dresses is to make the dress more attractive. *See Express, LLC v. Fetish Group, Inc.*, 424 F. Supp. 2d 1211, 1224 (C.D. Cal. 2006) (finding lace accents irrelevant to a camisole's utilitarian function, and noting that "the placement and arrangement of the lace do not relate to the functionality of the [camisole]"); *Eve of Milady v. Impression Bridal, Inc.*, 957 F. Supp. 484, 489 (S.D.N.Y. 1997) (holding plaintiff could not only claim a copyright in the actual design of the lace, but could also claim a copyright in "the way that lace is placed and arranged on the dresses"); *see also Malibu Textiles, Inc. v. Carol Anderson, Inc.*, 2008 U.S. Dist. LEXIS 51783 (S.D.N.Y. July 7, 2008); *Eve of Milady Bridals, Inc. v. Moonlight Design, Inc.*, 1998 U.S. Dist. LEXIS 21288 (S.D.N.Y. Aug. 11, 1998). In sum, neither intended use nor decorative function affects copyrightability.

**E. The Varsity Designs Are Separable and Non-Functional**

Under the "process-oriented" approach or any applicable standard, the evidence of the separability of the Varsity Designs is overwhelming, even without taking into consideration the presumptions of validity or the Copyright Office's specific and detailed findings of separability.

**1. The Varsity Designs Were the Result of Independent Artistic Judgment, Not Functional Considerations**

The Varsity Designs are separable under the "process-oriented" test adopted by multiple courts. The unrebutted testimony of Varsity's Vice President of Design and its Vice President of Production establishes that the designs are the result of independent artistic judgment and not dictated by functional considerations. RE#173-1, PageID 2410-11, Spencer Decl. ¶¶ 3-4; RE#173-2, 2438-41, Williams Decl. ¶¶ 4, 5, 8-10. While the outer edges of a garment operate like the edge of a canvas, as did the legs of the furniture in *Universal*, what the designer creates within those edges is virtually unlimited. RE#173, PageID 2388, VSUF ¶ 19; RE#173-2, PageID 2439-40, Williams Decl. ¶ 8; *see Universal*, 618 F.3d at 434 (finding while the designer was influenced by functional considerations, insofar as furniture "has got to function," the separable design elements were "superfluous nonfunctional adornments for which the shape of the furniture (which is not copyrightable) serves as the vehicle").

Varsity's designers create independently of any guidelines or instructions from the Production Department.  It is the Production Department's job to work out how to reproduce the designs on garments or accessories.  RE#173, PageID 2385, 2388, VSUF ¶¶ 2, 16-17; RE#173-1, PageID 2410-11, Spencer Decl. ¶¶ 1-4; RE#173-2, PageID 2439-40, Williams Decl. ¶ 8; RE#173-3, PageID 2462, Williams Dep. at 62:13-15; *see Pivot Point*, 618 F.3d at 931-32 (noting that "Passage did not require, for instance, that the sculpture's eyes be a certain width to accommodate standard-sized eyelashes, that the brow be arched at a certain angle to facilitate easy make-up application…").  Varsity's lead designer testified that "[w]hat elements to include in a design is completely within my and my designer's discretion and not dictated by any person in the production department." RE#173, PageID 2388, VSUF ¶ 18; RE#173-2, PageID 2439-40, Williams Decl. ¶ 8.  If the finished garment does not match the two-dimensional design, the designer does not alter her design; instead, Varsity's production department starts over and tries again to accurately reproduce the design.  RE#173, PageID 2388, VSUF ¶ 16; RE#173-1, PageID 2411, Spencer Decl. ¶4; RE#173-2, PageID 2439-40, Williams Decl. ¶ 8; RE#173-3, PageID 2462, Williams Dep. at 62:13-15.

Just as the shells, leaves, columns, finials, rosettes, and other design elements on the furniture in *Universal* were chosen independently of functional

considerations, Varsity's designers' selection and arrangement of specific design elements in the Varsity Designs were independent of functionality considerations. RE#173, Page ID 2387-89, VSUF ¶¶ 15, 17, 20-21; RE#173-1, PageID 2410-11, Spencer Decl. ¶ 3; RE#173-2, PageID 2438-40, Williams Decl. ¶¶ 5, 8, 9. In determining conceptual separability, the focus should be on the "specific" elements or features of the design. *See Pivot Point*, 372 F.3d at 931 (finding separability of "Mara's *specific* facial features" and noting "[j]ust as Mattel is entitled to protection for 'its *own particularized expression*' of an upturned nose"); *Universal Furniture*, 618 F.3d at 434 (noting the designer's objective "in compiling *these* decorative elements"). The specific design elements that are combined and arranged to create Design 074, for example, could have been arranged in an entirely different manner to form a different design altogether. RE#173, PageID 2391, VSUF ¶ 25; RE#173-2, PageID 2440-41, Williams Decl. 10. The same is true of the other Varsity Designs.

Further, the fact that multiple different designs can be used within the same silhouette is further and compelling proof that functional considerations play no role. RE#173-3, PageID 2450, Williams Dep. at 23:8-11 ("A design placed on the uniform will not affect the fit of a uniform. We use a standard base regardless of the design that is placed on that uniform."). This is exactly the case for four of the

Varsity Designs. Specifically, Designs 074 and 078 are applied to the same base silhouette, and Designs 299A and 299B are applied to the same base silhouette. Indeed, Varsity has manufactured and sold shell tops into which hundreds, if not thousands, of different graphic designs have been incorporated. RE#173, Page ID 2392, VSUF ¶ 30, RE#173-1, PageID 2411-12, Spencer Decl. ¶ 7.

In *Universal*, the court explicitly relied upon the designer's testimony that "the ornamentation ... has little or nothing to do with the function." 618 F.3d at 434. The court found that the designer's objective "in compiling these decorative elements onto the basic shapes of the furniture was not to improve the furniture's utility but to give [the pieces] a pretty face." *Id.* The undisputed testimony of Varsity's designer is to the same effect: "[a]t no time when I sketched those designs nor anything thereafter was I trying to increase the functionality of any garment or anything else onto which the designs may be incorporated."[10] RE#173-2, 2438-41, Williams Decl. ¶¶ 5, 9-10. "It is not the objective of the design department in creating a design to make a garment more functional, but only to express creative thoughts and ideas in an original way through the combination and

_____

[10] The primary/secondary test in *Kieselstein-Cord*, 632 F.2d at 993, is also met because the evidence shows that the primary objective was to not make a garment more functional. *See also Pivot Point*, 372 F.3d at 923 (citing *Kieselstein-Cord*).

arrangement of elements." RE#173, Page ID 2387-89, VSUF ¶¶ 15, 17, 20-21; RE#173-1, PageID 2410-11, Spencer Decl. ¶ 3; RE#173-2, PageID 2438-40, Williams Decl. ¶¶ 5, 8, 9.

The unrelatedness of the Varsity Designs to the functionality of clothing is further demonstrated by "blank silhouette" garments, to which no graphic design is applied. Such garments cover the body, wick away moisture, and withstand the rigors of athletic movements to precisely the same degree as garments with designs applied to them. RE#173, PageID 2389-90, VSUF ¶ 22; RE#173-1, PageID 2413, 2426-27, Spencer Decl. ¶ 12 and Exhibit C thereto; RE#171, PageID 2298-99, Notice of Filing Physical Exhibits - Exhibit C, Actual Physical Blank Silhouette Garments, App. 1.[11]

The non-functionality of the Varsity Designs is again confirmed by the fact that the designs can be applied to garments by cutting-and-sewing, weaving, embroidering, screen-printing, or sublimation. RE#173, PageID 2391-92,VSUF ¶ 28; RE#173-1, PageID 2411, Spencer Decl. ¶ 5; RE#171, PageID 2298-99, Notice of Filing Physical Exhibits - Actual Physical Sublimated cheerleading uniforms, App. 1; *cf. Gay Toys*, 703 F.2d at 974 (noting economic considerations in the

---

[11] This evidence, along with the other evidence discussed above, establishes separability under Professor Patry's test: "the artistic features are not utilitarian." *See Pivot Point*, 372 F.3d at 923 (citing Patry, *1 Copyright Law & Practice* 285).

design of the toy were irrelevant, and noting that the "same could be said of the selection of canvas and colors for any painting"). That the Varsity Designs can be and have been sublimated, a process which involves transferring ink from a piece of paper to a blank sheet of fabric by heating the ink to a gaseous state, demonstrates the two-dimensional nature of the designs and eviscerates any argument that the designs are functional. RE#171, PageID 2298-99, Notice of Filing Physical Exhibits - Exhibit B, Fabric displaying sublimated designs before being cut out and sewn, App. 1; RE#173, PageID 2391-93, VSUF ¶¶ 28, 31-33; RE#173-1, PageID 2411-12, Spencer Decl. ¶¶ 5, 8-9; RE#173-3, 177-1, PageID 2457-60, 3382, 3384, Williams Dep. at 54:5-7, 56:24-57:3, 59:5-17, 112:1-9; RE#173-6, PageID 2545, Carroll Decl. ¶¶ 6-7; RE:177-2, PageID 3390, Deposition of Jeffrey Webb at 57:10-20. There is nothing in the record which rebuts this evidence. The separability and non-functional nature of designs printed on garments is not disputable.

