No. 14-5237

# United States Court of Appeals
# for the Sixth Circuit

VARSITY BRANDS, INC., VARSITY SPIRIT CORPORATION, AND VARSITY SPIRIT
FASHIONS & SUPPLIES, INC.,

*Plaintiffs-Appellants,*

v.

STAR ATHLETICA, L.L.C.,

*Defendant-Appellee.*

On Appeal from the United States District
Court for the Western District of Tennessee, Western Division
(No. 2:10-cv-02508-RHC-cgc)

## APPELLANTS' REPLY BRIEF

Grady M. Garrison
Bradley E. Trammell
Adam S. Baldridge
Nicholas L. Vescovo
BAKER, DONELSON, BEARMAN,
CALDWELL & BERKOWITZ, P.C.
165 Madison Avenue, Suite 2000
Memphis, Tennessee 38103
Telephone: 901-526-2000
Facsimile: 901-577-0838

Thomas Kjellberg
COWAN, LIEBOWITZ &
LATMAN, P.C.
1133 Avenue of the Americas
New York, New York 10036
Telephone: 212-790-9202
Facsimile: 212- 575-0671

*Counsel for Plaintiffs-Appellants Varsity Brands, Inc., Varsity Spirit Corporation,
and Varsity Spirit Fashions & Supplies, Inc.*

January 26, 2015

# TABLE OF CONTENTS

I. Star Concedes That The District Court's Judgment Hinges On Aesthetic Function Which Is Contrary To Copyright Law And This Court's Precedent ..................................................................................1

II. Based On Defective Authority, The District Court Erroneously Dispensed With The Statutory Presumption Of Copyright Validity And Undertook No Analysis Of It ...............................................................7

III. Star's Contention That Varsity's Copyrights Are For Designs *Of* Garments Is Factually and Legally Incorrect ...............................................11

IV. The District Court Did Not Apply Any Of "The Multiple Separability Tests" – None Of Which Recognize "Aesthetic Function" Or "Identity Function" ...............................................................28

V. Expert Testimony Is Not Relevant Or Helpful In Determining That Varsity's Two-Dimensional Graphic Works Can Still Be Identified As Such When Applied To Useful Articles .......................................31

VI. Varsity's State Law Claims Were Improperly Dismissed.............................32

CONCLUSION .................................................................................34

**Cases**

*Alaska Stock, LLC v. Houghton Mifflin Harcourt Publ'g Co.*,
747 F.3d 673 (9th Cir. 2014) ...............................................................................10

*ATC Distribution Group, Inc. v. Whatever It Takes Transmissions & Parts, Inc.*,
402 F.3d 700 (6th Cir. 2005) ..................................................................................2

*Axelrod & Cherveny Architects, P.C. v. Winmar Homes*,
2007 WL 708798 (E.D.N.Y. Mar. 6, 2007) ..........................................................13

*Boyds Collection, Ltd. v. Bearington Collection, Inc.*,
360 F. Supp. 2d 655, 661 (M.D. Pa. 2005) .............................................................4

*Celebration Int'l, Inc. v. Chosun Int'l, Inc.*,
234 F. Supp. 2d 905 (S.D. Ind. 2002) .....................................................................4

*Chosun Int'l v. Chrisha Creations, Ltd.*,
413 F.3d 324 (2d Cir. 2005) ....................................................................................4

*Custom Chrome v. Ringer*,
1995 WL 405690 (D.D.C. June 30, 1995) ..............................................................9

*Data General Corp. v. Grumman Systems Support Corp.*,
36 F.3d 1147 (1st Cir. 1994) .................................................................................12

*Eliya, Inc. v. Kohl's Department Stores*,
82 U.S.P.Q.2d 1088 (S.D.N.Y. 2006) ............................................................ 20, 21

*Eve of Milady v. Impression Bridal, Inc.*,
957 F. Supp. 484 (S.D.N.Y. 1997) ..........................................................................9

*Eve of Milady v. Impression Bridal, Inc.*,
986 F. Supp. 158 (S.D.N.Y. 1997) ..........................................................................9

*Express, LLC v. Fetish Group, Inc.*,
424 F.Supp. 2d 1211 (C.D. Cal. 2006) ..................................................................28

*FireSabre Consulting LLC v. Sheehy*,
2013 WL5420977 (S.D.N.Y. Sept. 26, 2013) .......................................................12

*Galiano v. Harrah's Operating Co.*,
   416 F.3d 411 (5th Cir. 2005) ........................................................................ 19, 20

*Gay Toys, Inc. v. Buddy L. Corp.*,
   703 F.2d 970 (6th Cir. 1983) ...................................................................................6

*Hart v. Dan Chase Taxidermy Supply Co.*,
   86 F.3d 320 (2d Cir. 1996) ......................................................................................2

*Hart v. Dan Chase Taxidermy Supply Co.*,
   884 F. Supp. 71 (N.D.N.Y. 1995) ...........................................................................3

*Hayes v. Equitable Energy Res. Co.*,
   266 F.3d 560 (6th Cir. 2001) .................................................................................33

*Homfeld II, LLC v. Comair Holdings, Inc.*,
   53 Fed. App'x 731 (6th Cir. 2003) ........................................................................33

*Inhale, Inc. v. Starbuzz Tobacco, Inc.*,
   739 F.3d 446 (9th Cir. 2014) .................................................................................10

*Isringhausen Imps., Inc. v. Nissan N. Am., Inc.*,
   2011 WL 1331886 (C.D. Ill. Apr. 6, 2011) ...........................................................11

*Jack Adelman v. Sonners & Gordon*,
   112 F. Supp. 187 (S.D.N.Y. 1934) ........................................................................27

*Jovani Fashion, Ltd. v. Cinderella Divine, Inc.*,
   808 F. Supp. 2d 542 (S.D.N.Y. 2014) ..................................................... 16, 18, 19

*Kieselstein-Cord v. Accessories by Pearl, Inc.*,
   489 F. Supp. 732 (S.D.N.Y. 1980) ..........................................................................5

*Kieselstein-Cord v. Accessories by Pearl, Inc.*,
   632 F.2d 989 (2d Cir. 1980) .....................................................................................5

*Knitwaves, Inc. v. Lollytogs Ltd.*,
   71 F.3d 996 (2d Cir. 1995) .......................................................... 20, 23, 24, 25

*Kohus v. Mariol,*
   328 F.3d 848 (6th Cir. 2003) .................................................................................31

*National Theme Productions, Inc. v. Jerry B. Beck, Inc.*,
    696 F. Supp. 1348 (S.D. Cal. 1988) ...................................................................6

*Nicholls v. Tufenkian Imp./Exp. Ventures, Inc.*,
    367 F. Supp. 2d 514 (S.D.N.Y. 2005).............................................................12

*OddzOn v. Oman*,
    924 F.2d 346 (D.C. Cir. 1991) .......................................................................9

