[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 14-13440
_____

D.C. Docket No. 4:12-cv-00237-HLM

HOME LEGEND, LLC,

Plaintiff-Appellee–
Counter Defendant,

versus

MANNINGTON MILLS, INC.,

Defendant-Appellant–
Counter Claimant,

POWER DEKOR GROUP CO. LTD.,

Consol. Defendant-Appellee.

_____

Appeal from the United States District Court
for the Northern District of Georgia
_____

(April 29, 2015)

Before ED CARNES, Chief Judge, JILL PRYOR and HIGGINBOTHAM,[*] Circuit Judges.

ED CARNES, Chief Judge:

I.

Mannington Mills, Inc. appeals the grant of summary judgment in favor of Home Legend, LLC, that Mannington's registered copyright in its "Glazed Maple" design is invalid.

A.

Because this is Mannington's appeal of the grant of summary judgment against it, we view all evidence and draw all reasonable inferences in the light most favorable to Mannington, the non-moving party.  See Hamilton v. Southland Christian Sch., Inc., 680 F.3d 1316, 1318 (11th Cir. 2012).  In that light, the facts are these.

Mannington and Home Legend both sell (among other products) laminate wood flooring.  Laminate flooring consists of three functional layers, starting from the bottom:  a balancing or stabilizing layer, often made of water-resistant resin; a core board of wood fiber mixed with resin and pressed at high temperatures to form a strong and solid board; and a transparent wear-resistant overlay.  Because the resulting flooring is not much to look at, laminate flooring manufacturers add a

---

[*] Honorable Patrick E. Higginbotham, United States Circuit Judge for the Fifth Circuit, sitting by designation.

2

decorative layer called "décor paper" between the core board and the transparent overlay. This décor paper features a piece of two-dimensional artwork and could depict any design capable of two-dimensional representation, though in practice the décor paper usually appears to be a typical flooring material like wood or stone that looks better (and costs more) than unadorned laminate flooring.

The copyright at issue in this case covers Mannington's décor paper design called "Glazed Maple," which is a huge digital photograph depicting fifteen stained and apparently time-worn maple planks. That appearance, though, is only an appearance. In 2008, three Mannington employees created the Glazed Maple design not from aged planks but from raw wood. After initial research and brainstorming about home decor trends, they decided to create an aged and rustic look. The team did not seek out an actual aged wood floor from which to create the design but instead "envision[ed what] a floor could look like after" twenty or thirty years, including the effects "age and wear and patina" might have on the planks.

The Mannington team began with between fifty and seventy-five raw, smooth-milled white maple planks. With a selection of hand tools, they added gouges, dents, nail holes, ripples, "chatter marks," and other surface imperfections to the wood in an effort to make it look like floorboards that had been walked across for many years. Then, using rags, sponges, and dry brushes, they applied

3

layers of stain to the planks, more darkly and heavily at the edges of the boards to create the appearance of increased wear in the boards' centers.  And as the team intended, the stain pooled in some of the textured areas they had created, making darker spots on the wood.  They selected and applied more than one stain color. The team chose to accentuate some of the naturally occurring marks and to de-emphasize others, and they used more stain and paint to add effects like shadowing, simulated mineral streaks, and dark spots that were not present on the raw wood.

Once they were satisfied with these prototype planks, the Mannington team experimented with various selections and arrangements of the boards to choose combinations of planks that the team thought would look good in a home.  They then chose about thirty of the planks to photograph with a high-resolution digital scanner.  One of the team members then made more changes to the digital images, deleting areas that were "a little heavy," retouching other areas, and altering the contrast where boards were "too dark or too light" in comparison with the group as a whole.  The team printed out the resulting images, selected fifteen of them, and made a composite of those fifteen plank images into a single 120-inch-by-100-inch digital image — the Glazed Maple design.

4

B.

