No. 14-5237

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

VARSITY BRANDS, INC., VARSITY SPIRIT CORPORATION, AND
VARSITY SPIRIT FASHIONS & SUPPLIES, INC.

Plaintiffs-Appellants

v.

STAR ATHLETICA, L.L.C.

Defendant-Appellee

On Appeal from the United States District Court
for the Western District of Tennessee, Western Division
Docket No. 2:10-cv-02508-RHC-cgc
The Honorable Robert H. Cleland

## STAR ATHLETICA'S PETITION FOR REHEARING AND FOR REHEARING *EN BANC*

John J. Bursch
Matthew T. Nelson
Warner Norcross & Judd LLP
900 Fifth Third Center
111 Lyon Street, N.W.
Grand Rapids, Michigan 49503-2487
Telephone: (616) 752-2000
E-mail: jbursch@wnj.com

Michael F. Rafferty
Harris Shelton Hanover Walsh, P.L.L.C.
One Commerce Square, Suite 2700
Memphis, Tennessee 38103-2555

Steven M. Crosby
The Feldman Law Group
220 East 42nd Street, Suite 3304
New York, New York 10017

Attorneys for Star Athletica, LLC

September 16, 2015

# QUESTIONS PRESENTED

1.      What is the appropriate test to determine whether an element of an intrinsically useful article is utilitarian (and thus not protected) or non-utilitarian (and thus protectable) under § 101 of the Copyright Act.

2.      What deference, if any, should courts give to the Copyright Office's unexplained decision to register a work beyond Congress' provision in § 410(c) of the Copyright Act.

3.      Whether expert testimony is required to establish the utilitarian elements of a useful article.

# TABLE OF CONTENTS

Page

TABLE OF AUTHORITIES .................................................................................. iii

STATEMENT IN SUPPORT OF PETITION FOR REHEARING ......................... 1

BACKGROUND ................................................................................................... 3

    The Copyright Act and "useful articles" ........................................................ 3

    The parties and their cheerleading-uniform designs ...................................... 4

PROCEEDINGS BELOW ..................................................................................... 6

ARGUMENT FOR REHEARING ......................................................................... 8

    I.      The panel majority's test for determining which elements of a
            useful article are protectable exacerbates a circuit conflict .................. 8

    II.    Rehearing *en banc* is appropriate because the panel decision
           does not defer to the Copyright Office's reasoned policy, while
           giving unprecedented deference to a copyright registration .............. 12

    III.   The Court should resolve the intra-circuit split regarding the
           need for expert testimony in determining functionality ..................... 15

CONCLUSION AND REQUESTED RELIEF ...................................................... 15

# TABLE OF AUTHORITIES

Page(s)

## Federal Cases

*Bonneville International Corp. v. Peters*,
  347 F.3d 485 (3d Cir. 2003) ..........................................................................14

*Brandir International, Inc. v. Cascade Pacific Lumber Co.*,
  834 F.2d 1142 (2d Cir. 1987) ...........................................................................3

*Carol Barnhart Inc. v. Economy Cover Corp.*,
  773 F.2d 411 (2d Cir. 1985) ........................................................................ 2, 14

*Eliya, Inc. v. Kohl's Department Stores*,
  2006 WL 2645196 (S.D.N.Y. Sept. 13, 2006) .......................................................12

*Galiano v. Harrah's Operating Co.*,
  416 F.3d 411 (5th Cir. 2005) ..................................................................... passim

*Hi-Tech Video Products, Inc. v. Capital Cities/ABC, Inc.*,
  58 F.3d 1093 (6th Cir. 1995) ..........................................................................13

*Inhale, Inc. v. Starbuzz Tobacco, Inc.*,
  755 F.3d 1038 (9th Cir. 2014) ..................................................................... 13, 14

*Jack Adelman, Inc. v. Sonners & Gordon*,
  112 F. Supp. 187 (S.D.N.Y. 1934) ....................................................................10

*Jovani Fashion, Ltd. v. Cinderella Divine, Inc.*,
  808 F. Supp. 2d 542 (S.D.N.Y. 2011) ..................................................................9

*Jovani Fashion, Ltd. v. Fiesta Fashions*,
  500 F. App'x 42 (2d Cir. 2012) .................................................................. passim