Designs such as the Varsity Designs are applied to the surface of a variety of garments, including warmup jackets, in addition to sleeveless tops. RE#173-1, PageID 2413, 2428-2435, Spencer Decl. ¶ 13 and Exhibit D thereto. Contrary to a cheerleading uniform which is the sole focus of the district court's erroneous "cheerleading-uniform-ness" test, a warmup jacket has sleeves, includes fabric at

the neck, and has a zipper down the front; the three-dimensional garment design of a warmup jacket is very different from that of a sleeveless top and skirt, but the same two-dimensional design can be and is reproduced on both. RE#171, PageID 2298-99, Notice of Filing Physical Exhibits - Actual Physical Warmups and Jackets, App. 1. In other words, the designs can be and are used on more than just cheerleading uniforms, which further confirms the non-functional nature of the design and directly contradicts the district court's holding.

### 2. The Expert Testimony, Albeit Superfluous, Confirms the Separability of the Varsity Designs

The expert testimony further substantiates the separability of the Varsity Designs. Professor Scafidi confirmed that Varsity's "design process also relies on separate employees to engage in designing the visual appearance of the garment and in technical construction …. This division of labor … underscores the division between the creation of a copyrightable work by one set of employees and its subsequent incorporation into a useful article by another." RE#173-4, PageID 2474, Scafidi Decl. ¶ 16; RE#173, Page ID 2385, VSUF ¶ 2; RE#173-1, PageID 2410-11, Spencer Decl. ¶¶ 1- 3; RE#173-2, Page ID 2439-40, Williams Decl. ¶ 8. Star's expert Antonio Sarabia also confirms the separability of Varsity's two-dimensional designs: "I think under Varsity's right, it can prohibit this law firm from reproducing those designs in two dimension and putting them on this wall.

So I think that right is enforceable, and I have no problem with that." RE#173, PageID 2397, VSUF ¶ 38; RE#173-7, PageID 2608, Deposition of Antonio Sarabia at 198:20-24.

Mr. Sarabia's testimony likewise corroborates the protectability and separability of designs applied to garments by embroidery or screen-printing. RE#173, PageID 2397, VSUF ¶ 39; RE#173-8, PageID 2611, Expert Report of Antonio Sarabia, II at 3. Specifically, he admitted that designs applied to garments by "screen printing, weaving or embroidering" are designs that a "company could obtain a copyright registration for" and are "legitimate uses of copyright protection in connection with apparel." *Id.* This admission is critical. Professor Scafidi agrees: "If a two-dimensional … artwork is incorporated into a useful article, that two-dimensional artwork retains whatever copyright protection it has. Therefore, the two-dimensional artwork incorporated into, for example, a three-dimensional cheerleader uniform continues to have protection." RE#175-5, PageID 2906, Deposition of Susan Scafidi ("Scafidi Dep.") at 108:2-15.

The method by which a graphic design is applied to a useful article is immaterial; a design incorporated by cutting-and-sewing is no less separable, and no more functional, than a design incorporated by another method. *Id.* at 85:19 - 86:20, PageID 2899-2900. Ms. Harder also agrees with Varsity's lead designer that

the Varsity Designs can be incorporated in garments in multiple ways, which supports a finding of conceptual separability. RE#173-5, PageID 2500, Declaration of Frances Harder ("Harder Decl.") ¶ 6. Ms. Harder also illustrates the non-functional nature of the designs in her analysis of blank uniforms: "blank silhouettes uniforms function the same as garments bearing the designs at issue. In other words, there is no added functionality to a garment bearing one of the designs at issue on it compared to a blank garment." RE#173-5, PageID 2505-06, Harder Decl. ¶ 17.

> Ms. Harder further stated:

> Whether the striping shown on the braid is located in one location or another or not at all has no bearing on the functionality of the garment covering the wearer…. The striping shown on a piece of braiding and the seam underneath could be moved to a different location or arranged differently on the front of a shell top so that it does not portray any one of the designs at issue but the shell top could still be made to function the same way…The fit is the same for garments bearing the designs at issue (Garments VSC 036475-82) as it is for blank silhouette garments (Garments VSC 036512-16) because the outline or silhouette of the garment is the same.

RE#173, Page ID 2389-90, VSUF ¶ 22, Page ID 2389-90; RE#173-5, PageID 2505-06, Harder Decl. ¶ 17; RE#173, Page ID 2389-90, VSUF ¶ 22; RE#175-5, PageID 2930, Scafidi Dep. at 132:18-23, 137:13-15. "The color of the fabric is irrelevant to whether or not this is a garment that covers the body." RE#173, Page ID 2389-90, VSUF ¶ 22; RE#177-3, PageID 3398, Scafidi Dep. at 137:13-15. In

sum, the graphic designs created by Varsity are independent of the functional dictates of the garments.

### 3. The Expert Testimony Shows That the Varsity Designs Are Separable Even Under the Discredited *Galiano* Test

Expert testimony also establishes the separability of the Varsity Designs even under the discredited "likelihood of marketability" test. In contrast to the complete absence of proof of "likelihood of marketability" in *Galiano*, the expert testimony here establishes that the Varsity Designs have a likelihood of marketability. "As graphic designs, Plaintiff's copyrighted works have potential commercial value apart from their incorporation into articles of apparel. They could be applied to painted canvases, tote bags, notebooks, iPhone covers, or any number of consumer goods as easily as to women's sleeveless tops and skirts." RE#173, Page ID 2397, VSUF ¶ 40; RE#173-4, PageID 2474-75, 2495-96, Scafidi Decl. ¶ 17 and Exhibit 3 thereto. Professor Scafidi graphically demonstrated the likelihood of marketability of the Varsity Designs:

> we can take this two-dimensional design and apply it in other places. That's what we mean when we talk about conceptual separability. And I think that I illustrated that rather graphically in Exhibit 3 … to my report…which has an actual painting created by an artist. The design of that painting was then rendered via stitching together fabric panels and fabric strips in a way that recreates … a design similar to this one. This is, by the way, part of a series of paintings similar to that one. And also concurrently creates a dress, a very famous one by Yves

> Saint Laurent, and then a similar process to create cheerleader
> garments, again based on the original painting by Mondrian.
> So we have a two-dimensional design that someone imagined
> removing from the canvas, and incorporating into a dress or
> decades later incorporating into a cheerleader uniform.

RE#173, PageID 2389-90, VSUF ¶ 40; RE#177-3, Page ID 3400, Scafidi Dep. at 197:5-20; RE#173-4, PageID 2474-75, 2495-96, Scafidi Decl. ¶ 17 and Exhibit 3 thereto. Thus, the record shows that there is a likelihood the Varsity Designs are marketable under *Galiano*, and therefore separable.[12]

## II. The District Court Erred in Denying Varsity's Motion to Preclude Star's Putative Experts

The district court held that Star's expert testimony was admissible on the issue of copyrightability, finding that "the circuits are split as to whether copyrightability is a pure question of law." RE#148, PageID 1944, Expert Order at 10.