*Olem Shoe Corp. v. Wash. Shoe Corp.*,
    2015 WL 136552 (11th Cir. Jan. 12, 2015) ............................................. 10, 25

*Pivot Point Int'l, Inc. v. Charlene Prods.*,
    372 F.3d 913 (7th Cir. 2004)................................................................. 29, 30

*Pollick v. Kimberly-Clark Corp.*,
    2012 WL 28143 (E.D. Mich. Jan. 5, 2012).....................................................26

*Russell v. Trimfit, Inc.*,
    428 F. Supp. 91 (E.D. Pa. 1977)...................................................................27

*Segrets, Inc. v. Gillman Knitwear Co.*,
    207 F.3d 56 (1st Cir. 2000) ..........................................................................19

*Sem-Torq, Inc. v. K Mart Corp.*,
    936 F.2d 851 (6th Cir. 1991) ........................................................................32

*Skidmore v. Swift & Co.*,
    323 U.S. 134 (1944) .....................................................................................9

*Star Fabrics, Inc. v. DKJY, Inc.*,
    2014 WL 102809 (C.D. Cal. Jan. 9, 2014).....................................................14

*Superior Form Builders v. Dan Chase Taxidermy Supply Co.*,
    74 F.3d 488 (4th Cir. 1996)...........................................................................2

*United States v. Mead Corp.*,
    533 U.S. 218 (2001) ...................................................................................10

*United States v. Smithers*,
    212 F.3d 306 (6th Cir. 2000).........................................................................31

*Universal Furniture Int'l, Inc. v. Collezione Europa USA, Inc.*,
196 Fed. Appx. 166 (4th Cir. 2006) ..................................................8

*Universal Furniture Int'l, Inc. v. Collezione Europa USA, Inc.*,
618 F.3d 417 (4th Cir. 2010) ......................................................5, 7

*Varsity Brands, Inc. v. J&M Spirit Wear, Inc.*,
2009 WL 3401182 (S.D.N.Y. Oct. 19, 2009) ..........................14

*Whimsicality, Inc. v. Rubie's Costume Co.*,
891 F.2d 452 (2d Cir. 1989) ............................................................3

*Williamson v. Aetna Life Ins. Co.*,
481 F.3d 369 (6th Cir. 2007) ........................................................34

*Winfield Collection, Ltd. v. Gemmy Indus., Corp.*,
147 Fed. Appx. 547 (6th Cir. 2005) ..........................................27

**Statutes**

17 U.S.C. § 101 ........................................................ 1, 2, 3, 34

17 U.S.C. § 102 ....................................................................14

17 U.S.C. § 408(a) ..............................................................14

17 U.S.C. § 408(c)(1) ..........................................................16

17 U.S.C. § 410(c) ..........................................................8, 13

17 U.S.C. § 410(d) ...............................................................9

28 U.S.C. § 1653 ................................................................36

**Legislative History**

H.R. Rep. No. 1476, 94th Cong., 2d Sess. (1976) .............. 10, 28, 31, 34

**Treatises**

Melville Nimmer & David Nimmer, *Nimmer on Copyright* ............ 22, 24

William F. Patry, *Patry on Copyright* ..........................................24

**Law Review Articles**

Barton Keyes, *Alive and Well: The (Still) Ongoing Debate Surrounding Conceptual Separability in American Copyright Law*, 69 Ohio St. L.J. 109 (2008) ................................................................23

Peter Schalestock, *Forms of Redress for Design Piracy:  How Victims Can Use Existing Copyright Law*, 21 Seattle Univ. L. R. 113, 122 (1997). ...............................................4

Shira Perlmutter, *Conceptual Separability and Copyright in the Designs of Useful Articles*, 37 J. Copyright Soc'y U.S.A. 339 (1990) ...........................................4

**Other Authorities**

Compendium of U.S. Copyright Office Practices, Third Edition .............. 2, 5, 9, 10

Star's appellate brief, DE#33, 36 ("Star Brief"), misapprehends Varsity's copyrighted works, misconstrues the Copyright Act and the practices of the Copyright Office, and misunderstands the very judgment that Star asks this Court to affirm.

## I.      Star Concedes That The District Court's Judgment Hinges On Aesthetic Function Which Is Contrary To Copyright Law And This Court's Precedent

The linchpin of the district court's opinion is the purported "fact that the utilitarian function of a cheerleading uniform is not merely to clothe the body; it is to clothe the body in a way that evokes the concept of cheerleading."  RE#199, PageID 4309, Summary Judgment Order at 15.  Star calls it "identity function"; others have called it aesthetic or decorative function.  By any name, "evocative function" is contrary to the Copyright Act and well-established case law, including the binding law of this Circuit.

The Copyright Act defines a useful article as "an article having an intrinsic utilitarian function that is *not* merely to portray the appearance of the article or to convey information."  17 U.S.C. § 101 (emphasis added).  An object is considered a useful article if, and to the extent that, "it performs any inherent or intrinsic utilitarian function *other than to inform, entertain, or portray its appearance* to human beings."  Compendium of U.S. Copyright Office Practices, Third Edition

("Compendium III") § 924.1 (emphasis added); *ATC Distribution Group, Inc. v. Whatever It Takes Transmissions & Parts, Inc.*, 402 F.3d 700, 707 n.3 (6th Cir. 2005) (confirming that the Act "defines a useful article as an article that has a function other than conveying information."). Conversely, the Copyright Act provides that copyrightable "pictorial, graphic, and sculptural works" include "works of artistic craftsmanship insofar as their form *but not* their mechanical or utilitarian aspects are concerned." 17 U.S.C. § 101 (emphasis added).

The "evocative function" of an artistic design applied to a useful article is precisely what is protected by copyright, *as distinguished from* the unprotectable mechanical or utilitarian aspects of the article. Courts making separability determinations have repeatedly declined to find aesthetic, informative or evocative functions to be "utilitarian functions" of an article. *See*, *e.g.*, *Superior Form Builders v. Dan Chase Taxidermy Supply Co.*, 74 F.3d 488, 492-95 (4th Cir. 1996) (holding that mammal taxidermy mannequins are "sculptural works" rather than "useful articles" because their utilitarian aspects serve "merely to portray the appearance" of the animal); *Hart v. Dan Chase Taxidermy Supply Co.*, 86 F.3d 320, 323 (2d Cir. 1996) ("fish mannequins, even if considered 'useful articles,' are useful insofar as they 'portray the[ir] appearance.' 17 U.S.C. § 101. That makes them copyrightable.").

The district court in *Hart* correctly applied the § 101 definitional scheme to find that, insofar as the "function" of an item is to appear in a certain way, the item is not a "useful article" at all:

> If the function is to mount skins, it is clear that artistic elements exist separately from the functional considerations. If the function is to give the appearance of a lifelike animal, then all the artistic parts further the function. However, in that case the mannequin would not fit the definition of useful article because its function would be to merely portray the appearance of the article.