The United States Register of Copyrights registered Mannington's copyright in its Glazed Maple design in November 2010.  The copyright covers the two-dimensional Glazed Maple design.  Although Mannington sells flooring bearing its Glazed Maple design under the name "Time Crafted Maple," it is the image, not the flooring product, that is the subject of the copyright and thus at issue in this case.

In September 2012, Mannington discovered that its competitor Home Legend was selling laminate flooring products with designs that it alleges were "virtually identical in every respect" to the Glazed Maple design.  Mannington requested that Home Legend stop selling the allegedly infringing products.  On October 8, 2012, Home Legend responded by filing suit in the district court, seeking a declaratory judgment that Mannington's copyright was invalid.  Mannington counterclaimed for copyright infringement and moved for a preliminary injunction, a motion that the district court denied.[1]

At the close of discovery, Home Legend moved for summary judgment, arguing that Mannington's registered Glazed Maple copyright did not cover copyright-eligible subject matter.  The district court granted summary judgment to Home Legend on three alternative grounds.  One ground was that Mannington's

---

[1] Mannington filed an interlocutory appeal of the order denying its preliminary-injunction motion, but we dismissed that appeal without prejudice on the joint motion of the parties.

Glazed Maple design lacked the requisite originality to be an "original work[] of authorship" eligible for copyright protection under 17 U.S.C. § 102(a).  Another was that the Glazed Maple design was "simply not separable from the functional element of the flooring," and that "the 2-D artwork [of the Glazed Maple design] would not be marketable if it were separated from the functional elements of the flooring."  On that basis, the district court concluded that the Glazed Maple copyright was a "functional component of the flooring itself" and therefore not eligible for copyright.  See 17 U.S.C. § 101 ("[T]he design of a useful article, as defined in this section, shall be considered a pictorial, graphic, or sculptural work only if, and only to the extent that, such design incorporates pictorial, graphic, or sculptural features that can be identified separately from, and are capable of existing independently of, the utilitarian aspects of the article.").  The district court's remaining alternative ground for summary judgment was that Mannington's copyright was directed to an "idea or process," namely the process of recreating the appearance of rustic and aged maple planks.  See 17 U.S.C. § 102(b) ("In no case does copyright protection for an original work of authorship extend to any idea, procedure, [or] process . . . .").  This is Mannington's appeal.

## II.

We review de novo a grant of summary judgment.  Hamilton, 680 F.3d at 1318.  And as we mentioned above, we view all evidence and draw all inferences

in the light most favorable to the non-moving party.  Id.  Summary judgment is appropriate only if "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a); Hamilton, 68 F.3d at 1318.

Mannington challenges each of the three alternative grounds that the district court gave as the basis for its decision.  First, Mannington contends that the Glazed Maple design is not a slavish copy of a work of nature but instead is an artwork Mannington created that is sufficiently original to merit copyright protection. Second, it argues that the artwork is both physically and conceptually separable from the laminate flooring to which it has been applied, and that, as a result, the district court's ruling that the copyright covered a "useful article" was error.  And, third, Mannington contends that the copyright covers the two-dimensional Glazed Maple design, not Mannington's procedure or process for creating it, and thus the district court's ruling that the copyright was directed to an uncopyrightable idea or process was error.

## A.

Mannington contends that the district court erred when it found that the Glazed Maple design was not original enough to be copyright eligible.  To qualify for copyright protection, a work must be original.  17 U.S.C. § 102(a) ("Copyright protection subsists . . . in original works of authorship fixed in any tangible

7

medium of expression.") (emphasis added); <u>Feist Publ'ns v. Rural Tel. Serv. Co., Inc.</u>, 499 U.S. 340, 351, 111 S. Ct. 1282, 1290 (1991) ("As we have explained, originality is a constitutionally mandated prerequisite for copyright protection."). Whether a work is sufficiently original to merit copyright protection is a question of fact.  <u>See</u> <u>BUC Int'l Corp. v. Int'l Yacht Council Ltd.</u>, 489 F.3d 1129, 1151 (11th Cir. 2007) (noting that "[t]he jury's determination that BUC's copyrights were valid was necessarily based on several factual findings, including that BUC's compilation contained original elements of creative authorship.").