*Kohus v. Mariol*,
  328 F.3d 848 (6th Cir. 2003) ..........................................................................15

*Masquerade Novelty, Inc. v. Unique Industries*,
  912 F.2d 663 (3d Cir. 1990) ............................................................................4

Page(s)

*Norris Industries, Inc. v. International Telephone & Telegraph Corp.*,
   696 F.2d 918 (11th Cir. 1983) ...........................................................................14

*North Coast Industries v. Jason Maxwell, Inc.*,
   972 F.2d 1031 (9th Cir. 1992) ..............................................................................9

*Skidmore v. Swift & Co.*,
   323 U.S. 134 (1944) ...................................................................................... passim

*Southco, Inc. v. Kanebridge Corp.*,
   390 F.3d 276 (3d Cir. 2004) ................................................................................14

*Universal Furniture International, Inc. v. Collezione Europa, Inc.*,
   618 F.3d 417 (4th Cir. 2010) ................................................................................1

*Varsity Brands, Inc. v. Star Athletica, LLC*,
   No. 14-5237 (6th Cir. Aug. 19, 2015) ........................................................ passim

*Whimsicality, Inc. v. Rubie's Costume Co.*,
   891 F.2d 452 (2d Cir. 1989) ..................................................................................9

*Winfield Collection, Ltd. v. Gemmy Industries*,
   147 F. App'x 547 (6th Cir. 2005) ..........................................................................8

*WPIX, Inc. v. ivi, Inc.*,
   691 F.3d 275 (2d Cir. 2012) ................................................................................14

## Federal Statutes

17 U.S.C. § 101 ...................................................................................... i, 2, 3, 7

17 U.S.C. § 410 ...................................................................................... i, 2, 13

## Other Authorities

1 Nimmer on Copyright § 2.08 ...........................................................................10

Registrability of Costume Designs, 56 Fed. Reg. 56,530 (Nov. 5, 1991) ...... 3, 8, 13

**STATEMENT IN SUPPORT OF PETITION FOR REHEARING**

This case involves the most vexing, unresolved question in all of copyright: determining whether an element of an intrinsically useful article (such as a car, a chair, or a dress) is conceptually separable from the work and sufficiently non-utilitarian to warrant protection. The Fourth Circuit has described this exercise as a "metaphysical quandary." *Universal Furniture Int'l, Inc. v. Collezione Europa, Inc.*, 618 F.3d 417, 434 (4th Cir. 2010). The dissenting panel member here noted that the "law in this area is a mess—and it has been for a long time." (Slip Op. 36 (attached) (McKeague, J., dissenting).) And the panel majority—after noting that courts "have struggled mightily to formulate a test" for separability—rejected the nine distinct approaches that other courts and scholars have articulated and created a tenth, using an amalgam of five other tests. (*Id.* at 17-19, 22-28.)

The panel majority's unusual approach exacerbates a circuit split and conflicts with Congress' intent to deny protection to industrial designs of clothing. The majority held that Varsity can assert copyright in the stripes, chevrons, and zigzags on a cheerleader uniform because these elements are purely aesthetic and serve no identifying or other useful function. Other circuits have held that uniform and prom dress elements *do* serve an identifying function and are thus ineligible for copyright protection. *E.g.*, *Galiano v. Harrah's Operating Co.*, 416 F.3d 411, 417-22 (5th Cir. 2005) (casino uniform); *Jovani Fashion, Ltd. v. Fiesta Fashions*,

500 F. App'x 42, 44-45 (2d Cir. 2012) (prom dress).

This conflict among the circuits has immense practical implications. Section 101 of the Copyright Act specifically excludes from its scope "useful articles" (and any "article that is normally a part of a useful article") to ensure that such articles do not receive patent-like protection. That is because copyrights are much easier to obtain and last much longer than patents. If the panel majority's ruling is left in place, scores of industrial designers will start claiming protection for pleats on tennis skirts, button patterns on golf shirts, and colored patches on rugby uniforms.