Should the Court remand this case back to the district court, this ruling should be reversed because expert testimony on the issue of copyrightability is

---

[12] Star's experts offer numerous opinions on physical separability instead of conceptual separability. For example, Ms. Goldaper discussed in detail physically separating the physical components of uniforms, such as removing panels of fabric and leaving skin exposed or removing braid and revealing seams. However, because of the either/or nature of the separability test, physical separability is irrelevant because the Varsity Designs are conceptually separable.

improper and unhelpful here. Indeed, in ruling on the parties' cross-motions for summary judgment, the district court held that "[d]etermining whether an item is subject to copyright protection is a question of law for the court to decide." RE#199, Page ID 4299, Summary Judgment Order. Yet, rather than exclude Star's expert testimony, the district court incorrectly held that "the admission of Defendant's proffered expert opinions on the issue of *either* copyrightability or substantial similarity is within the precepts of applicable law." RE#148, PageID 1944, Expert Order at 10.

It is axiomatic that an expert cannot invade the province of the court by testifying on questions of law. This Court has repeatedly confirmed that expert testimony on legal issues is inadmissible. *See, e.g.*, *Chavez v. Carranza*, 559 F.3d 486, 498 (6th Cir. 2009) ("An expert opinion on a question of law is inadmissible."); *U.S. ex rel. Compton v. Midwest Specialties*, 142 F.3d 296, 302 (6th Cir. 1998) ("Expert testimony is not proper for issues of law.").

Copyrightability, including the separability of Varsity's designs from any useful articles into which they are incorporated, is an issue of law within the exclusive province of the court. While this Court has not yet addressed this question, the weight of circuit authority across the country holds that copyrightability is a question of law. *See, e.g.*, *Janky v. Lake Cnty. Convention &*

*Visitors Bureau*, 576 F.3d 356, 363 (7th Cir. 2009) ("Copyrightability is always an issue of law.") (quotations omitted); *Pivot Point*, 372 F.3d at 919 (explaining that the "central issue" of entitlement to copyright protection "presents, at bottom, a question of statutory interpretation"); *Yankee Candle Co. v. Bridgewater Candle Co.*, 259 F.3d 25, 34 (1st Cir. 2001); *Collezione Europa U.S.A., Inc. v. Hillsdale House, Ltd.*, 243 F. Supp. 2d 444, 451-52 (M.D.N.C. 2003) ("Certain matters of law, including 'determinations of copyrightability in all instances,' are always reserved to the judge….") (quoting 3 Melville B. Nimmer & David Nimmer, *Nimmer on Copyright* § 12.10[A]); *Pivot Point Int'l, Inc. v. Charlene Prods., Inc.*, 932 F. Supp.  220, 225 (N.D. Ill. 1996) (concluding that whether works are copyrightable "is a question of law, which the court will decide" and which the "jury has nothing to do with"); *Lotus Dev. Corp. v. Borland Intern., Inc.*, 788 F. Supp. 78, 96 (D. Mass. 1992) (concluding that copyrightability issues are "exclusively for courts, not juries").[13]

---

[13] The few cases in which courts have found copyrightability to be a mixed question of law and fact typically have turned on the question of originality. *See, e.g.*, *Matthew Bender & Co. v. West Publ'g Corp.*, 158 F.3d 674, 681 (2d Cir. 1998) (stating that the court will "treat the question of whether particular elements of a work demonstrate sufficient originality and creativity to warrant copyright protection as a question for the factfinder").

Not only did the district court state that copyrightability is an issue of law, contradicting its earlier ruling, but also the court, ironically, ruled on the parties' Summary Judgment Motions without citing to expert testimony. Varsity's Motion to Preclude should have been granted on the additional basis that the expert testimony is not helpful here. This Court has explained that "the court must ensure that the proposed expert testimony is relevant to the task at hand and will serve to aid the trier of fact." *U.S. v. Smithers*, 212 F.3d 306, 313 (6th Cir. 2000). "In short, under *Daubert* and its progeny, a party proffering expert testimony must show by a preponderance of proof that the expert whose testimony is being offered is qualified and will testify to scientific knowledge that will assist the trier of fact in understanding and disposing of relevant issues." *Sigler v. Am. Honda Motor Co.*, 532 F.3d 469, 478 (6th Cir. 2008). The district court's ruling on Varsity's Motion to Preclude is clearly erroneous and should be reversed.

## III. Varsity's State Law Claims Were Erroneously Dismissed

The district court dismissed without prejudice Varsity's state law claims on the reasoning that federal subject matter jurisdiction was lacking. RE#199, PageID 4311-12, Summary Judgment Order at 17-18. This was clearly erroneous because Varsity's state law claims were supported by diversity jurisdiction under 28 U.S.C. § 1332, based on the complete diversity of citizenship of the parties and an amount

in controversy exceeding \$75,000, as pled in the Complaint. RE#1, PageID 1-2, Complaint ¶¶ 2-6. Accordingly, the district court's dismissal of Varsity's state law claims was clearly erroneous and should be reversed.

## <u>CONCLUSION</u>

For the reasons set forth above, the grant of summary judgment to Star, and the denial of Varsity's summary judgment motion, should be reversed, and instead, summary judgment should be entered in favor of Varsity.

Respectfully submitted,

s/Adam S. Baldridge
Grady M. Garrison
Bradley E. Trammell
Adam S. Baldridge
Nicholas L. Vescovo
BAKER, DONELSON, BEARMAN,
CALDWELL & BERKOWITZ, P.C.
165 Madison Avenue, Suite 2000
Memphis, Tennessee 38103

OF COUNSEL:
Arlana Cohen
Thomas Kjellberg
Cowan, Liebowitz & Latman, P.C.
1133 Avenue of the Americas
New York, New York 10036

# CERTIFICATE OF COMPLIANCE

Pursuant to Fed. R. App. P. 32(a)(7)(C), I hereby certify that the foregoing brief complies with the typeface requirements provided in Fed. R. App. P. 32(a)(5) and the type-volume limitation provided in Fed. R. App. P. 32(a)(7)(B). I also certify that the foregoing brief contains 13,982 words of Times New Roman (14 point) proportional type, excluding the portions hereof exempted from the word count. The word processing software used to prepare this brief was Microsoft Office Word 2010.

s/Adam S. Baldridge

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that on this 23th day of June, 2014, a copy of the foregoing was electronically filed and served on the parties listed below via electronic mail:

Michael Francis Rafferty
Kannon Cooper Conway
HARRIS SHELTON HANOVER WALSH
One Commerce Square
Suite 2700
Memphis, TN 38103

Steven Michael Crosby
Kalpana Nagampalli
FELDMAN LAW GROUP
220 E. 42nd Street
Suite 3304
New York, NY 10017

*Counsel for Appellee*
*Star Athletica, L.L.C.*

Theodore C. Anderson, III
Ashley E. Tremain
KILGORE & KILGORE
3109 Carlisle
Dallas, TX 75204

s/Adam S. Baldridge

# ADDENDUM - DESIGNATION OF RELEVANT LOWER COURT DOCUMENTS

Pursuant to Sixth Circuit Rule 28(b), appellant hereby designates the

following filings in the record below as relevant to this appeal:

| District Court Record Entry (RE#) | Description of Filing | Page ID # |
|---|---|---|
| 1 | Complaint | 1-16 |
| 1-1 | Exhibit 1 – Copy of Image of Varsity Design 078 | 17-18 |
| 1-2 | Exhibit 2 – Excerpt from Star's Catalog featuring Varsity Design 078 | 19-20 |
| 1-4 | Exhibit 4 – Excerpt from Star's Catalog featuring Varsity Design 0815 | 23-24 |
| 1-5 | Exhibit 5 – Copy of Image of Varsity Design 299B | 25-26 |
| 1-6 | Exhibit 6 – Excerpt from Star's Catalog featuring Varsity Design 299B | 27-28 |
| 1-7 | Exhibit 7 – Copy of Image of Varsity Design 299A | 29-30 |
| 1-8 | Exhibit 8 – Excerpt from Star's Catalog featuring Varsity Design 299B | 31-32 |
| 1-10 | Exhibit 10 – Excerpt from Star's Catalog featuring Varsity Design 034 | 35-36 |
| 1-11 | Exhibit 11 – Varsity's Naming Conventions for Its Outline Mascots | 37-39 |
| 1-12 | Exhibit 12 – Star's Naming Conventions for Its Outline Mascots | 40-41 |
| 1-13 | Exhibit 13 – Varsity's Tackle Twill Style Codes | 42-44 |
| 1-14 | Exhibit 14 – Star's Tackle Twill Style Codes | 45-46 |
| 1-15 | Exhibit 15 – Varsity Design 078 Certificate of Registration No. VA 1-417-421 | 47-49 |
| 1-16 | Exhibit 16 – Varsity Design 0815 Certificate of Registration No. VA 1-675-905 | 50-52 |
| 1-17 | Exhibit 17 – Varsity Design 299A Certificate of Registration No. VA 1-319-228 | 53-55 |
| 1-18 | Exhibit 18 – Varsity Design 299B Certificate of | 56-58 |

| | Registration No. VA 1-319-226 | |
|---|---|---|
| 1-20 | Exhibit 20 – Civil Cover Sheet | 61 |
| 34 | Defendant's Motion to Dismiss | 151-153 |
| 34-1 | Memorandum In Support Of Defendant's Motion To Dismiss | 154-184 |
| 34-2 | Declaration of Steven M. Crosby | 185-187 |
| 34-3 | Exhibit 1 - Excerpt from § 2.08[H] of Nimmer on Copyright (2009) | 188-194 |
| 34-4 | Exhibit 2 - Nov. 5, 1991 Copyright Office Policy Decision ML-435 on the Registerability Of Costume Designs | 195-198 |
| 34-5 | Exhibit 3 - United States Copyright Office Circular 40 – Copyright Registration for Visual Works of Art and Circular 40a – Deposit Requirements for Registration of Claims to Copyright in Visual Arts Material | 199-209 |
| 34-6 | Exhibit 4 - Drawings of the SHOE design in the *Eilya, Inc. v. Kohl's Department Stores*, 2006 WL 2645196 (SDNY) | 210-226 |
| 35 | Notice of Filing of Corrected Exhibit 3 to Plaintiffs' Complaint | 227-228 |
| 35-1 | Exhibit 3 - Copy of Image of Varsity Design 0815 | 229-230 |
| 38 | Plaintiffs' Memorandum of Law in Opposition to Defendant's Motion to Dismiss | 235-263 |
| 38-1 | Exhibit A – Supporting Case Law | 264-371 |
| 38-2 | Exhibit B – Compenduim II of Copyright Office Practices - Chapter 500 Copyrightable Matter: Pictorial, Graphic, and Sculptural Works | 372-376 |
| 38-3 | Exhibit C – Letter dated October 19, 2007, from the U.S. Copyright Office, Registration and Recordation Program to Mr. Kjellberg | 377-379 |
| 38-4 | Exhibit D - Letter dated February 19, 2009, from the U.S. Copyright Office, Examining Division to Mr. Kjellberg | 380-381 |
| 38-5 | Exhibit E - Letter dated February 19, 2009, from the U.S. Copyright Office, Examining Division to Mr. Kjellberg | 382-383 |
| 38-6 | Exhibit F – Copyright Registration Form VA | 384-389 |
| 38-7 | Exhibit G – Drawings of Knitwaves' Leaf Sweater and Knitwaves' Squirrel Sweater | 390-391 |

| 48 | Unopposed Motion and Supporting Memorandum for Leave to Amend Complaint | 518-520 |
|---|---|---|
| 48-1 | Exhibit A – First Amendment to Complaint | 521-529 |
| 49 | Order Granting Unopposed Motion for Leave to Amend Complaint | 530 |
| 51 | First Amendment to Complaint | 532-534 |
| 51-1 | Amended Exhibit 9 – Copy of Image of Varsity Design 074 | 535-536 |
| 51-2 | Amended Exhibit 19 – Varsity Design 074 Certificate of Registration No. VA 1-411-535 | 537-539 |
| 53 | Unopposed Motion and Supporting Memorandum For Leave to Substitute Exhibits to Complaint | 540-542 |
| 53-1 | Exhibit A – Notice of Substituted Exhibits | 543-551 |
| 54 | Order Granting Plaintiffs' Unopposed Motion for Leave to Substitute Exhibits to Complaint | 552 |
| 55 | Notice of Substituted Exhibits | 553-554 |
| 55-1 | Substituted Exhibit 3 – Copy of Image of Varsity Design 0815 | 555-556 |
| 55-2 | Substituted Exhibit 5 – Copy of Image of Varsity Design 299B | 557-558 |
| 55-3 | Substituted Exhibit 7 – Copy of Image of Varsity Design 299A | 559-560 |
| 56 | Order Denying Defendant Star Athletica, L.L.C.'S Motion to Dismiss | 561-576 |
| 57 | Defendant's Motion for Clarification of the Order Denying Defendant's Motion to Dismiss | 577-579 |
| 57-1 | Memorandum in Support of Defendant's Motion for Clarification of the Order Denying Motion to Dismiss | 580-584 |
| 58 | Answer and Counterclaim | 585-602 |
| 60 | Order Denying Defendant Star Athletica, L.L.C.'S Motion for Clarification of the Order Denying Defendant's Motion to Dismiss | 605-607 |
| 61 | Motion to Dismiss Defendant's Counterclaims | 608-609 |
| 61-1 | Memorandum of Law in Support of Plaintiffs' Motion to Dismiss Defendant's Counterclaims | 610-628 |
| 71 | Counterclaimant Star's Memorandum of Law in Opposition to Varsity's Motion to Dismiss Counterclaims | 697-718 |

72

| | | |
|---|---|---|
| 71-1 | Exhibit – Exhibit CO Letter Ruling Articles of Clothing | 719-725 |
| 71-2 | Exhibit – Varsity Reconsideration Letter to the Copyright RAC Division | 726-745 |
| 71-3 | Exhibit – *Jovani* and *Kohls* Cases | 746- 775 |
| 71-4 | Exhibit – Copyright Office Letters to Mr. Kjellberg | 776-785 |
| 77 | Reply in Support of Plaintiffs' Motion to Dismiss Defendant's Counterclaims | 799-809 |
| 80 | Order Granting in Part and Denying in Part Motion to Dismiss | 812-823 |
| 82 | Joint Motion for Entry of Stipulated Protective Order | 825-827 |
| 82-1 | Exhibit A – Stipulated Protective Order | 829-840 |
| 83 | Stipulated Protective Order | 841-851 |
| 86 | Answer to Counterclaim | 1142-1147 |
| 97 | Motion to Preclude Testimony of Putative Experts ("**Motion to Preclude Putative Experts**") | 1174-1175 |
| 97-1 | Memorandum of Law in Support of Motion to Preclude Testimony of Putative Experts | 1176-1196 |
| 97-2 | Exhibit A – Expert Report of Antonio R. Sarabia II | 1197-1223 |
| 97-3 | Exhibit B – Expert Report of Gabriele Goldaper | 1224-1304 |
| 97-4 | Exhibit C – Copyright Office Letter to Kjellberg | 1305-1306 |
| 97-5 | Exhibit D – Copyright Office Letter to Kjellberg | 1307-1308 |
| 98 | Plaintiffs' Motion for an Extension of Time to Disclose Rebuttal Expert Witnesses | 1309-1311 |
| 98-1 | Plaintiffs' Memorandum of Law in Support of Their Motion for An Extension of Time to Disclose Rebuttal Expert Witnesses | 1312-1318 |
| 98-2 | Exhibit 1 – Defendant's Counsel's Letter to Plaintiffs' Counsel | 1319-1322 |
| 98-3 | Exhibit 2 – Email Correspondence between Defendant's Counsel and Plaintiffs' Counsel | 1323-1327 |
| 108 | Unopposed Motion and Supporting Memorandum for Leave to File Reply in Support of Plaintiffs' Motion to Preclude Testimony of Putative Experts | 1359-1360 |
| 108-1 | Exhibit A – Reply in Support of Plaintiffs' Motion to Preclude Testimony of Putative Experts | 1361-1367 |
| 128 | Plaintiffs' Supplemental Brief in Support of Their Motion for An Extension of Time to Disclose Rebuttal Expert | 1784-1786 |