*Hart v. Dan Chase Taxidermy Supply Co.*, 884 F. Supp. 71, 75 n.9 (N.D.N.Y. 1995). Including aesthetic and informative functions in the utilitarian function of a useful article garbles and ultimately subverts the statutory scheme, "effectively writ[ing] the notion of conceptually separable copyrightable elements out of the law." Peter Schalestock, *Forms of Redress for Design Piracy: How Victims Can Use Existing Copyright Law*, 21 Seattle Univ. L. R. 113, 126 (1997).

Neither the Copyright Office nor any Circuit has endorsed expanding the "utilitarian function" of an article to include functions that the statute defines as non-utilitarian, namely, conveying information or portraying an appearance.[1] The

---

[1] The reference to "decorative function" in *Whimsicality, Inc. v. Rubie's Costume Co., Inc.*, 891 F.2d 452, 455 (2d Cir. 1989), was *dicta*, and has been widely criticized. *See*, *e.g.*, Shira Perlmutter, *Conceptual Separability and Copyright in the Designs of Useful Articles*, 37 J. Copyright Soc'y U.S.A. 339, 370 (1990) (criticizing *Whimsicality dicta* as "remarkable language – the 'function' of

Second Circuit rejected such an attempt in *Chosun Int'l v. Chrisha Creations, Ltd.*, 413 F.3d 324 (2d Cir. 2005). The court reversed the district court's holding that costumes had no creative features that were separable from the function of "masquerading." *Id.* at 329-30. The court held that "masquerading as a 'useful' function'" "is at odds with the Copyright Act's very definition of 'useful articles.'" *Id.* at 330 n.3. The proper inquiry was whether the artistic features "enhance the costume's functionality *qua* clothing." *Id.*

Courts and the Copyright Office have consistently described the functionality of clothing in prosaic, truly "utilitarian" terms, and without regard to any use to which the clothing might be put. *See Boyds Collection, Ltd. v. Bearington Collection, Inc.*, 360 F. Supp. 2d 655, 661 (M.D. Pa. 2005) ("to cover embarrassing anatomical aspects or to protect … from exterior elements"); *Celebration Int'l, Inc. v. Chosun Int'l, Inc.*, 234 F. Supp. 2d 905, 912 (S.D. Ind. 2002) (to "cover the wearer's body and protect the wearer from the elements"); Compendium III § 924.3(A) ("clothing provides utilitarian functions, such as warmth, protection, and modesty."); *cf. id.* § 924.3(A)(3) (a "mask would not be considered a useful article because it does not perform a utilitarian function").

---

decoration being precisely what is ordinarily conceived of as protected by copyright"). The Whimsicality *dicta* was effectively repudiated by the Second Circuit's *Hart* and *Chosun* opinions discussed above and below respectively, and has not been adopted by this Circuit or any other. *See* Varsity Brief at 50-52.

4

In *Kieselstein-Cord*, neither the district court nor the Second Circuit considered anything other than the true utilitarian function, "*qua* clothing," of the Western-style belt buckles at issue. *Kieselstein-Cord v. Accessories by Pearl, Inc.*, 489 F. Supp. 732, 734 (S.D.N.Y. 1980) ("Belt buckles are utilitarian objects designed to fasten belts and thus hold up or hold in a dress, skirt, or pants."). The Second Circuit found, to the dissenting judge's dismay, that the artistic elements of the buckles were conceptually separable from "the important function they serve – helping to keep the tops of trousers at waist level." *Kieselstein-Cord*, 632 F.2d 989, 994 (2d Cir. 1980) (Weinstein, J. dissenting). Had the Second Circuit found the buckles' utilitarian function to be holding up trousers in a way that evokes the concept of the Wild West, the defendant would have prevailed.

Similarly, the Fourth Circuit in *Universal Furniture* found that the designs at issue were "'wholly unnecessary' to the furniture's utilitarian function" *as furniture*: "[a] carved scroll of leaves on a nightstand post, for example, does nothing to improve the utilitarian aspect thereof." *Universal Furniture Int'l, Inc. v. Collezione Europa USA, Inc.*, 618 F.3d 417, 434 (4th Cir. 2010). Had the Fourth Circuit considered "evocative function," it would have found that the utilitarian function of Universal's furniture, which was intended to "resemble furniture pieces from England in the 18th or 19th centuries," *id.* at 433, included evoking in the

viewer's mind the concept of 18th or 19th century English furniture, and a different result would have been preordained.

In the end, the insurmountable obstacle for Star is this Court's holding in *Gay Toys, Inc. v. Buddy L. Corp.*, 703 F.2d 970 (6th Cir. 1983), rejecting the district court's expansion of the "intrinsic utilitarian function" of an article to encompass aesthetic and informative functions. As this Court held, "The district court would have the 'useful article' exception swallow the general rule, and its rationale is incorrect." *Id*. at 973; *see* Varsity Brief at 45-46. Here, the district court did not reconcile its holding with *Gay Toys*, and Star in its Brief does not even attempt to do so, tacitly acknowledging that it cannot be done.

There is no reasonable dispute that the two-dimensional graphic designs on Varsity's garments "do not advance their utilitarian purpose *as clothing*." *National Theme Productions, Inc. v. Jerry B. Beck, Inc.*, 696 F. Supp. 1348, 1354 (S.D. Cal. 1988) (emphasis added); Varsity Brief at 53-56, 61. Indeed, the district court essentially agrees: the court finds that it "may be true" that a "blank" garment "covers the body to the same degree, wicks away moisture, and withstands the rigors of cheerleading movements *at least as much as, if not more than*, a garment that has a design on the front of it." RE#199, PageID 4309, Summary Judgment Order at 15 (emphasis added).

The district court's construction of the "utilitarian purpose" of a design on a garment, as including functions that the statute defines as *non*-utilitarian, is contrary to the Copyright Act and the law of this Circuit.

**II.     Based On Defective Authority, The District Court Erroneously Dispensed With The Statutory Presumption Of Copyright Validity And Undertook No Analysis Of It**

The district court found that the statutory presumption of copyright validity under 17 U.S.C. § 410(c) is "easy to rebut," citing only to a reference in *dicta* to the Copyright Office's supposedly "cursory issuance of registrations." RE#199, PageID 4300, Order at 6 n.2 (citing *Universal*, 618 F.3d at 430). *Universal* itself reveals that the *dicta* on which the district court relied is premised on a mistake of fact: that "the Copyright Office issued registrations … on the same day it received the applications." *Id*. at 425; *see also id*. at 428 (discussing incorrectly "[t]he Copyright Office's practice of summarily issuing registrations (perhaps even the day of filing the application, as in this case)").