Originality is not novelty.  <u>Feist</u>, 499 U.S. at 358, 111 S. Ct. at 1294. Instead, copyrightable originality requires only "independent creation" by the author "plus a modicum of creativity." <u>Id.</u> at 346, 111 S. Ct. at 1288.  In other words, the originality requirement is a low bar.  <u>Original Appalachian Artworks, Inc. v. Toy Loft, Inc.</u>, 684 F.2d 821, 824 (11th Cir. 1982); <u>see also</u> <u>Feist</u>, 499 U.S. at 358, 111 S. Ct. at 1294 (describing the degree of creativity required as "minimal").  The requirement is that the work possess "some creative spark, no matter how crude, humble or obvious." <u>Feist</u>, 499 U.S. at 345, 111 S. Ct. at 1287 (quotation marks omitted).  As the Supreme Court has noted, "the requisite level of creativity is extremely low; even a slight amount will suffice." <u>Feist</u>, 499 U.S. at 345, 111 S. Ct. at 1287; <u>see also</u> <u>Montgomery v. Noga</u>, 168 F.3d 1282, 1290 (11th Cir. 1999) (same).  For example, we have noted that a photograph of another

8

artwork, so long as it involved minimal creativity in the "selection of lighting, shading, timing, angle, and film" is sufficiently original for copyright protection. Leigh v. Warner Bros., Inc., 212 F.3d 1210, 1215 (11th Cir. 2000).

1.

The district court determined that Mannington's Glazed Maple design was merely "a design depicting or copying elements found in nature — the look of a rustic, aged wooden floor."  Mannington's design team began with raw wooden planks, which had naturally occurring wood grain.  Because the shape of that wood grain is a product of nature, not of Mannington, it would not be eligible for copyright protection.  See Feist, 499 U.S. at 346, 111 S. Ct. at 1288 (copyright is "limited to original intellectual conceptions of the author") (quotation marks omitted); see also Meshwerks, Inc. v. Toyota Motor Sales U.S.A., Inc., 528 F.3d 1258, 1265 (10th Cir. 2008) ("[W]orks are not copyrightable to the extent they do not involve any expression apart from the raw facts in the world.").  Nor is the rectangular shape of the plank anything but what the plank's function dictates — and thus that shape is also not copyrightable.  See 17 U.S.C. § 101 ("[T]he design of a useful article . . . shall be considered a pictorial, graphic, or sculptural work only if, and only to the extent that, such design incorporates . . . features that can be identified separately from, and are capable of existing independently of, the utilitarian aspects of the article.").

And while photographs of natural objects may be original, it is difficult to imagine that the "selection of lighting, shading, timing, angle, and film" in a scan of a raw wood plank — the goal being to duplicate as exactly as possible the appearance of that plank in a digital medium so it could be faithfully reproduced on laminate flooring — would be sufficiently original to support a copyright in such an individual image.  See Leigh, 212 F.3d at 1215 (describing those selections as the "elements of artistic craft" protected by a photographer's copyright); Meshwerks, 528 F.3d at 1265 ("[T]he facts in this case unambiguously show that Meshwerks did not make any decisions regarding lighting, shading, the background in front of which a vehicle would be posed, the angle at which to pose it, or the like — in short, its models reflect none of the decisions that can make depictions of things or facts in the world, whether Oscar Wilde or a Toyota Camry, new expressions subject to copyright protection.").