The panel majority compounded the problem when it decided to give *Skidmore* deference to Varsity's copyright registration. (Slip Op. 8-13 (citing *Skidmore v. Swift & Co.*, 323 U.S. 134 (1944)).) The Copyright Act itself already addresses the weight a court should give to a registration; 17 U.S.C. § 410(c) allocates the burden of proof to the party seeking to challenge the registration's validity. Until now, no circuit has further given *Skidmore* deference to a mere registration. *See, e.g.*, *Carol Barnhart Inc. v. Economy Cover Corp.*, 773 F.2d 411, 414 (2d Cir. 1985) (the courts are "in as good a position as the Copyright Office to decide the issue" of copyrightability). To the extent deference was appropriate here, it was to the Copyright Office's long-standing policy that "articles of clothing and costumes are useful articles that ordinarily contain *no* artistic authorship separable from their overall utilitarian shape." Registrability of Costume Designs, 56

Fed. Reg. 56,530, 56,531 (Nov. 5, 1991) (emphasis added). Further review is needed.

## BACKGROUND

### *The Copyright Act and "useful articles"*

This case involves the protectability of so-called "useful articles," such as furniture, vehicles, and clothing. "A 'useful article' is an article having an intrinsic utilitarian function that is not *merely* to portray the appearance of the article or to convey information." 17 U.S.C. § 101 (emphasis added). And the non-protectability of useful articles ordinarily extends to the article's component parts. *Id.* To qualify for protection, a sub-component must be capable of being "identified separately from, and . . . existing independently of, the utilitarian aspects of the article." *Id.* For example, no matter how worthy the aesthetic qualities of a ribbon-tubed bicycle rack, "[f]orm and function are inextricably intertwined in the rack, its ultimate design being as much the result of utilitarian pressures as aesthetic choices." *Brandir Int'l, Inc. v. Cascade Pac. Lumber Co.*, 834 F.2d 1142, 1147-48 (2d Cir. 1987). The rack is not protectable because "no artistic element . . . can be identified as separate and 'capable of existing independently of, the utilitarian aspects of the article.'" *Id.*

"[C]ourts and scholars have proposed or used" nine different tests to analyze separability. (Slip Op. 17-19.) Indeed, courts "have twisted themselves into knots

trying to create a test to effectively ascertain whether the artistic aspects of a useful article can be identified separately from and exist independently of the article's utilitarian function." *Masquerade Novelty, Inc. v. Unique Indus.*, 912 F.2d 663, 670 (3d Cir. 1990). The decision here adds to the confusion.

### *The parties and their cheerleading-uniform designs*

Varsity is the world's largest manufacturer and distributor of cheerleading and dance team uniforms and accessories. As reported in *Fortune* magazine, "[n]early every uniform sold or camp attended by high school or college cheer-leaders is part of Varsity's vast empire of pep." Colleen Leahey, *The Business of Cheer*, Fortune, Dec. 21, 2012, available at http://goo.gl/EaECwa. To protect its cheer empire, Varsity sues new market entrants.[1] The net result is exorbitant uniform prices, to the detriment of families everywhere. *E.g.*, Courtney Spradlin, *'Pay-to-play' cheerleading often cost prohibitive*, Shreveport Times (Feb. 20, 2015), available at http://goo.gl/JiD9KV.

Varsity employees design cheerleading uniforms with standard design elements, and it has registered several copyrights, not in the uniforms themselves,

---

[1] *E.g.*, *Varsity Brands, Inc. v. Teamleader.com*, No. 05-Civ.-2340 (W.D. Tenn. 2005) (copyright infringement); *Varsity Brands, Inc. v. J&M Spirit Wear, Inc.*, No. 09-cv-1795-PKC (S.D.N.Y. 2009) (same); *Varsity Brands, Inc. v. Sills*, No. 1:2010cv01164 (W.D. Tenn. 2010) (same); *Varsity Brands, Inc. v. It's Greek To Me, Inc.*, No. 2:2011cv02465 (W.D. Tenn. 2011) (same); *Varsity Brands, Inc. v. MSG Holdings, L.P.*, No. 1:2011cv08053 (S.D.N.Y. 2011) (trademark); *Varsity Spirit Corp. v. Cheer Etc.*, No. 1:2011cv08312 (S.D.N.Y. 2011) (same).

but in two-dimensional *drawings and photographs* of uniforms. (R.173, Varsity's SUMF § 34, Pg. ID 2384, 2393-94.) According to Varsity's lead designer, Kim Williams, stripes, V's (known as "chevrons" when pointing up/down and "zigzags" when pointing left/right), and lines are all "basic elements" of cheer uniforms. (R.169-1, Ex. 43, Williams Dep. 166:20-22; R.176, Ex. U, Williams Dep. 62:2-8.) That is because "[m]ost cheerleading designs use diagonals, curves, lines and bright colors to achieve the function of identifying the person wearing it as a cheerleader" and as a particular team's member. (R.169-2, Sarabia Decl. ¶¶ 9, 11, Pg. ID 2178-80.)