73

| | Witnesses | |
|---|---|---|
| 129 | Plaintiffs' Supplemental Brief in Support of Their Motion to Preclude Testimony of Putative Experts | 1787-1797 |
| 130 | Star's Supplemental Memorandum in Opposition to Varsity's Motion to Preclude Star's Experts | 1798-1808 |
| 134 | Case Summary | 1815-1819 |
| 135 | Supplemental Case Summary | 1820-1828 |
| 137 | Order Denying Plaintiff's Motion to Preclude Testimony and Granting Plaintiff's Motion for an Extension of Time to Disclose Rebuttal Expert ("**Magistrate's Expert Order**") | 1829-1838 |
| 138 | Plaintiff's Objections to Magistrate Judge's Order Denying Plaintiffs' Motion to Preclude Testimony of Putative Experts | 1839-1852 |
| 141 | Opposition to Plaintiffs' Objections to Magistrate Judge's Order Denying Motion to Preclude Expert Witnesses (Filed Under Seal) | 1854-1868 |
| 142 | Plaintiffs' Motion and Supporting Memorandum to Strike Defendant's Opposition to Plaintiffs' Objections to Magistrate Judge's Order Denying Plaintiffs' Motion to Preclude Testimony of Putative Experts | 1869-1872 |
| 143 | Defendant's Motion to Extend the Time by One Day For it to Respond to Plaintiffs' Objections to Magistrate Judge's Order Denying Plaintiffs' Motion to Preclude Testimony of Putative Experts (Including Supporting Memorandum) | 1873-1875 |
| 144 | Plaintiffs' Reply in Support of Its Objections to Magistrate Judge's Order Denying Plaintiffs' Motion to Preclude Testimony of Putative Experts | 1876-1881 |
| 144-1 | Exhibit A – Docket Sheet from *Varsity Brands, Inc. v. J&M Spirit Wear, Inc.* | 1882-1892 |
| 144-2 | Exhibit B – Copyright Office Form VA | 1893-1897 |
| 144-3 | Exhibit C – Certificates of Registration for the Varsity Designs | 1898-1913 |
| 145 | Plaintiffs' Opposition to Defendant's Motion for Extension to Respond to Plaintiffs' Objections to Magistrate Judge's Order | 1914-1916 |

| | | |
|---|---|---|
| 146 | Motion and Memorandum for Leave to File Sur-Reply to Plaintiffs' Objections to Magistrate Judge's Order Denying Motion to Preclude Expert Witnesses | 1917-1919 |
| 146-1 | Exhibit A – Defendant/Counterclaimant's Motion to File Sur-Reply | 1920-1930 |
| 147 | Plaintiffs' Opposition to Defendant's Motion for Leave to File Sur-Reply to Plaintiffs' Objections | 1931-1934 |
| 148 | Opinion and Order (1) Granting Defendant's Motion for Extension of Time, (2) Denying Plaintiffs' Motion to Strike, (3) Denying Defendant's Motion for Leave to File Sur-Reply, (4) Overruling Plaintiffs' Objections to Magistrate Judge's Order Denying Motion to Preclude Defendant's Putative Experts, (5) Setting Deadlines for Expert Discovery, and (6) Setting Telephone Conference ("**Expert Order**") | 1935-1949 |
| 149 | Plaintiff's Motion to Strike the Second Supplemental Expert Report of Antonio Sarabia II | 1950-1951 |
| 149-1 | Memorandum in Support of Motion to Strike the Second Supplemental Expert Report of Antonio Sarabia II | 1952-1964 |
| 149-2 | Exhibit 1 – Second Supplemental Expert Report of Antonio R. Sarabia II | 1965-1986 |
| 149-3 | Exhibit 2 – Supplemental Expert Report of Antonio R. Sarabia II | 1987-1988 |
| 149-4 | Exhibit 3 – Expert Report of Antonio R. Sarabia II | 1989-2015 |
| 149-5 | Exhibit 4 – Email correspondence of June 26, 2012 from Adam Baldridge to Ted Anderson and Steve Crosby | 2016-2019 |
| 149-6 | Exhibit 5 – April 16, 2012 Excerpts from Deposition Transcript of Joseph Long | 2020-2035 |
| 149-7 | Exhibit 6 - April 9, 2012 Excerpts from Deposition Transcript of Kerry Leake | 2036-2039 |
| 151 | Order Setting Briefing Schedule for Plaintiff's Motion to Strike Supplemental Expert Report and Scheduling Deadlines for Completing Expert Depositions and Filing Dispositive Motions | 2040-2041 |
| 152 | Opposition to Plaintiffs' Motion to Strike the Second Supplemental Expert Report of Antonio Sarabia II and Request for Judicial Notice | 2042-2058 |

| | | |
|---|---|---|
| 152-1 | Exhibit 1 – April 16, 2012 Excerpts from Deposition Transcript of Joseph Long | 2059-2066 |
| 153 | Plaintiffs' Reply in Support of Plaintiffs' Motion to Strike Defendant's Supplemental Expert Report of Antonio Sarabia II | 2067-2073 |
| 153-1 | Exhibit 1 - April 9, 2012 Excerpts from Deposition Transcript of Kerry Leake | 2074-2082 |
| 154 | Notice to Take the Deposition of Gabriele Goldaper | 2083-2085 |
| 155 | Notice to Take the Deposition of Antonio Sarabia II | 2086-2088 |
| 156 | Opinion and Order Denying Plaintiffs' Motion to Strike the Second Supplemental Expert Report of Antonio Sarabia II | 2089-2098 |
| 157 | Joint Stipulation for Expert Deposition Deadlines and Dispositive Motion Deadline | 2099-2102 |
| 158 | Order Setting Expert Deposition Deadlines and Dispositive Motion Deadlines | 2103-2104 |
| 159 | Joint Stipulation for Expert Deposition Deadlines and Dispositive Motion Deadline | 2105-2107 |
| 160 | Order Setting Expert Deposition Deadlines and Dispositive Motion Deadlines | 2108 |
| 161 | Notice of Deposition of Susan Scafidi | 2109-2110 |
| 162 | Notice of Deposition of Frances Harder | 2111-2112 |
| 165 | Order Setting Summary Judgment Briefing Schedule and Establishing Page Limits | 2113-2114 |
| 166 | Unopposed Motion to Amend Order Setting Summary Judgment Briefing Schedule | 2115-2117 |
| 167 | Order Granting Motion to Extend Briefing Deadlines | 2118-2119 |
| 168 | Defendant's Motion for Summary Judgment | 2120-2125 |
| 169 | Defendant's Motion for Summary Judgment | 2126-2131 |
| 169-1 | Memorandum of Facts and Law in Support of Defendant's Motion for Summary Judgment | 2132-2175 |
| 169-2 | Declaration of Antonio Sarabia II | 2176-2190 |
| 169-3 | Declaration of Gabriele Goldaper | 2191-2206 |
| 169-4 | Star Athletica's Statement of Undisputed Facts for Motion for Summary Judgment | 2207-2227 |
| N/A (Star mailed a | Exhibit 1 – Copyright Registration 905 for Design 0815 | N/A |