The *Universal* court simply misapprehended § 410(d), under which "[t]he effective date of a copyright registration is the day on which an application, deposit, and fee, which are *later* determined by the Register of Copyrights or by a court of competent jurisdiction to be acceptable for registration, have all been received in the Copyright Office." 17 U.S.C. § 410(d) (emphasis added); *see*

7

Compendium III § 625.  As any copyright practitioner will confirm, "same day registration" is not available under any circumstances.  The *Universal* court misunderstood that the effective date of registration is the filing date of the application, even though the registration certificate issues months later, after the Office has examined the application.  Section 410(d) "takes account of the inevitable timelag between receipt of the application and other material and the issuance of the certificate ...."  H.R. Rep. No. 1476, 94th Cong., 2d Sess. 157 (1976) ("House Report").[2]

A cursory look at the recently issued Compendium III will dispel any notion that the Copyright Office issues registrations carelessly or summarily.  The Compendium sets forth the Office's practices and procedures for examining copyright claims in numerous categories of works – including, naturally, copyrights in "two-dimensional artwork that has been applied to a useful article, such as designs reproduced on … clothing."  Compendium III § 618.4(C).  Examination Specialists are instructed that

---

[2]Curiously, the *Universal* court also misstated – twice – the operation and timing of the presumption itself under § 410(c).  *See* 618 F.3d at 430 ("The submission of a valid certificate of copyright registration creates a presumption of originality for five years from the date of the registration."); 196 Fed. Appx. 166, 169 (4th Cir. 2006) ("Registration of a copyright constitutes *prima facie* evidence of the validity of a copyright in any judicial proceeding brought within five years of the copyright's first publication.").  The errors were harmless but are additional evidence that the Fourth Circuit's consideration of Section 410 was cursory.

> Although the copyright law does not protect the shape or design of clothing, and although fabric and textiles have useful functions (*e.g.*, providing varying degrees of warmth and protection), designs imprinted in or on fabric are considered conceptually separable from the utilitarian aspects of garments, linens, furniture, or other useful articles.

*Id*. § 924.3(A)(1). The Office will register such designs only after the Office determines "that the artwork is physically or conceptually separable from the useful article." Id. § 618.4(C).

Because the practice of the Copyright Office reflects a "body of experience and informed judgment to which courts and litigants may properly resort for guidance," *Skidmore v. Swift & Co.*, 323 U.S. 134, 140 (1944), the Office's registration decisions are entitled to at least *Skidmore* deference – a proposition Star does not dispute, beyond its bizarre assertion that *Skidmore* and *Chevron* "have nothing to do with the Copyright Office or copyright law," Star Brief at 48.[3]

---

[3] As indicated by Varsity's use of "see, e.g.," Varsity Brief at 25-26, these cases are cited, not for copyright principles, but instead for the general principle applicable to administrative bodies' interpretation of acts they administer. The citations in Varsity's Brief that Star characterizes as "phantom quotes," Star Brief at 48, are the unfortunate product of inadvertent editing errors. But, to be clear the legal proposition are sound. For example, the passage attributed to *OddzOn Products, Inc. v. Oman*, 924 F.2d 346, 349 (D.C. Cir. 1991), should have been to *Custom Chrome v. Ringer*, 1995 WL 405690, *6 (D.D.C. June 30, 1995), citing *OddzOn*. The quote attributed to *Eve of Milady v. Impression Bridal, Inc.*, 957 F. Supp. 484, 489 (S.D.N.Y. 1997), appeared in a later opinion in the same case, 986 F. Supp. 158, 161 (S.D.N.Y. 1997). Further, while the outlines of the pom-pom, head, and arms are not part of the 0815 design, the inclusion of the 0815 image without a pom-pom was not an attempt to hide it from the Court as Star suggests.

*See*, *e.g.*, *Inhale, Inc. v. Starbuzz Tobacco, Inc.*, 755 F.3d 1038, 1042 (9th Cir. 2014) (finding Copyright Office's interpretation of conceptual separability entitled to *Skidmore* deference); *Olem Shoe Corp. v. Wash. Shoe Corp.*, 2015 WL 136552, at \*6 n.10 (11th Cir. Jan. 12, 2015) (finding Copyright Office's construction "merits deference under *Skidmore* … as the copyright law is 'highly detailed' and it is apparent that the Copyright Office 'can bring the benefit of specialized experience to bear on the subtle questions in this case.'") (quoting *United States v. Mead Corp.*, 533 U.S. 218, 235 (2001)); *Alaska Stock, LLC v. Houghton Mifflin Harcourt Publ'g Co.*, 747 F.3d 673, 685 n.52 (9th Cir. 2014) ("Because the forms created by the Copyright Office are statutorily authorized, it is possible that they qualify for the more deferential *Chevron* deference …."). Whichever level of deference should be accorded to the Copyright Office's decisions to register Varsity's two-dimensional designs, based on the Office's determinations that the designs are separable from the useful articles on which they appear, the Office's decisions merit more than offhand dismissal based on *dicta*, premised on a mistake, suggesting that the § 410(c) presumption is easily rebutted.

---

To the contrary, Varsity's summary judgment brief included the image with the outlines and there are multiple copies of the 0815 design throughout the record. *See* RE#172-2, PageID 2367, Exhibit 1 to Varsity Summary Judgment Motion.

In any case, the § 410(c) presumption of copyright validity may be overcome only by citation to *evidence* in the record showing that the Copyright Office's decision was wrong. *See* Varsity Brief at 21-31. The district court cited no such evidence, and neither does Star, despite its reference to "extensive evidence … showing the lack of separability and independence [*sic*]," Star Brief at 45, which is offset by Star's peculiar assertion that "the court did ***not*** rule that Varsity's two-dimensional copyrights were invalid," Star Brief at 44.

### III. Star's Contention That Varsity's Copyrights Are For Designs *Of* Garments Is Factually and Legally Incorrect

Star's arguments regarding separability rely heavily on Star's misconstruing of Varsity's copyright applications/registrations and Star's attempt to limit the scope of copyright protection based on the deposit materials. This is incorrect for two reasons. First, as the Copyright Act makes clear, "registration is not a condition of copyright protection." 17 U.S.C. § 408(a). To the extent that a work contains copyrightable elements, those elements are protected by copyright from the moment they are fixed in a tangible medium of expression. 17 U.S.C. § 102. Second, as to a registered copyright, "the scope of copyright protection is not defined by what is in the copyright deposit." *Isringhausen Imps., Inc. v. Nissan N. Am., Inc.*, 2011 WL 1331886, at *4 (C.D. Ill. Apr. 6, 2011). "[T]he dual purposes of the deposit requirement … are: (1) to provide the Copyright Office with

11

'sufficient material to identify the work in which the registrant claims a copyright' and (2) 'to furnish the Copyright Office with an opportunity to assess the copyrightability of the applicant's work.'" *Nicholls v. Tufenkian Imp./Exp. Ventures, Inc.*, 367 F.Supp.2d 514, 520 (S.D.N.Y. 2005) (quoting *Data General Corp. v. Grumman Systems Support Corp.*, 36 F.3d 1147, 1161-62 (1st Cir. 1994)). There is "no reason to exclude from the scope of the copyright any component Plaintiff created that is visible in the deposit materials." *FireSabre Consulting LLC v. Sheehy*, 2013 WL5420977, *6 (S.D.N.Y. Sept. 26, 2013).