The Mannington designers did not, however, scan raw wooden planks. Instead the evidence, viewed in the light most favorable to Mannington, shows that they imagined what a deeply stained maple floor might look like after years of wear, and then they used stain, paint, hand tools, and digital photo retouching to express their concept first on wood and then as digital images.  Ideas alone are not protectable.  See 17 U.S.C. § 102(b) ("In no case does copyright protection . . . extend to any idea . . . .").  But if the expression of an idea is sufficiently creative,

10

that expression is protectable.  And when the level of creativity in an expression is at issue, testimony about the ideas that informed the expression is evidence of that creativity.  Mannington's idea of a distressed maple floor is not protectable, but Mannington's testimony about that idea shows that the idea's expression in the Glazed Maple design was the product of creativity, not a slavish copy of nature. Perhaps that expression is not highly creative, but it does not need to be.  The decisions Mannington made in the location and character of the marks it added to the boards render its contributions creative enough to hurdle the low bar of copyrightable originality.  See Feist, 499 U.S. at 345, 111 S. Ct. at 1287.

This case is not like the Tenth Circuit's decision in Meshwerks Inc. v. Toyota Motor Sales U.S.A., Inc., 528 F.3d 1258 (10th Cir. 2008).  That court held that Meshwerks' computer wireframe models of Toyota vehicles lacked protectable originality over the original Toyota vehicles.  Id. at 1266–67.  The key to that holding was that Meshwerks merely copied Toyota's work, adding nothing original to the "unadorned Toyota vehicles — the car as car."  Id. at 1265; see also id. at 1264 ("[W]e think Meshwerks' models are not so much independent creations as (very good) copies of Toyota's vehicles.").  To determine whether Meshwerks' models were original, the court asked whether Meshwerks had "an earlier work in mind" when it created its models and the court answered that Meshwerks did:  it had Toyota's earlier work in mind.  Id. at 1268 (quotation

11

marks omitted).  Here, by contrast, the evidence shows that Mannington did not have another work in mind.  At most, it had in mind a genre:  rustic flooring.  It created a digital artwork in that genre.  The creative work was all Mannington's.[2]

Home Legend, for its part, analogizes Mannington's creative efforts to the work in the "sweat of the brow" cases.  The decisions in those cases granted broad copyrights over the facts themselves in factual compilations as "a reward for the hard work that went into compiling" them.  Feist, 499 U.S. at 352, 111 S. Ct. at 1291.  But those decisions were abrogated by the Copyright Act of 1976, which made clear that originality, not labor, was the prerequisite of copyright.  See 17 U.S.C. § 102(a); Feist, 499 U.S. at 352–55, 111 S. Ct. at 1291–93.  In Home Legend's analogy, Mannington's work creating the Glazed Maple design was nothing more than mere labor, "sweat of the brow" that is not copyrightable.  But the analogy does not fit.

The effort that creative labor requires does not render the labor uncreative.  Drafting and editing a novel usually requires months or years of toil over a

---

[2] The district court compared the facts of this case with those in Proline Concrete Tools, Inc. v. Dennis, No. 07-cv-2310, 2013 U.S. Dist. Lexis 188384 (S.D. Cal. Mar. 28, 2013) (unpublished).  The Proline court ruled that the Copyright Office had not acted arbitrarily or capriciously when it denied copyright protection to Proline for concrete stamp casts "molded from real stone complete with cut marks and defects."  Id. at *17.  That court agreed with the Copyright Office's determination that the casts were mere "slavish copies" of "existing stones or rocks."  Id. at *17–18.  But this is not Proline.  Although rocks and stones are "elements found in nature," see id., so far as the record shows, nature in its boundless invention has yet to produce a single "rustic, aged wooden floor" matching the Glazed Maple design.  Unlike Proline, Mannington did not simply copy a naturally occurring thing.  It transformed the elements found in nature and those dictated by utility — that is, the raw maple planks — into the expression of its rustic floor idea.

keyboard.  A masterpiece painting may require many preliminary studies and countless hours of exacting brushwork.  Carving or assembling a sculpture may involve backbreaking physical exertion.  All of those are examples of creative labor that is creative.  So is Mannington's selection and preparation of raw maple planks to express the rustic-floor idea in the Glazed Maple design.  Cf. Feist, 499 U.S. at 361, 111 S. Ct. at 1296 (describing uncopyrightable facts as those that exist in the world without the intervention of the purported copyright holder).  It involved more than mere sweat-of-the-brow labor.  The design did not lack copyrightable originality.