These basic elements provide a second important function integral to the style lines of uniforms manufactured by the "cutting and sewing" method of manufacture that Judge Cleland referenced in his decision. Cheerleader uniforms are commonly stitched such that seams are on the outside, facilitating the fit and comfort. This requires that the seams be covered with material. Gary Spencer, a Varsity vice president, concedes that some trim pieces have a functional purpose of covering seams. (R.169-1, Ex. 44, Spencer Dep. 95:22-24.)

Star Athletica, LLC was created in 2010 and is a new entrant in the cheerleading-uniform market. After Star published its first catalogue, true to form, Varsity sued. It alleged that Star's cut-and-sew cheerleader uniforms infringed the copyright Varsity possessed in its two-dimensional cheerleader-uniform drawings,

5

as if such copyrights could protect against the very thing Varsity told the Copyright Office it was not seeking—protection against the shape, contour, cut, style, and fit of Star's cheerleading-uniform designs.

## PROCEEDINGS BELOW

The district court resolved the case on summary judgment. Without invalidating Varsity's copyrights in 5 two-dimensional cheerleading uniform drawings and photographs, Judge Cleland ruled that Varsity's copyrights could not be used to prohibit Star from manufacturing actual cheerleading uniforms. The court explained, "it is not possible to either physically or conceptually sever Varsity's designs from the utilitarian function of the resulting cheerleading uniforms . . . ." (R.199, SJ Order 16, Pg. ID 4310.) "[A] cheerleading uniform loses its utilitarian function as a cheerleading uniform when it lacks all design and is merely a blank canvas. . . . [A] blank silhouette of a purported 'cheerleading uniform' without team colors, stripes, chevrons, and similar designs . . . is not recognizable as a cheerleading uniform." (*Id.* at 15, Pg. ID 4311.)

On appeal, the panel majority began by giving *Skidmore* deference to Varsity's copyright registrations. (Slip Op. 11.) The majority then rejected nine tests for analyzing separability in favor of its own approach. (*Id.* at 17-19, 22-23.)

The majority next adopted Varsity's narrow view of a cheerleading uniform's function: to "cover the body, wick away moisture, and withstand the rigors

6

of athletic movements." (*Id.* at 25.) The majority rejected the argument that stripes, chevrons, and the like identify the wearer as a cheerleader and are part of the overall shape, contour, and fit of cut-and-sew uniforms that enhance the attractiveness of the wearer. (*Id.* at 25-26.) Because stripes and chevrons serve no utilitarian function, said the majority, Varsity could use its copyright in drawings and photographs to stop Star from making actual cheerleader uniforms. (*Id.* at 27.)

In dissent, Judge McKeague observed that stripes and chevrons serve the important function of "identify[ing] the wearer as a cheerleader." (Slip Op. 33.) A plain white uniform "may be appropriate for a match at the All England Lawn Tennis Club, but not for a member of a cheerleading squad." (*Id.*) Citing the Second Circuit's decision in *Jovani* (prom dress) and the Fifth Circuit's decision in *Galiano* (casino uniform), Judge McKeague noted that a "uniform at its core identifies its wearer as a member of a group. It follows that the stripes, braids, and chevrons on a cheerleading uniform are integral to its identifying function." (*Id.*)

Judge McKeague rejected the majority's claim that such a conclusion would "render nearly all artwork unprotectable." Ornamental designs and paintings are not "useful articles" under § 101 of the Copyright Act and therefore are protected. (*Id.* at 34.) And after the majority's willingness to recognize copyright protection for items with utilitarian function, companies like Varsity are allowed "the protection of patent-like features without having to fulfill the rigorous standards for

7

obtaining a design patent." (*Id.*, quoting *Winfield Collection, Ltd. v. Gemmy Indus.*, 147 F. App'x 547, 550-52 (6th Cir. 2005).)