| | | |
|---|---|---|
| physical disc to the district court containing Exhibits 1-60) | | |
| N/A | Exhibit 2 – Copyright Registration 427 for Design 078 | N/A |
| N/A | Exhibit 3 – Copyright Registration 535 for Design 074 | N/A |
| N/A | Exhibit 4 – Copyright Registration 228 for Design 299A | N/A |
| N/A | Exhibit 5 – Copyright Registration 226 for Design 299B | N/A |
| N/A | Exhibit 6 – Kim Williams Ex. 10 | N/A |
| N/A | Exhibit 7 – Kim Williams Ex. 11 | N/A |
| N/A | Exhibit 8 – Kim Williams Ex. 12 | N/A |
| N/A | Exhibit 9 – Kim Williams Ex. 13 | N/A |
| N/A | Exhibit 10 – Kim Williams Ex. 14 | N/A |
| N/A | Exhibit 11 – Leake Agreement VSC 34670 – VSC 34679 | N/A |
| N/A | Exhibit 12 – Cook Agreement Ex. 1 or VSC 34680 – VSC 34685 | N/A |
| N/A | Exhibit 13 – VSC 27286-WS074RA PDM | N/A |
| N/A | Exhibit 14 – VSC 27290-WS078FA PDM | N/A |
| N/A | Exhibit 15 – VSC 27295-WS299A PDM | N/A |
| N/A | Exhibit 16 – VSC 27299-WS0815RA PDM | N/A |
| N/A | Exhibit 17 – Spencer Ex. 7 | N/A |
| N/A | Exhibit 18 – Spencer Ex. 8 | N/A |
| N/A | Exhibit 19 – Spencer Ex. 5 | N/A |
| N/A | Exhibit 20 – Spencer Ex. 6 | N/A |
| N/A | Exhibit 21 – Webb Ex. 16 | N/A |
| N/A | Exhibit 22 – Webb Ex. 4 | N/A |
| N/A | Exhibit 23 – Webb Ex. 17 | N/A |
| N/A | Exhibit 24 – Webb Ex. 18 | N/A |
| N/A | Exhibit 25 – Webb Ex. 19 | N/A |
| N/A | Exhibit 26 – Cook Ex. 6 | N/A |
| N/A | Exhibit 27 – Cook Ex. 4 February 26, 2010 Letter from Grady Garrison | N/A |
| N/A | Exhibit 28 – Cook Ex. 7 | N/A |
| N/A | Exhibit 29 – Cook Ex. 9 | N/A |
| N/A | Exhibit 30 – 2012 Varsity catalog | N/A |
| N/A | Exhibit 31 – June 15 Email from Adam Baldridge | N/A |
| N/A | Exhibit 32 – Star00284-Star00285 | N/A |

| N/A | Exhibit 33 – Leake Ex. 29 Star04102 | N/A |
|---|---|---|
| N/A | Exhibit 34 – Star05344-Star05345 | N/A |
| N/A | Exhibit 35 – Varsity 2013 catalog | N/A |
| N/A | Exhibit 36 – Star04415 | N/A |
| N/A | Exhibit 37 – Star05284-Star05285 | N/A |
| N/A | Exhibit 38 – Bill Liebe Ex. 37 Star227-Star268 | N/A |
| N/A | Exhibit 39 – Bill Liebe Ex. 16 | N/A |
| N/A | Exhibit 40 – Leake Ex. 34 Star4403-Star4421 | N/A |
| N/A | Exhibit 41 – Star 08087 | N/A |
| N/A | Exhibit 42 – VS9178-VS9182 | N/A |
| N/A | Exhibit 43 – Kimberly Williams Deposition Transcript 2/27/13 | N/A |
| N/A | Exhibit 44 – Gary Spencer Deposition Transcript 2/27/13 | N/A |
| N/A | Exhibit 45 – Robert J. Liebe Deposition Transcript 2/26/13 | N/A |
| N/A | Exhibit 46 – Kerry Leake's Deposition Transcript 2/27/13 | N/A |
| N/A | Exhibit 47 – Rebecca Cook Deposition Transcript 2/26/13 | N/A |
| N/A | Exhibit 48 – Frances Harder Deposition Transcript 2/26/13 | N/A |
| N/A | Exhibit 49 – William Liebe Deposition Transcript 2/26/13 | N/A |
| N/A | Exhibit 50 – Brian Carroll Deposition Transcript 2/26/13 | N/A |
| N/A | Exhibit 51 – Amy Bailey Deposition Transcript 2/27/13 | N/A |
| N/A | Exhibit 52 – Joseph Long Deposition Transcript 2/27/13 | N/A |
| N/A | Exhibit 53 - Varsity Amended Initial Disclosures 03/02/12 | N/A |
| N/A | Exhibit 54 – Plaintiffs' Response to First Set of Interrogatories | N/A |
| N/A | Exhibit 55 – Plaintiffs' Response to First Admissions | N/A |
| N/A | Exhibit 56 – Plaintiffs' Response to First Set of Document Requests | N/A |
| N/A | Exhibit 57 – Varsity Plaintiffs' Responses to Defendants' Second Set of Interrogatories | N/A |
| N/A | Exhibit 58 – Plaintiffs' Response to Second Request for Admissions | N/A |
| N/A | Exhibit 59 – Plaintiffs' Response to Second Document Requests | N/A |
| N/A | Exhibit 60 – Varsity's Response to Star's Third Request | N/A |

| | for Documents | |
|---|---|---|
| 170 | Joint Statement of Undisputed Facts For the Parties' Motions for Summary Judgment | 2228-2297 |
| 171 | Notice of Filing Physical Exhibits | 2298-2299 |
| N/A | Physical Exhibits on top of the exhibit cabinet in the file room in the Western District of Tennessee's Memphis Courthouse | N/A |
| 172 | Plaintiffs' Motion for Summary Judgment | 2300-2306 |
| 172-1 | Plaintiffs' Combined Memorandum of Law in Support of Motion for Summary Judgment and in Opposition to Defendant's Motion for Summary Judgment ("**Varsity's Summary Judgment Memorandum**") | 2307-2365 |
| 172-2 | Exhibit 1 – Color Copies of The Deposits for the Varsity Designs at Issue | 2366-2371 |
| 172-3 | Exhibit 2 - April 16, 2012 Excerpts from Deposition Transcript of Joseph Long | 2373-2376 |
| 172-4 | Exhibit 3 – Copyright Office Form VA | 2377-2381 |
| 172-5 | Exhibit 4 – Copy of Picture of Dress at issue in *Jovani* | 2382-2383 |
| 173 | Varsity's Statement of Undisputed Facts in Support of Motion for Summary Judgment | 2384-2408 |
| 173-1 | Exhibit A – Declaration of Gary Spencer | 2409-2435 |
| 173-2 | Exhibit B – Declaration of Kimberly Williams | 2436-2446 |
| 173-3 | Exhibit C - April 12, 2012 Excerpts from Deposition Transcript of Kimberly Williams | 2447-2465 |
| 173-4 | Exhibit D – Declaration of Susan Scafidi | 2466-2496 |
| 173-5 | Exhibit E – Declaration of Frances Harder | 2497-2540 |
| 173-6 | Exhibit F – Declaration of Brian Carroll | 2541-2605 |
| 173-7 | Exhibit G – Deposition Transcript of Antonio Sarabia, II | 2606-2608 |
| 173-8 | Exhibit H – Expert Report of Antonio R. Sarabia, II | 2609-2611 |
| 173-9 | Exhibit I - April 9, 2012 Excerpts from Deposition Transcript of Kerry Leake | 2612-2635 |
| 173-10 | Exhibit J – April 11, 2012 Excerpts from Deposition Transcript of William Liebe | 2636-2651 |
| 173-11 | Exhibit L – Excerpts from Star's Catalog featuring the Varsity Designs at Issue | 2652-2657 |
| 173-12 | Exhibit M – March 1, 2010 Email correspondence from Becky Cook to Kerry Leake | 2658-2661 |