Star's Brief is built largely on the notion, contrary to this long-established law and practice, that Varsity's works *are* the photographs or drawings submitted to the Copyright Office as deposit materials, rather than the two-dimensional designs *depicted in* the deposit materials, and that Varsity's copyright registrations protect only those photographs and drawings. *See*, *e.g.*, Star Brief 5, 9 ("Varsity says it published these five designs as 2-dimensional 'artwork' in its catalogs, … but these catalogs do not display the three copyrighted sketches or the two photographs …. Instead, the catalogs contain different photographs of human models wearing actual cut-and-sew cheerleading uniforms, which is not the '2-dimensional artwork' registered with the Copyright Office."). Star is wrong. *See*, *e.g.*, Compendium III § 904 ("In most cases, applicants may submit photographs or

12

other identifying materials that provide the Office with a sufficient representation or depiction of the work for examination purposes.").

Star's understanding of the term of art "2-dimensional artwork" is equally off-base. *See* U.S. Copyright Office Form VA Instructions ("Two-dimensional artwork" includes "2-dimensional artwork applied to useful articles, and designs reproduced on … clothing."); Compendium III § 618.4(C). In any case, the "administrative classification of works has no significance with respect to the subject matter of copyright or the exclusive rights provided by" the Copyright Act. 17 U.S.C. § 408(c)(1). And the notion that administrative classification determines the scope of protection runs counter to "the longstanding copyright principle that … courts should not treat the registration requirement as a technical trap." *Axelrod & Cherveny Architects, P.C. v. Winmar Homes*, 2007 WL 708798, at *4 (E.D.N.Y. Mar. 6, 2007). Star's skewed take on copyright and copyright registration first surfaced in its unsuccessful motion to dismiss (RE#34), in which Star argued that Varsity's copyrights were not infringed because Star had not reproduced the same deposit drawings and photographs on its products and in its catalog. Star's argument was meritless then, and remains so now.

The same is true of Star's contention that Varsity seeks to prohibit it from "manufacturing three-dimensional cheerleading uniforms." Star Brief at 20.

Varsity has never claimed protection over any three-dimensional "garment design" manufactured or sold by Star or anyone else, and has not sought patent protection, as Star contends. As Varsity has averred throughout this matter, it is not seeking to protect designs *of* garments; it is seeking to enforce its registered copyrights in two-dimensional designs appearing *on* garments. Courts, like Congress and the Copyright Office, have readily distinguished between claims of copyright in applied art – designs *on* useful articles – and copyright in the design *of* useful articles. *See*, *e.g.*, *Star Fabrics, Inc. v. DKJY, Inc.*, 2014 WL 102809, at *3 (C.D. Cal. Jan. 9, 2014) ("Star Fabrics has not claimed a copyright in any particular garment or other functional item but rather in the designs' two-dimensional patterns."); *Varsity Brands, Inc. v. J&M Spirit Wear, Inc.*, 2009 WL 3401182, *2 (S.D.N.Y. Oct. 19, 2009) ("Contrary to defendants' assertions, plaintiffs do not claim to have copyright protection over the uniforms. In fact, plaintiffs expressly acknowledge that they are not asserting protection over the design of the clothing or accessories …. Plaintiffs are alleging that defendants have infringed by selling items with distinctive stripes and patterns for which they have copyright protection.").

Varsity's two-dimensional designs remain two-dimensional when applied to the surface of a garment. Indeed, the Copyright Office has characterized over 50

14

Varsity designs of the same type as the designs at issue as designs *on*, and not designs *of*, garments:

> We have decided to register a copyright claim in all six works because we believe that each work contains a sufficient, <u>although minimal</u>, amount of original and creative **separable** graphic authorship in the treatment and arrangement of the elements, coupled with their coloring, appearing on the surface of each work that may be regarded as copyrightable….

*See* Varsity Brief 27-29. The Copyright Office correspondence of record is additional confirmation that the Office knowingly registered Varsity's copyrights in original two-dimensional designs appearing *on* the surface of garments, and not three-dimensional designs *of* garments. The Office simply would not register the latter.

Accordingly, Star's claim that "Varsity is seeking to do exactly what it told the CO it was not doing – registering a 2-dimensional copyright to use as copyright in clothing itself," Star Brief at 42 n.10, is nonsensical. Star misstates what Varsity "told" the Copyright Office in its Requests for Reconsideration. RE#71-2, PageID 726-739, Exhibit E to Response Motion to Dismiss. Regardless what any applicant "tells" the Office, "the U.S. Copyright Office will not register a claim in clothing or clothing designs." Compendium III § 924.3(A). Varsity is not "using" and could not "use" its registered copyrights in two-dimensional designs "as copyright in clothing itself."

The "three cases" that, according to Star, "best explain" the district court's holding, Star Brief at 31, do nothing of the kind; they are in fact inapposite. *Jovani Fashion, Ltd. v. Cinderella Divine, Inc.*, 808 F.Supp.2d 542, 551 (S.D.N.Y. 2014), expressly concerned the design *of* a dress: Jovani "conceded that it is not claiming a copyright in the fabric designs of its dress; rather, it is claiming a copyright in the way it has manipulated various elements that it uses with the fabric." Jovani's dress design from the district court record appears below:



Jovani, Style 154416 (on Jovani website)

RE#172-5, PageID 2383.  Varsity does not now and has never claimed a copyright in such a "dress design."  *See J&M*, 2009 WL 3401182 at *2; DE# 144, PageID 1876-77, Varsity's Reply in Support of Objections at 1-2 ("As Varsity has consistently stated, Varsity is not claiming copyright protection over the uniforms but only the two-dimensional artwork appearing on the surface of uniforms or other garments.").

The "elements" of its "dress design" in which Jovani claimed a copyright[4] included "the ornamental design and arrangement on the face of the fabric of the depicted dress, including but not limited to the selection and arrangement of sequins and beads and their respective patterns on the bust portion, as well as the wire-edged tulles added to the lower portion of the depicted dress," along with "the size of the sequins, a ruched-satin waistband, and the remainder of the multi-layered tulle portion containing the wire edging, as well as 'the compilation, selection, coordination, and arrangement' of all elements." *Jovani*, 808 F.Supp.2d at 546.