2.

And even if copyright did not protect the altered individual plank images, the Glazed Maple design is more than that.  It is a compilation expressing original selection and creative coordination of elements.  A compilation even of uncopyrightable elements is eligible for copyright protection, 17 U.S.C. § 103, so long as the compiler independently selects or arranges the elements and "display[s] some minimal level of creativity" in doing so.  Feist, 499 U.S. at 358, 111 S. Ct. at 1294; see also id. at 359, 111 S. Ct. at 1244("[T]he vast majority of compilations will pass this test . . . . [except those in the] narrow category of works in which the creative spark is utterly lacking or so trivial as to be virtually nonexistent.").

13

In Feist, the Supreme Court held that a telephone directory that listed the name, town, and phone number of every subscriber in a region, and that did so in alphabetical order by name, was not entitled to copyright protection because the selection, coordination and arrangement of those preexisting facts was "not only unoriginal, [but] practically inevitable." Id. at 363, 111 S. Ct. at 1297.  Not so here.  Mannington's designers independently selected the planks used in the Glazed Maple design, and they exercised "some minimal level of creativity" in the selection or arrangement of those planks.  Instead of randomly choosing planks or indiscriminately using all of the fifty to seventy-five planks, Mannington's designers exercised their creativity in choosing thirty planks that best captured their conception of an aged and rustic maple floor.  Then, after those planks were scanned and retouched, the designers further exercised artistic judgment in selecting the fifteen of those thirty images that they believed looked best together. Mannington's selection and coordination of those images showed originality sufficient to exceed the low bar required to sustain a copyright.  See Feist, 499 U.S. at 348, 111 S. Ct. at 1289; BellSouth Adver. & Publ'g Corp. v. Donnelly Info. Publ'g, Inc., 999 F.2d 1436, 1440 (11th Cir. 1993) ("[A] compiler's selection, arrangement and coordination, if original are the only protectable elements of a factual compilation.").  For this reason too the Glazed Maple design was sufficiently original to be copyrightable.

14

B.

The district court also concluded that the Glazed Maple design was not copyrightable because it is inseparable from a "useful article" — namely the flooring to which Mannington applied the design. The court reasoned that neither the flooring nor the Glazed Maple design would be marketable without the other: "Certainly, the laminate flooring would not be marketable if its functional elements were separated from the artistic elements, and, conversely, the 2-D artwork would not be marketable if it were separated from the functional elements of the flooring." We disagree. First, the conclusion was based not on evidence but on conjecture. Second, the facts of this case, viewed in the light most favorable to Mannington, disprove the non-marketability conjecture. Mannington's evidence is that Home Legend sold flooring decorated with a virtually identical copy of Mannington's Glazed Maple design. If that is true, the design has some value; otherwise Home Legend would not have copied it. The only obstacle to Mannington demanding payment for the use of its design on other flooring is the district court's ruling that Mannington lacks protectable rights in its design.

The district court also reasoned that the Glazed Maple design had the function of hiding wear to the floor. Mannington counters that protection is the purpose of the "wear layer" of the flooring and that the decorative layer is just that: decorative. But even if placing an otherwise copyrightable two-dimensional

15

design on a product serves the secondary function of hiding wear or other imperfections in the product, that is not enough to invalidate the copyright protection for the design.  Hanging an Ansel Adams print over an unsightly water stain on a living room wall might make the print "functional" in the same way the district court found the Glazed Maple design to be, but it would have no effect on the copyright in the work itself.