Judge McKeague concluded that further elucidation of copyright law is essential with respect to the protectability of garment design. Without "much-needed clarification" in this area of the law—which he described as "a mess"—"courts will continue to struggle and the business world will continue to be handicapped by the uncertainty of the law." (Slip Op. 36.)

## ARGUMENT FOR REHEARING

**I.  The panel majority's test for determining which elements of a useful article are protectable exacerbates a circuit conflict.**

"[A]rticles of clothing and costumes are useful articles that ordinarily contain no artistic authorship separable from their overall utilitarian shape." Registrability of Costume Designs, 56 Fed. Reg. at 56,531. Because clothing is an industrial design involving artistic *craftsmanship*, rather than authorship, the Copyright Office does not allow registration of garment designs or uniforms. *Id.* Thus, semi-fitted jackets with princess seams[2] and star buttons which identify a garment as a "casino uniform" are not copyrightable. *Galiano*, 416 F.3d at 417-22. Nor is the creative arrangement of sequins, beads, ribbons, and tulle which identify a garment as a "prom dress." *Jovani*, 500 F. App'x at 44-45. In such instances, artistic judgment (if any) is not exercised "independently of functional influences."

---

[2] *See* https://en.wikipedia.org/wiki/Princess_seams

*Jovani Fashion, Ltd. v. Cinderella Divine, Inc.*, 808 F. Supp. 2d 542, 550, (S.D.N.Y. 2011), *aff'd*, 500 F. App'x 42 (2d Cir. 2012).

For a garment element to be copyrightable, then, it must be completely "separable" from the garment's utilitarian aspects. So a copyrightable work of art is protectable if it exists separately from and can be marketed independently of the utilitarian aspects of the dress or a notebook to which it is affixed. *N. Coast Indus. v. Jason Maxwell, Inc.*, 972 F.2d 1031, 1032 (9th Cir. 1992) (pullover tops based on designs by Piet Mondrian). Conversely, "the decorative elements of clothing are generally 'intrinsic' to the overall function, rather than separable from it," because "clothing, in addition to covering the body, serves a 'decorative function.'" *Jovani*, 500 F. App'x at 44 (citing *Whimsicality, Inc. v. Rubie's Costume Co.*, 891 F.2d 452, 455 (2d Cir. 1989)). The core "decorative function" of stripes and chevrons on cheerleading uniforms (identifying the wearer and enhancing the wearer's attractiveness) is what is at issue here.

In formulating the 10th test for analyzing separability, the panel majority failed to properly articulate the functionality analysis. A costume or uniform design can serve many functions. But as *Galiano* and *Jovani* demonstrate, an intrinsic function of a uniform must be to identify the wearer. A person can "cheer, jump, kick, and flip" in a gymnastics leotard or a wrestling singlet, but a crowd would not identify the wearer as a cheerleader or a member of a particular team

9

absent the uniform's colorful stripes, chevrons, and the like. And in the case of the most common form of cheer uniforms, the decorative elements provide other utilitarian functions that were ignored: to cover and reinforce the outward-facing seams and hems, to attract attention, and to enhance the wearer's appearance.

The panel majority rejected any "identifying" function of stripes and chevrons, concluding that "[s]uch a holding would render nearly all artwork unprotectable." (Slip Op. 26.) "Under this theory," the majority continued, "Mondrian's painting would be unprotectable because the painting decorates the room in which it hangs." (*Id.*) This is wrong. A Mondrian painting does not identify the room in which it is hanging as a "room." But if an architect drew a room and attempted to protect the design elements of a floor, ceiling, and walls, courts would reject that attempt, because those design elements are necessary to make the room a room.

The majority's test conflicts with other circuits by rejecting the "likelihood-of-marketability test." (Slip Op. 23-24; *contra*, *e.g.*, *Galiano*, 416 F.3d at 419; 1 Nimmer on Copyright § 2.08[B][3].) Aside from "good taste," the panel remarked, nothing prevents "Varsity from printing or painting its designs, framing them, and hanging the resulting prints on the wall as art." (Slip Op. 28.)