| | | |
|---|---|---|
| 174 | Varsity's Response to Star Athletica's Statement of Undisputed Facts for Motion for Summary Judgment | 2662-2678 |
| 174-1 | Exhibit 1 – December 21, 2012 Excerpts from Deposition Transcript of Frances Harder | 2679-2687 |
| 174-2 | Exhibit 2 - December 6, 2012 Excerpts from Deposition Transcript of Susan Scafidi | 2688-2690 |
| 174-3 | Exhibit 3 – April 12, 2012 Excerpts from Deposition Transcript of Kimberly Williams | 2691-2694 |
| 174-4 | Exhibit 4 – April 11, 2012 Excerpts from Deposition Transcript of William Liebe | 2695-2701 |
| 174-5 | Exhibit 5 – April 9, 2012 Excerpts from Deposition Transcript of Kerry Leake | 2702-2721 |
| 174-6 | Exhibit 6 – April 23, 2012 Excerpts from Deposition Transcript of Brian Carroll | 2722-2724 |
| 174-7 | Exhibit 7 – Email correspondence's from Cindy Johnson to Kerry Leake | 2725-2732 |
| 174-8 | Exhibit 8 – April 19, 2012 Excerpts from Deposition Transcript of Robert J. Liebe, III | 2733-2768 |
| 174-9 | Exhibit 9 – April 19, 2012 Excerpts from Deposition Transcript of Rebecca Cook (Highly Confidential) | 2769-2804 |
| 175 | Notice of Errata For Corrected Exhibits to Varsity's Statement of Undisputed Facts | 2805-2807 |
| 175-1 | Exhibit A – Declaration of Gary Spencer | 2808-2834 |
| 175-2 | Exhibit B - Declaration of Kimberly Williams | 2835-2845 |
| 175-3 | Exhibit C – April 12, 2012 Excerpts from Deposition Transcript of Kimberly Williams | 2846-2864 |
| 175-4 | Exhibit D – Declaration of Susan Scafidi | 2865-2895 |
| 175-5 | Exhibit E – Varsity's Statement of Undisputed Facts | 2896-2933 |
| 175-6 | Exhibit F – Declaration of Frances Harder | 2934-2977 |
| 175-7 | Exhibit G – Declaration of Brian Carroll | 2978-3042 |
| 175-8 | Exhibit H – September 20, 2012 Excerpts from Deposition Transcript of Antonio Sarabia, II | 3043-3045 |
| 175-9 | Exhibit I – Expert Report of Antonio R. Sarabia II | 3046-3048 |
| 175-10 | Exhibit J – April 9, 2012 Excerpts from Deposition Transcript of Kerry Leake | 3049-3084 |
| 175-11 | Exhibit K – April 11, 2012 Excerpts from Deposition Transcript of William Liebe | 3085-3100 |

| | | |
|---|---|---|
| 175-12 | Exhibit L – April 19, 2012 Excerpts from Deposition Transcript of Rebecca Cook (Highly Confidential) | 3101-3180 |
| 175-13 | Exhibit M – Comparison Photos | 3181-3186 |
| 175-14 | Exhibit N – Email correspondence's between Kerry Leake to Becky Cook | 3187-3190 |
| 175-15 | Exhibit O – Sales Representative Agreement | 3191-3217 |
| 176 | Star Athletica's Response to Varsity's Statement of Undisputed Facts for Motion for Summary Judgment | 3218-3270 |
| 176-1 | Notice of Filing of Exhibits to Star Athletica's Response to Varsity's Statement of Undisputed Facts for Motion for Summary Judgment Via Disc Under Seal | 3271-3274 |
| N/A (Star mailed a physical disc to the district court containing Exhibits A-CC) | Exhibit A – Frances Harder Deposition | N/A |
| N/A | Exhibit B – Joseph Long Deposition Ex. 15 | N/A |
| N/A | Exhibit C – 2009 Varsity catalog | N/A |
| N/A | Exhibit D – Brian Carroll Deposition | N/A |
| N/A | Exhibit E – Joseph Long Deposition | N/A |
| N/A | Exhibit F – Supplemental Declaration of Antonio Sarabia | N/A |
| N/A | Exhibit G – Gary Spencer Deposition | N/A |
| N/A | Exhibit H – 2008 Varsity catalog | N/A |
| N/A | Exhibit I – 2007 Varsity catalog | N/A |
| N/A | Exhibit J – 1999 Varsity catalog | N/A |
| N/A | Exhibit K – Amy Bailey Deposition | N/A |
| N/A | Exhibit L – Copyright Office Compendium | N/A |
| N/A | Exhibit M – Susan Scafidi Deposition | N/A |
| N/A | Exhibit N – VSC036172 – Design Affects Fit of Any Garment | N/A |
| N/A | Exhibit O – VSC036195 – Design Affects Fit of Shell Tops | N/A |
| N/A | Exhibit P – VSC035797 – Design Affects Fit of Youth Shell Tops | N/A |
| N/A | Exhibit Q – VSC035983 – Design Affects Fit of Shell Tops | N/A |

| | | |
|---|---|---|
| N/A | Exhibit R – VSC036196 – Design Affects Fit of Halters, Midriffs, Bodyliners and Unifits | N/A |
| N/A | Exhibit S – VSC036198 – Design Affects Fit of Skirts | N/A |
| N/A | Exhibit T – VSC036163 – Design Affects Fit of Any Garment, MF Shells and Skirts | N/A |
| N/A | Exhibit U – Kim Williams Deposition | N/A |
| N/A | Exhibit V – Joseph Long Deposition Ex. 7 | N/A |
| N/A | Exhibit W – VSC027285 – Sales Summary | N/A |
| N/A | Exhibit X – January 28, 2009 letter to CR Office | N/A |
| N/A | Exhibit Y – Kerry Leake Deposition | N/A |
| N/A | Exhibit Z – Bill Leake Deposition | N/A |
| N/A | Exhibit AA – Rebecca Cook Deposition | N/A |
| N/A | Exhibit BB – Supplemental Deposition | N/A |
| N/A | Exhibit CC – Declaration of Joseph Long | N/A |
| 176-2 | Star Athletica's Combined Memorandum of Law in Opposition to Varsity's Motion for Summary Judgment and Reply in Support of Its Motion for Summary Judgment | 3275-3302 |
| 176-3 | Declaration of Kerry Leake in Support of Star's Opposition and Reply to Motion for Summary Judgment | 3303-3331 |
| 176-4 | September 20, 2012 Excerpts from Deposition Transcript of Antonio Sarabia, II | 3332-3344 |
| 176-5 | Declaration of Steven M. Crosby | 3345-3356 |
| 176-6 | April 10, 2012 Excerpts from Deposition Transcript of Jeffrey Webb | 3357-3361 |
| 177 | Plaintiffs' Sur-Reply in Support of Its Motion for Summary Judgment and in Opposition to Defendant's Motion for Summary Judgment | 3363-3378 |
| 177-1 | Exhibit A - April 12, 2012 Excerpts from Deposition Transcript of Kimberly Williams | 3379-3387 |
| 177-2 | Exhibit B – April 10, 2012 Excerpts from Deposition Transcript of Jeffrey Webb | 3388-3395 |
| 177-3 | Exhibit C – December 6, 2012 Excerpts from Deposition Transcript of Susan Scafidi | 3396-3404 |
| 177-4 | Exhibit D – September 20, 2012 Excerpts from Deposition Transcript of Antonio Sarabia, II | 3405-3410 |
| 177-5 | Exhibit E – Second Declaration of Frances Harder | 3411-3417 |

| | | |
|---|---|---|
| 177-6 | Exhibit F – Second Declaration of Susan Scafidi | 3418-3422 |
| 178 | Reply to Selected Responses of Defendant to Plaintiffs' Statement of Undisputed Facts | 3423-3433 |
| 179 | Objection to Expert Testimony of Law Professor Susan Scafidi | 3434-3436 |
| 179-1 | Memorandum of Facts and Law in Support of Star's Objection to Testimony of Law Professor Susan Scafidi | 3437-3451 |
| 179-2 | Declaration of Steven M. Crosby | 3452-3454 |
| 179-3 | Exhibit A – Defendants First Set of Requests for Production to Plaintiffs | 3455-3474 |
| 179-4 | Exhibit B – Plaintiffs' Responses to Defendants First Set of Requests for Production of Documents | 3475-3522 |
| 179-5 | Exhibit C – July 27, 2012 Cover Letter of Adam Baldridge, Counsel for Varsity, Serving Sublimated Uniform Samples to Star for the First Time with Varsity's Experts' Rebuttal Reports | 3523-3524 |
| 179-6 | Exhibit D – December 6, 2012 Excerpts from Deposition Transcript of Susan Scafidi | 3525-3529 |
| 179-7 | Exhibit E – December 21, 2012 Excerpts from Deposition Transcript of Frances Harder | 3530-3533 |
| 180 | Objection to Expert Testimony of Frances Harder as to Functionality of Uniform Designs | 3534-3536 |
| 180-1 | Memorandum of Facts and Law in Support of Star's Objection to the Testimony of Frances Harder | 3537-3554 |
| 180-2 | Declaration of Steven M. Crosby | 3555-3557 |
| 180-3 | Exhibit A – Defendant's First Set of Requests for Production to Plaintiffs | 3558-3577 |
| 180-4 | Exhibit B – Plaintiffs' Responses to Defendant's First Set of Requests for Production of Documents | 3578-3625 |
| 180-5 | Exhibit C – July 27, 2012 Cover letter of Adam Baldridge Serving Sublimated Uniform Samples to Star for the First Time with Varsity's Experts' Rebuttal Reports | 3626-3627 |
| 180-6 | Exhibit D – December 6, 2012 Excerpts from Deposition Transcript of Susan Scafidi | 3628-3632 |
| 180-7 | Exhibit E – December 21, 2012 Excerpts from Deposition Transcript of Frances Harder | 3633-3636 |
| 181 | Star's Objection to Varsity's Submission of Sublimated | 3637-3639 |