Jovani, however, abandoned any claim in "the ornamental design and arrangement on the face of the fabric," having "conceded that the individual elements of the dress (such as the pattern of sequins) were not copyrightable in isolation," and having "acknowledged that there is *no discernible pattern* of sequins and none is apparent from the photo of the dress." *Id*. at 551 (emphasis added). In stark contrast to Jovani's admission that there is "no discernible pattern" on the surface of its garment, and Jovani's claim of a copyright in its "selection, coordination, and arrangement" of all of the elements of its entire three-

---

[4] Unlike Varsity, which filed individual applications to register its copyrights in individual two-dimensional designs – so that the Office examined each design individually for separability – Jovani "filed copyright registration applications on and received copyright registrations for ten catalogs." *Id*. at 545.

dimensional garment, *id.*, Varsity's registered copyrights expressly protect – and are expressly limited to – the original two-dimensional graphic designs appearing on the surface of garments.

The plaintiff in *Galiano* similarly claimed a copyright not in a two-dimensional graphic design appearing on the surface of a garment, but in such three-dimensional features as collars, flanges, snap plackets, and pleats, among other things. *Galiano v. Harrah's Operating Co.*, Inc. 416 F.3d 411, 413 n.3 (5th Cir. 2005).[5]   Star simply passes over *Galiano*'s adoption of Nimmer's "breakdown" of "the scope of copyright protection in design works … into two categories:  (1) fabric design and (2) dress design."  *Id.* at 419 (citing Melville Nimmer & David Nimmer, *Nimmer on Copyright* § 2.08[B][3]).  "Fabric design," defined by Nimmer to "include patterns or artistic features imprinted onto a fabric or that appear repeatedly throughout the dress fabric," is not limited to designs printed on bolts of cloth:  "Design of sweaters is usually classified as 'fabric design' and is entitled to copyright protection."  *Id.* at 419-20 and n.18 (citing *Segrets, Inc. v. Gillman Knitwear Co.*, 207 F.3d 56, 60 (1st Cir. 2000), for the proposition "that sweater embroidery [is] entitled to copyright protection"; and

---

[5] Like *Jovani*, the *Galiano* plaintiff obtained a single copyright registration for a "collection of sketches" of apparel, rather than applying for individual registrations for individual designs on garments, as Varsity did.  416 F.3d at 413.

*Knitwaves, Inc. v. Lollytogs Ltd.*, 71 F.3d 996, 1002 (2d Cir. 1995), for its "holding that fabric design, such as the *artwork on* plaintiff's sweaters, is copyrightable" (emphasis added)).

Varsity's two-dimensional designs *on* garments fall squarely on the "fabric design" side of Nimmer's (and *Knitwaves'*) breakdown, and so are "entitled to copyright protection" under *Galiano*. And because *Galiano*'s "likelihood of marketability" separability test is expressly "*for garment design only*," *id*. at 420 (emphasis in original), by its own terms it does not apply to Varsity's "fabric designs." In any case, no circuit has adopted *Galiano*'s "likelihood of marketability" test, which instead has been widely criticized. *See*, *e.g.*, Barton Keyes, *Alive and Well: The (Still) Ongoing Debate Surrounding Conceptual Separability in American Copyright Law*, 69 Ohio St. L.J. 109, 136 (2008); William F. Patry, *Patry on Copyright* § 3:143; *Nimmer on Copyright* § 2.08[B][3]; Varsity Brief at 42-43.[6]

*Eliya, Inc. v. Kohl's Department Stores*, 82 U.S.P.Q.2d 1088 (S.D.N.Y. 2006), likewise does not support Star's arguments. In Eliya the plaintiff brought

---

[6] It is not apparent that the district court properly applied the inapplicable *Galiano* test. The *Galiano* plaintiff "flunked" the test because it "ma[de] no showing that its designs are marketable independently of their utilitarian function as casino uniforms." *Id*. at 422. Varsity made a substantial showing to that effect. Varsity Brief at 62-63.

multiple federal and state law trade dress, trademark and unfair competition claims based on defendant's manufacture and sale of a line of shoes; only in its amended complaint did Eliya assert common law and federal copyright claims. Eliya's copyright registration was for its unpublished "etching" of a shoe (shown below) – not, as in the case of Varsity's registrations, for two-dimensional graphic designs appearing on the surface of useful articles depicted in drawings or photographs.



EXHIBIT A
Page 3 of 3

RE#34-6, PageID 213, 224-25, Star's Motion to Dismiss, Exhibit 4. The court found that "the fact that Eliya copyrighted a two-dimensional etching while Kohl's created a three-dimensional shoe does not necessarily doom Eliya's infringement claim. A two-dimensional design can be infringed if it is reproduced as part of a

21

three-dimensional object, such as an item of apparel." *Eliya*, 82 U.S.P.Q at 1097. The court found, however, that the "design elements" that Eliya alleged ("stitched-patterns of like size on the top front … elongated stitched-patterns of like size on the sides … a strap with visible stitching, curved-shaped stitching on the front … a border … a spotted design of circles all through the border … and a spotted design of circles all through the sole") were neither physically nor conceptually separable "from an actual pair of shoes" and were "not sufficiently independent of a shoe's functional purpose."[7] *Id.* at 1097-99.

Notably, the functional purposes of a shoe enumerated by the court are all functional in the ordinary sense – to "keep the shoe attached to the wearer's feet, hold the material of the shoe together, cushion the wearer's feet, and provide traction on various surfaces," *id.* at 1099, and do not include evocative, informational or aesthetic functions.

---

[7] Star quotes the district court's opinion on Varsity's Motion to Preclude Experts that "[Varsity] here do[es] not allege that [Star] 'reproduced the [two-dimensional picture of cheerleading uniforms] on the surface of an infringing line of [uniforms].'" Star Br. at 17 (quoting RE#148, PageID 1946-8, Expert Order at 12-14). This demonstrates part of the confusion engendered by Star that the particular words used in, and the materials submitted with, an application for copyright registration determine the scope of copyright protection for a work. Varsity alleges that Star infringes its designs by displaying them on the surface of its uniforms as acknowledged by then District Judge Donald's ruling on Star's Motion to Dismiss. *See* Varsity Br. at 42 n.4.

Each of Star's trio of *Jovani*, *Galiano* and *Eliya* is thus readily distinguishable. And Star is dead wrong that *Galiano* and *Jovani* are the "cases most similar to the present case." Star Brief at 50. That title belongs to *Knitwaves, Inc. v. Lollytogs Ltd.*, 71 F.3d 996 (2d Cir. 1995), the facts of which are essentially indistinguishable from those of the present case, and the reasoning of which is readily applicable. In *Knitwaves*, the Second Circuit, while noting that "clothes are not copyrightable" because garments are useful articles, found that "fabric designs, such as the *artwork on Knitwaves' sweaters*, are considered 'writings' for purposes of copyright law and are accordingly protectible." *Id*. at 1000 (emphasis added). Unlike the "dress designs" in *Jovani* and *Galiano*, the artwork on Knitwaves' sweaters (shown below) is closely comparable to the designs on Varsity's garments.