The Copyright Act provides protection for pictorial and graphic works, including "two-dimensional . . . works of . . . applied art."  17 U.S.C. § 101.  It goes on to state,

> Such works shall include works of artistic craftsmanship insofar as their form but not their mechanical or utilitarian aspects are concerned; the design of a useful article, as defined in this section, shall be considered a pictorial[] [or] graphic . . . work only if, and only to the extent that, such design incorporates pictorial[] [or] graphic . . . features that <u>can be identified separately from</u>, and <u>are capable of existing independently of</u>, the utilitarian aspects of the article.

<u>Id.</u> (emphasis added).  Separability for the purpose of assessing copyright eligibility of a useful article's design means that the design is "<u>either</u> physically severable from the utilitarian article <u>or</u> conceptually severable."  <u>Norris Indus., Inc. v. Int'l Tel. & Tel. Corp.</u>, 696 F.2d 918, 923 (11th Cir. 1983) (emphasis added). The Glazed Maple design at issue here meets both tests:  it is <u>both</u> physically <u>and</u> conceptually severable from the Time Crafted Maple flooring to which Mannington applied it.  The flooring and the design are physically severable:  the

16

evidence shows that Mannington sells otherwise identical flooring that uses décor paper other than the Glazed Maple design.  The interchangeability of the paper designs in the manufacturing process necessarily implies that the design and the flooring to which Mannington applies it are physically separate objects.

The Glazed Maple design is also conceptually severable from use as a decoration on Mannington's flooring.  The design might as easily be applied to wallpaper or as the veneer of a picture frame.  One amicus even suggests that nothing (save perhaps good taste) prevents the "Glazed Maple image from being printed, framed, and hung on a wall as art."  Brief of Amicus Curiae Resilient Floor Covering Institute in Support of Appellant at 20.  This is obviously true, as it is of any two-dimensional image.  Because the design is both physically and conceptually severable from the flooring to which Mannington applied it, the district court erred when it determined the design was an uncopyrightable useful article.

## C.

Finally, the district court found that "the Copyright [in the Glazed Maple design] is more accurately directed toward a process or idea, which is not a proper subject for copyright protection."  The court's reasoning for this conclusion was that "[a]lthough the Copyright at issue is for 2-D artwork, Mannington's response brief and the majority of its evidence focus on the idea of reproducing the look of

17

rustic hardwood and natural wood grain, and on the process that Mannington used to obtain that result."

Mannington focused its evidence and arguments on its process for creating the image because Home Legend's primary challenge to the validity of Mannington's copyright was the contention that the design lacked copyrightable originality. Mannington showed copyrightable originality by presenting evidence about how it created the design by altering the natural appearance of the wood. That does not mean that Mannington tried to copyright the process through which it produced the design.[3] The copyright protects only the specific two-dimensional digital artwork design that Mannington registered, a design that it created by combining digital images of fifteen maple planks, stained to appear time worn and combined in a specific design. See 17 U.S.C. §§ 101 & 102.

## III.

Mannington's work is sufficiently original to qualify for copyright protection. That protection is unaffected by the design's use as décor paper on Mannington's laminate flooring. And Mannington's copyright in that work covers

---

[3] We also reject Home Legend's argument that Mannington's patents protecting methods for finishing wood imply that its copyright in a design depicting finished wood must also be directed toward those same methods. The use of a patented process to create an original design does not mean that the design is not copyrightable. Our intellectual property system recognizes one set of protections for inventions including processes (the patent laws) and another set of protections for art and writings (the copyright laws). The two may be related but they are distinct. See U.S. Const. art. I, § 8, cl. 8 (authorizing Congress to grant "Authors and Inventors" protection for both "Writings and Discoveries"); compare 17 U.S.C. § 102 (copyrightable subject matter), with 35 U.S.C. § 101 (inventions patentable).

the two-dimensional image the registration says it covers, not the process by which the image was created.