The panel's unsupported conclusion misses a long-standing copyright rule: "A dress is not copyrightable. A picture of a dress is." *Jack Adelman, Inc. v. Sonners & Gordon*, 112 F. Supp. 187, 189-90 (S.D.N.Y. 1934). Here, the district

court did not invalidate the copyright in Varsity's drawings; it simply held that stripes and chevrons *on a cheerleader uniform* are not protectable. Other circuits have agreed and correctly rejected the proposition that elements of a uniform or dress are separately marketable. *E.g.*, *Galiano*, 416 F.3d at 422 ("Gianna makes no showing that its designs are marketable independently of their utilitarian function as casino uniforms."); *Jovani*, 500 F. App'x at 44 ("Jovani has not alleged, nor could it possibly allege, that the design elements for which it seeks protection could be removed from the [prom] dress in question and separately sold.").

The majority concludes Varsity's generic stripes and chevrons are more like fabric designs (protectable) than dress designs (not protectable). (Slip Op. 30.) To draw that distinction, the majority compares drawings of squirrels, leaves, and flowers on sweaters—which the majority agrees are protectable—with the sequins, beads, and ribbon on a prom dress and the princess seams and star buttons on a casino uniform—which the majority agrees are not. But squirrels, leaves, and flowers do not identify a sweater as a sweater; colored stripes and chevrons *are* what identify a cheer uniform as such, while also serving the purpose of covering unsightly seams and hems, enhancing attractiveness, and defining the uniform's shape and fit. After all, Varsity sells cheerleading uniforms, *not* fabric designs.

In sum, "ownership of a copyright in a pictorial representation of a useful article [like Varsity's drawings and photographs] does not vest the owner of the

picture with a derivative copyright in the useful article itself [the cheerleading uniform]. If such roundabout copyrighting were permitted, copyright law's exclusion of useful articles would be eviscerated." *Eliya, Inc. v. Kohl's Dep't Stores*, 2006 WL 2645196, at *9 (S.D.N.Y. Sept. 13, 2006) (copyrighted shoe design cannot prevent manufacture of shoe). The panel decision here allows round-about copyrighting, preventing competition and inviting new copyright claims based on all manner of garments, from band uniforms to golf shirts to costumes, all useful articles. Designers and marketers have always understood—correctly—that such articles are ineligible for copyright protection. The panel majority has reversed a fundamental element of copyright law, exacerbating the confusion in an already confused area of the law. *En banc* review would greatly benefit consumers, the fashion and retail industries, and the bench and bar.

## II. Rehearing *en banc* is appropriate because the panel decision does not defer to the Copyright Office's reasoned policy, while giving unprecedented deference to a copyright registration.

The panel majority's deference analysis is doubly incorrect. It does not defer to the Copyright Office's reasoned policy against registering garment designs including uniforms. But it grants *Skidmore* deference to the Copyright Office's registration decision, even though Congress has already defined the deference given to a decision to register a copyright. The failure to afford deference is outcome determinative. The latter is unprecedented.

12

The panel majority cites *Inhale, Inc. v. Starbuzz Tobacco, Inc.*, 755 F.3d 1038, 1041-42 & n.2 (9th Cir. 2014), in support of its decision to give *Skidmore* deference to Copyright Office registration decisions. (Slip Op. 11.) But *Inhale* advises that deference should be given to Copyright Office policy, not individual application decisions. The panel majority failed to consider, let alone defer to, the Copyright Office's general policy of "nonregistrability of garment designs [including] . . . uniforms." Registrability of Costume Designs, 56 Fed. Reg. at 56,531. If the majority had deferred to this policy, it would not have upheld the validity of the registration of cheerleader uniforms.

In contrast, the panel majority accords more deference to decisions of the Copyright Office to issue individual certificates of registration than Congress allows. The Copyright Act provides that copyright registration made within five years of the first publication of a work is presumptively valid. 17 U.S.C. § 410(c). The presumption can be overcome, but shifts the burden of proof to the party challenging the validity of the copyright. *See Hi-Tech Video Prods., Inc. v. Capital Cities/ABC, Inc.*, 58 F.3d 1093, 1095 (6th Cir. 1995). Congress has thus provided for the effect of the Copyright Office's registration decision.