| | | |
|---|---|---|
| | Materials in Connection With the Parties' Cross-Motions for Summary Judgment | |
| 181-1 | Memorandum of Facts and Law in Support of Star's Objection to Varsity's Submission of Sublimated Materials in Connection with Parties' Cross-Motions for Summary Judgment | 3640-3649 |
| 181-2 | Declaration of Steven M. Crosby | 3650-3652 |
| 181-3 | Exhibit A – Defendants First Set of Requests for Production to Plaintiffs | 3653-3672 |
| 181-4 | Exhibit B – Plaintiffs' Responses to Defendants First Set of Requests for Production of Documents | 3673-3720 |
| 181-5 | Exhibit C – July 27, 2012 Cover Letter of Adam Baldridge Serving Sublimated Uniform Samples to Star for the First Time with Varsity's Experts' Rebuttal Reports | 3721-3722 |
| 181-6 | Exhibit D – December 6, 2012 Excerpts from Deposition Transcript of Susan Scafidi | 3723-3727 |
| 181-7 | Exhibit E - December 21, 2012 Excerpts from Deposition Transcript of Frances Harder | 3728-3731 |
| 182 | Plaintiffs' Opposition to Defendant's Objection to Varsity's Submission of Sublimated Materials in Connection with the Parties' Cross-Motions for Summary Judgment | 3732-3748 |
| 182-1 | Exhibit A – July 27, 2012 Cover Letter of Adam Baldridge Serving Expert Disclosures for Frances Harder and Susan Scafidi | 3749-3750 |
| 182-2 | Exhibit B – April 10, 2012 Excerpts from Deposition Transcript of Jeffrey Webb | 3751-3754 |
| 182-3 | Exhibit C – April 23, 2012 Excerpts from Deposition Transcript of Brian Carroll | 3755-3760 |
| 182-4 | Exhibit D – April 12, 2012 Excerpts from Deposition Transcript of Kimberly Williams | 3761-3766 |
| 183 | Plaintiffs' Opposition to Defendant's Objection to the Testimony of Frances Harder | 3767-3787 |
| 183-1 | Exhibit A - December 21, 2012 Excerpts from Deposition Transcript of Frances Harder | 3788-3803 |
| 183-2 | Exhibit B – Plaintiffs' Expert Disclosure of Frances | 3804-3837 |

| | Harder | |
|---|---|---|
| 184 | Plaintiffs' Opposition to Defendant's Objection to the Testimony of Susan Scafidi | 3838-3858 |
| 184-1 | Exhibit A - December 6, 2012 Excerpts from Deposition Transcript of Susan Scafidi | 3859-3895 |
| 184-2 | Exhibit B - December 6, 2012 Condensed Deposition Transcript of Susan Scafidi | 3896-4009 |
| 184-3 | Exhibit C – Declaration of Susan Scafidi in Response to Defendant's Opposition to Expert Testimony of Law Professor Susan Scafidi | 4010-4026 |
| 184-4 | Exhibit D – July 27, 2012 Expert Report of Professor Susan Scafidi | 4027-4057 |
| 184-5 | Exhibit E – September 20, 2012 Excerpts from Deposition Transcript of Antonio Sarabia, II | 4058-4067 |
| 184-6 | Exhibit F – Resume of Antonio R. Sarabia, II | 4068-4073 |
| 185 | Motion and Memorandum for Leave to File Reply Memorandum in Support of Star's Objection to Varsity's Submission of Sublimated Materials | 4074-4076 |
| 185-1 | Exhibit A – Star's Reply to Opposition to Objections to Varsity's Submission of Sublimated Materials in Connection with Cross-Motions for Summary Judgment | 4077-4083 |
| 186 | Motion and Memorandum for Leave to File Reply Memorandum in Support of Star's Objection to the Testimony of Frances Harder | 4084-4087 |
| 186-1 | Exhibit A - Star's Reply to Varsity's Response to Objection to Expert Testimony of Frances Harder | 4088-4094 |
| 187 | Motion and Memorandum for Leave to File Reply Memorandum in Support of Star's Objection to the Testimony of Law Professor Scafidi | 4095-4098 |
| 187-1 | Exhibit A - Star's Reply to Varsity's Response to Objection to Expert Testimony of Law Professor Susan Scafidi | 4099-4105 |
| 188 | Order Granting Motion for Leave to File Reply Memorandum in Support of Star's Objection to Varsity's Submission of Sublimated Materials | 4106 |
| 189 | Star's Reply to Opposition to Objections to Varsity's Submission of Sublimated Materials in Connection with | 4107-4112 |

| | the Cross Motions for Summary Judgment | |
|---|---|---|
| 190 | Text Order Only Granting Defendants' Motion for Leave to File Reply to Varsity's Response to Star's Objection To Expert Testimony of Susan Scafidi | N/A |
| 191 | Star's Reply to Varsity's Response to Objection to Expert Testimony of Frances Harder | 4113-4118 |
| 192 | Star's Reply to Varsity's Response to Objection to Expert Testimony of Law Professor Susan Scafidi | 4119-4124 |
| 193 | Notice of Errata For Exhibit B to Declaration of Kimberly Williams (DKT. NO. 175-2) | 4125-4126 |
| 193-1 | Exhibit B to Declaration of Kimberly Williams | 4127-4128 |
| 194 | Plaintiffs' Unopposed Motion for Leave to File Sur-Replies in Support of Oppositions to Star's Objections | 4129-4132 |
| 194-1 | Exhibit A – Varsity's Proposed Sur-Reply in Opposition to Star's Objection on Sublimated Materials | 4133-4139 |
| 194-2 | Exhibit B – Varsity's Proposed Sur-Reply in Opposition to Star's Objection to Testimony of Frances Harder | 4140-4145 |
| 194-3 | Exhibit C – Varsity's Proposed Sur-Reply in Support of Its Opposition to Star's Objection to the Testimony of Susan Scafidi | 4146-4151 |
| 198 | Order Denying Plaintiffs' Unopposed Motion For Leave to File Sur-Replies, Defendant's Motion to Modify Briefing Schedule, and Defendant's Motion to Amend/Correct | 4293-4294 |
| 199 | Opinion and Order Granting in Part and Denying in Part Defendant's Motion for Summary Judgment, Denying Plaintiff's Motion For Summary Judgment, and Dismissing Plaintiff's State-Law Claims Without Prejudice ("**Summary Judgment Order**") | 4295-4312 |
| 200 | Judgment | 4313-4314 |
| 201 | Notice of Appeal | 4315-4316 |
| Appendix to Appellants' Brief | List of Varsity's Physical Exhibits Filed With the District Court | App. 1 |
| Appendix to Appellants' Brief | Excerpt from H.R. Rep. No. 1476, 94th Cong., 2d Sess. (1976) | App. 2-10 |
| Appendix to Appellants' Brief | Excerpt from Second Supplementary Register's Report on the General Revision of the U.S. Copyright Law (1975) | App. 11-30 |