EX. 1: KNITWAVES' LEAF SWEATER          EX. 3: KNITWAVES' SQUIRREL SWEATER

*Id.* at 1014-17.

In contrast to its analysis in *Kieselstein-Cord*, *Carol Barnhart*, and *Brandir*, each of which dealt with the three-dimensional design *of* useful articles, the Second Circuit did not need to apply any "separability test" in *Knitwaves*, precisely because the designs at issue were two-dimensional applied art. In holding that such designs are protectable, the Second Circuit simply applied *sub silentio* Congress's prescription that "[a] two-dimensional painting, drawing, or graphic

work is still capable of being identified as such when … printed on or applied to utilitarian articles." House Report 55; *see* Varsity Brief at 20-21.[8]

Numerous cases tacitly affirm that "[t]wo dimensional works applied to useful articles [do] not … pose any difficulties since they are not the design of the useful article, but rather are something extrinsic to that article." *Patry on Copyright* § 3:135, p.392. *See, e.g., Olem Shoe*, 2015 WL 136552, at *6 (holding that the "copyrights for the Ditsy Dots, Zebra Supreme, and Rose Zebra Supreme designs are valid" without resort to *any* separability test, notwithstanding the designs' placement on the surface of boots) (shown below):

---

[8] The Second Circuit did not, of course, focus on the Platonic essence of Knitwaves' sweaters, or their expressive function. The court noted that the sweaters "incorporated design elements *intended to express a 'fall' motif*, such as leaves, acorns, squirrels, and the like, for introduction for the fall 1990 season." 71 F.3d at 1000 (emphasis added). Had the Second Circuit applied the reasoning of the district court here, it would have found that the utilitarian function of Knitwaves' sweaters was to clothe the body in a way that expresses a "fall" motif, and would then have found the artwork on the sweaters to be inseparable from that function.



OLEM SHOE EXHIBIT

OLEM – ZEBRA

OLEM SHOE EXHIBIT

OLEM SHOE – DOTS

;

*Pollick v. Kimberly-Clark Corp.*, 2012 WL 28143, at \*1, \*4 (E.D. Mich. Jan. 5, 2012) (finding plaintiff owned valid "copyright to his particularized expression of a diaper resembling jeans," thereby assuming the separability of the designs (shown below) from the useful articles – diapers – to which they were applied):

**Plaintiff's "Diaper Jeans" (Front)**      **Plaintiff's "Diaper Jeans" (Back)**

 

Star's reliance on the venerable *Jack Adelman, Inc. v. Sonners & Gordon, Inc.*, 112 F. Supp. 187 (S.D.N.Y. 1934), and *Russell v. Trimfit, Inc.*, 428 F. Supp. 91 (E.D. Pa. 1977), 1909 Act cases not cited by the district court, is likewise misplaced. *Jack Adelman* and *Russell* were

> district court opinions from other circuits … in which the court's decision rested upon, to great extent, a specific problem: namely, that giving copyright protection to clothing, which has a utilitarian function, would allow for the protection of patent-like features without having to fulfill the rigorous standards for obtaining a design patent.

*Winfield Collection, Ltd. v. Gemmy Indus., Corp.*, 147 Fed. Appx. 547, 551 (6th Cir. 2005) (noting concerns over protection of utilitarian function were misplaced, insofar as "[t]he decorative witches at issue [were] purely aesthetic…."). Such concerns are equally misplaced here: Varsity's copyrights in two-dimensional graphic designs are limited by the statute to the "aesthetic" aspects of those designs

that are physically or conceptually separable from the clothing or other useful articles on which the designs appear. As Congress made clear, under the 1976 Act "copyright protection … extend[s] only to" such separable aesthetic aspects, and does "not cover the over-all configuration of the utilitarian article as such." House Report 55; *see Express, LLC v. Fetish Group, Inc.*, 424 F. Supp. 2d 1211, 1220 (C.D. Cal. 2006) (noting that Copyright Office Examiner "removed 'garment with'" from registration "to make clear that the tunic itself (a useful article that is not subject to copyright protection) was not claimed under the copyright.").

## IV. The District Court Did Not Apply Any Of "The Multiple Separability Tests" – None Of Which Recognize "Aesthetic Function" Or "Identity Function"

The district court's *sui generis* "cheerleading-uniform-ness" test is conspicuously absent from Star's Brief. Rather than embrace the opinion the district court actually wrote, Star rewrites the opinion and claims the court applied "each of the multiple separability tests" in turn, and "concluded the over-all configuration of the elements of Varsity's cheerleading uniform designs is not conceptually or physically separable from the uniforms themselves under" each of them, "including the Seventh Circuit's 'process-oriented' test." Star Brief at 21, 31 n.8.

The district court undertook no such analysis. Star's contention that "Judge Cleland applied *Pivot Point*'s test," Star Brief at 53 n.13, is exactly wrong. In fact, the district court found as undisputed matters of fact that

- "At the time a design is created, it is unknown whether it will actually be implemented on a cheerleading uniform";

- "Varsity's designers are not given instructions, limitations, or guidelines from Varsity's production department"; and

- "If a finished garment does not look like the design it came from, the production department is instructed to try again….In other words, the designers are not instructed to adapt their designs to the realities of production."

RE#199, PageID 4297, Summary Judgment Order at 3. Had the district court actually "applied *Pivot Point*," it would have found, based on those undisputed facts, that Varsity's two-dimensional graphic designs are "the product of a creative process unfettered by functional concerns," and "therefore meet[] the requirements for conceptual separability and [are] subject to copyright protection." *Pivot Point Int'l, Inc. v. Charlene Prods.*, 372 F.3d 913, 932 (7th Cir. 2004); *see* Varsity Brief at 53-59.

The district court found instead that this acknowledged "lack of functional influence" on Varsity's design process, which was dispositive under *Pivot Point*, "does not meaningfully engage with the issue in this case. That is, can a cheerleading uniform be conceived without any ornamentation or design, yet retain its utilitarian function as a cheerleading uniform." RE# 199, PageID 4308, Summary Judgment Order at 14. It was only by erroneously defining "utilitarian function" as "cloth[ing] the body in a way that evokes the concept of cheerleading" – a notion with no basis in *Pivot Point* or any of the "multiple separability tests" – that the district court reached its result.

Moreover, it is difficult to reconcile the district court's own concept of "cheerleading-uniform-ness" with the fact that numerous different designs have been incorporated onto the surface of the same silhouette uniform, i.e. the same outer shell. Varsity Brief at 55-56. If a specific design is omitted and an entirely different design is used in its place on the cheerleading uniform, the uniform's surface simply displays a different design but it has not lost its "cheerleading-uniform-ness."