Mannington owns a valid copyright, even if the protection that copyright affords it is not particularly strong. Because much of the expression in Mannington's finished Glazed Maple design still reflects the uncopyrightable features of each plank — features like the shape of the natural underlying wood grain and the plank's shape, both of which are in the public domain — Mannington's copyright gives it the limited protection of a derivative work. Warren Publ'g, Inc. v. Microdos Data Corp., 115 F.3d 1509, 1515 n.16 (11th Cir. 1997) ("A creative work is entitled to the most protection, followed by a derivative work, and finally by a compilation."). The copyright protects only the original elements contributed by Mannington. See 17 U.S.C. § 103(b) ("The copyright in a . . . derivative work extends only to the material contributed by the author of such work, as distinguished from the preexisting material employed in the work . . . ."). This limited protection and the restricted opportunities for creativity inherent in the genre of faux-aged floorboards mandate a copyright that extends (as Mannington concedes) only to identical and near-identical copies of the Glazed Maple design — to copies made, for example, by photographing the design from Mannington's Time Crafted Maple flooring and making trivial color alterations. Mannington would have no copyright-infringement claim against someone who

19

used processes like Mannington's to make his own aged-maple designs, so long as those final designs were his own expressions, not copies of Mannington's work.

The district court's judgment declaring that Mannington's copyright is invalid is due to be reversed and the case remanded for further proceedings consistent with this opinion.

**REVERSED** and **REMANDED**.

**UNITED STATES COURT OF APPEALS
FOR THE ELEVENTH CIRCUIT**

ELBERT PARR TUTTLE COURT OF APPEALS BUILDING
56 Forsyth Street, N.W.
Atlanta, Georgia 30303

Douglas J. Mincher
Clerk of Court

For rules and forms visit
www.ca11.uscourts.gov

April 29, 2015

MEMORANDUM TO COUNSEL OR PARTIES

Appeal Number:  14-13440-BB
Case Style:  Home Legend, LLC v. Mannington Mills, Inc.
District Court Docket No:  4:12-cv-00237-HLM

**This Court requires all counsel to file documents electronically using the Electronic Case Files ("ECF") system, unless exempted for good cause.** Enclosed is a copy of the court's decision filed today in this appeal. Judgment has this day been entered pursuant to FRAP 36. The court's mandate will issue at a later date in accordance with FRAP 41(b).

The time for filing a petition for rehearing is governed by 11th Cir. R. 40-3, and the time for filing a petition for rehearing en banc is governed by 11th Cir. R. 35-2. Except as otherwise provided by FRAP 25(a) for inmate filings, a petition for rehearing or for rehearing en banc is timely only if received in the clerk's office within the time specified in the rules. Costs are governed by FRAP 39 and 11th Cir.R. 39-1. The timing, format, and content of a motion for attorney's fees and an objection thereto is governed by 11th Cir. R. 39-2 and 39-3.

Please note that a petition for rehearing en banc must include in the Certificate of Interested Persons a complete list of all persons and entities listed on all certificates previously filed by any party in the appeal. See 11th Cir. R. 26.1-1. In addition, a copy of the opinion sought to be reheard must be included in any petition for rehearing or petition for rehearing en banc. See 11th Cir. R. 35-5(k) and 40-1 .

Counsel appointed under the CRIMINAL JUSTICE ACT must file a CJA voucher claiming compensation for time spent on the appeal no later than 60 days after either issuance of mandate or filing with the U.S. Supreme Court of a petition for a writ of certiorari (whichever is later).

Pursuant to Fed.R.App.P. 39, costs taxed against the appellee.

The Bill of Costs form is available on the internet at www.ca11.uscourts.gov

For questions concerning the issuance of the decision of this court, please call the number referenced in the signature block below. For all other questions, please call Carol R. Lewis, BB at (404) 335-6179.

Sincerely,

DOUGLAS J. MINCHER, Clerk of Court

Reply to: Djuanna Clark
Phone #: 404-335-6161

OPIN-1A Issuance of Opinion With Costs