The panel majority concludes that the Copyright Office's decision to register an article is additionally subject to judicial deference under *Skidmore*. (Slip Op. 11.) Regardless of what *Skidmore* deference actually entails, it puts a thumb on the

13

scales on the side of the copyright holder, which is more than Congress did by assigning the burden of proof. Where Congress has already defined the effect of copyright registration, courts cannot assign greater weight to the registration.

The cases the panel majority cites do not grant deference to the Copyright Office's decision to issue a certificate of registration. Instead, the cited decisions give *Skidmore* deference to the Copyright Office's Compendium and opinion letters, *Inhale*, 755 F.3d at 1041-42 & n.2; and some level of deference to the Copyright Office's decision to deny a registration, *Norris Industries, Inc. v. Int'l Tel. & Telegraph Corp.*, 696 F.2d 918, 922 (11th Cir. 1983), or a long-standing practice of denying a category of registrations, *Southco, Inc. v. Kanebridge Corp.*, 390 F.3d 276, 286 & n.5 (3d Cir. 2004) (*en banc*). Other courts have accorded *Skidmore* deference to the Copyright Office's circulars, reports, and rules. *WPIX, Inc. v. ivi, Inc.*, 691 F.3d 275, 283-84 (2d Cir. 2012) (circulars and reports); *Bonneville Int'l Corp. v. Peters*, 347 F.3d 485, 486-87 (3d Cir. 2003) (rules).

According *Skidmore* deference to the Copyright Office's decision to register copyrights is also unnecessary. Courts are "in as good a position as the Copyright Office to decide the issue" of copyrightability. *Carol Barnhart*, 773 F.2d at 414.

The panel majority's failure to defer to Copyright Office policy and its decision to accord more deference to the Copyright Office's registration decision than provided by Congress are fundamental errors that warrant rehearing.

**III. The Court should resolve the intra-circuit split regarding the need for expert testimony in determining functionality.**

The complexity of determining the separability of design features from the functional qualities of a garment highlights the need for expert assistance. The panel majority acknowledged that need, but chose to defer to the greater familiarity of the Copyright Office to identify and think about the difference between art and function. (Slip Op. 13.) The panel majority ignored Varsity's disclaimer of protection for cut-and-sew dress designs and declined to address Star's expert's testimony regarding the functionality of the cheerleader-uniform designs. In practice, the panel majority's deference to the Copyright Office and refusal to consider the challenging party's expert testimony effectively prevents a party from overcoming the Copyright Office's registration. The Court adopted a contrary approach in *Kohus v. Mariol*, 328 F.3d 848, 855-56 (6th Cir. 2003), which held "expert testimony will likely be required to establish what elements, if any, are necessary to the function [of the subject of copyright registration]." This is the sort of intra-circuit issue that only an *en banc* court can resolve.

**CONCLUSION AND REQUESTED RELIEF**

The panel majority's decision conflicts with previous decisions of this Court and other circuits in an area of the law that would undeniably benefit from this Court's careful *en banc* consideration. The petition should be granted.

15

Dated: September 16, 2015

*s/ John J. Bursch*

John J. Bursch
Matthew T. Nelson
Warner Norcross & Judd LLP
900 Fifth Third Center
111 Lyon Street, N.W.
Grand Rapids, Michigan 49503-2487
Telephone: (616) 752-2000
E-mail: jbursch@wnj.com

Michael F. Rafferty
Harris Shelton Hanover Walsh, P.L.L.C.
One Commerce Square, Suite 2700
Memphis, Tennessee 38103-2555

Steven M. Crosby
The Feldman Law Group
220 East 42nd Street, Suite 3304
New York, New York 10017

Attorneys for Plaintiffs-Appellants

# CERTIFICATE OF SERVICE

This certifies that Star Athletica's Petition for Rehearing and for Rehearing *En Banc* was served September 16, 2015 by electronic mail using the Sixth Circuit's Electronic Case Filing system on all attorneys of record.

*s/ John J. Bursch*

John J. Bursch
Matthew T. Nelson
Warner Norcross & Judd LLP
900 Fifth Third Center
111 Lyon Street, N.W.
Grand Rapids, Michigan 49503-2487
Telephone: (616) 752-2000
E-mail: jbursch@wnj.com

Attorneys for Plaintiffs-Appellants

13223904