**V.     Expert Testimony Is Not Relevant Or Helpful In Determining That Varsity's Two-Dimensional Graphic Works Can Still Be Identified As Such When Applied To Useful Articles**

Copyright protects original "pictorial, graphic, or sculptural features that can be identified separately from, and are capable of existing independently of, the utilitarian aspects of [a useful] article."   17 U.S.C. § 101.   And "[a] two-dimensional painting, drawing, or graphic work is still capable of being identified as such when it is printed on or applied to utilitarian articles."  House Report 55. Expert testimony is incapable of either confirming or calling into question the language of the Copyright Act, or the way Congress understood and intended that the Act would operate with respect to two-dimensional graphic works applied to useful articles.   That, fundamentally, is why Star cannot show that "expert testimony is relevant to the task at hand and will serve to aid the trier of fact." *United States v. Smithers*, 212 F.3d 306, 313 (6th Cir. 2000).

Instead of discussing the cases that squarely address the issue of expert testimony as it relates to separability under copyright law, Star relies solely upon the Court's opinion in *Kohus v. Mariol,* 328 F.3d 848 (6th Cir. 2003), and attempts to make much of Varsity's non-reliance on it.[9]   The focus of *Kohus* was on

---

[9] In its recitation of the procedural history, Star states that "Varsity's appeal of the denial of its motion to preclude expert testimony was overruled by the district court which found that Varsity's designs were in the category of materials – *garment design* – on which expert testimony was appropriate."  Star Brief at 15

substantial similarity in the context of expert testimony. *Kohus*, 328 F.3d at 854.

Neither of Star's putative experts attempted to opine on the issue of substantial similarity. Substantial similarity is clearly a question of fact, *Kohus*, 328 F.3d at 853 ("…substantial similarity is customarily an extremely close *question of fact*…"), upon which expert testimony might be appropriate. Star does not offer any reason why the body of case law cited by Varsity which directly addresses the issue should be disregarded. Varsity Brief at 64-65. Star also offers no rebuttal to Varsity's argument that the district court's lack of reliance on any expert testimony only serves to confirm the irrelevancy of such expert testimony.

## VI. Varsity's State Law Claims Were Improperly Dismissed

Star conflates pendent jurisdiction with diversity jurisdiction, relying upon inapplicable or distinguishable cases involving pendent jurisdiction. *See Sem-Torq, Inc. v. K Mart Corp.*, 936 F.2d 851, 855-56 (6th Cir. 1991) (addressing *pendent* jurisdiction). Here, Varsity alleged federal question jurisdiction *and* diversity jurisdiction. RE#1, Compl. ¶ 6. Thus, this is not a question of pendent

---

(emphasis in original). Star cites to a portion of the district court's order which includes specific language discussing a "category of materials on which expert testimony is appropriate." RE# 148, PageID 1943. The "category of materials" that Judge Cleland referenced was not "garment design," but rather was "sufficiently specialized" materials on which expert testimony is sometimes proper. *Id.*, PageID 1942. The district court never held or found that Varsity's designs were "garment designs."

jurisdiction. It is undisputed that the parties are diverse, that Varsity pled the citizenship of the parties in its Complaint, and that no discovery taken throughout the case revealed any lack of diversity.[10] Although Varsity did not explicitly state the amount in controversy, Varsity's allegations clearly involve a sum well in excess of $75,000. *Hayes v. Equitable Energy Res. Co.*, 266 F.3d 560, 573 (6th Cir. 2001) ("Failure to adequately plead the amount in controversy requirement may be cured by the presence of 'clear allegations ... that the case involved a sum well in excess of the $75,000 minimum.'"). Varsity pled actual and punitive damages, contractual attorney fees (provided for in the former employees' contracts) for Star's inducement of Varsity's former employees to breach their contractual obligations with Varsity, and sought injunctive relief, all of which count towards the amount in controversy. RE#1, Compl. ¶¶ 65-79 85-87; *Cleveland Housing Renewal Project v. Deutsche Bank Trust Co.*, 621 F.3d 554, 560 (6th Cir. 2010); *Hayes*, 266 F.3d at 572 (noting "punitive damages must be considered ... unless it is apparent to a legal certainty that such cannot be

---

[10] Star does not challenge the diversity of the parties, but states that its citizenship is based on the citizenship of its members because it is a limited liability company. Star Brief at 71 (citing *Homfeld II, LLC v. Comair Holdings, Inc.*, 53 Fed. App'x 731, 732-33 (6th Cir. 2003)). Yet, the *Homfeld* court had no issue resolving the matter, noting that "[t]his defect easily may be cured under the authority of 28 U.S.C. § 1653" and permitting an amendment at the Appellate Court. *Id.*

recovered"); *Williamson v. Aetna Life Ins. Co.*, 481 F.3d 369, 376 (6th Cir. 2007) ("As a general rule, attorneys' fees are excludable in determining the amount in controversy for purposes of diversity, unless the fees are provided for by contract…."). Taken together, Varsity's allegations well exceed the minimum of $75,000. Star does not attempt to address any of these allegations.

## CONCLUSION

For the reasons given above, and in Varsity's Opening Brief, the district court's grant of summary judgment to Star, and denial of Varsity's summary judgment motion, should be reversed.

Respectfully submitted,

s/Adam S. Baldridge
Grady Garrison
Bradley Trammell
Adam Baldridge
Nicholas Vescovo
BAKER, DONELSON, BEARMAN,
CALDWELL & BERKOWITZ, P.C.
165 Madison Avenue, Suite 2000
Memphis, Tennessee 38103

Thomas Kjellberg
COWAN, LIEBOWITZ & LATMAN, P.C.
1133 Avenue of the Americas
New York, New York 10036

# CERTIFICATE OF COMPLIANCE

Pursuant to Fed. R. App. P. 32(a)(7)(C), I hereby certify that the foregoing reply brief complies with the typeface requirements provided in Fed. R. App. P. 32(a)(5) and the type-volume limitation provided in Fed. R. App. P. 32(a)(7)(B). I also certify that the foregoing reply brief contains 6,966 words of Times New Roman (14 point) proportional type, excluding the portions hereof exempted from the word count. The word processing software used to prepare this brief was Microsoft Office Word 2010.

s/Adam S. Baldridge

# CERTIFICATE OF SERVICE

The undersigned hereby certifies that on this 26th day of January, 2015, a copy of the foregoing was electronically filed and served on the parties listed below via electronic mail:

Michael Francis Rafferty
Kannon Cooper Conway
HARRIS SHELTON HANOVER WALSH
One Commerce Square
Suite 2700
Memphis, TN 38103

Steven Michael Crosby
Kalpana Nagampalli
FELDMAN LAW GROUP
220 E. 42nd Street
Suite 3304
New York, NY 10017

*Counsel for Appellee*
*Star Athletica, L.L.C.*

Theodore C. Anderson, III
Ashley E. Tremain
KILGORE & KILGORE
3109 Carlisle
Dallas, TX 75204

s/Adam S. Baldridge